Paid

84

# Scott Sedore #210661

## vs,

Case: 2:23-cv-10647
Judge: Cox, Sean F.
MJ: Morris, Patricia T.
Filed: 03-21-2023 At 12:00 PM
PR SEDORE V. WASHINGTON ET AL (NA)

# Heidi Washington, et al.

**POOR QUALITY ORIGINAL**

## (42 U.S.C. § 1983)

— violation's of the 8th Amendment
— violation's of title II of "ADA" & "Rehabilitation Act"!

## Plaintiff mailing Address

Scott Sedore #210661
G. Robert Cotton Correctional Facility
3500 North Elm Road
Jackson, Michigan
49201

# Defendant's

1) Heidi Washington

2) Michigan Dept. of Correction's ("MDOC")

3) MDOC - Executive Policy Team Member's
   ( Jane / John Doe's) (#1 thru #40)

4) "JCF" Warden - Noah Nagy

5) "JCF" Deputy Warden - J. Jarrett

6) Doctor Charles Jamsen

# Defendant's

1) Defendant No.1
   - name: Heidi Washington
   - Job or title: Director
   - Employer: Michigan Dept. of Correction's
   - Address: P.O. Box 30003
              Lansing, Michigan
              48909

   ☒ Individual capacity (Deliberate Indifference claim's)
   ☒ official capacity (violation's of Title Ⅱ of the American's
                       w/(Disabilities And Rehabilitation Act's)

2) Defendant No. 2
   - name: Michigan Department of Correction's ("MDOC")
   - Job or title: Michigan state Prison System
   - Employer: State of Michigan
   - Address: P.O. Box 30003
              Lansing, Michigan
              48909

   ☒ official Capacity (violation's of Title Ⅱ of the American's
                       w/ Disabilities And Rehabilitation Act's)

# Defendant's Continued

3) <u>Defendant No. 3</u>  ( were named as Jane/John Doe's
in my original step #1 grievance!

— name: MDOC - Executive Policy Team Member's (Jane/John
Doe's

— Job or title: Executive Policy Team Member's      #1 <u>thru</u> #10

— Employer: Michigan Dept. of Correction's

— Address: P.O. Box 30003
Lansing, Michigan
48909

☒ Individual Capacity (Deliberate Indifference Claim's)
☒ Official Capacity (violation's of Title II of the American's
w/Disabilities <u>And</u> Rehabilitation Act's )

---

4) <u>Defendant No. 4</u> (named as a John Doe in my original
step #1 Grievance

— name: Noah Nagy
— Job or title: <u>Warden</u> - G. Robert Cotton Corr. facility ("JCF")
— Employer: Michigan Dept. of Correction's
— Address: P.O. Box 30003          G. Robert Cotton Corr. facility
Lansing, Michigan  "or"  3500 North Elm Road
48909          Jackson, Michigan
49201

☒ Individual Capacity (Deliberate Indifference claim's)
☒ Official Capacity (violation's of Title II of the American's
w/disabilities <u>And</u> Rehabilitation Act's )

# Defendant's Continued

5) Defendant No. 5 (named as a John Doe in my original step #1 grievance)

- name: J. Jarrett (1st name unknown)
- Job or title: Deputy Warden - G. Robert Cotton Corr. facility ("JCF")
- Employer: michigan Dept. of Correction's
- Address: P.O. Box 30003        G. Robert Cotton Corr. facility
           Lansing, michigan "or"  3500 North Elm Road
              48909                Jackson, michigan
                                       49201

☒ Individual Capacity (Deliberate Indifference claim's)
☒ official Capacity (violation's of Title II of the American's
                     w/ Disabilities And Rehabilitation Act's)

---

6) Defendant No. 6 (named as a John Doe in my original step #1 grievance)

- name: Charles Jamsen
- Job or title: Chief medical officer (medical Doctor)
- Employer: michigan Dept. of correction's
- Address: P.O. Box 30003
           Lansing, michigan
              48909

☒ Individual Capacity (Deliberate Indifference claim's)
☒ official Capacity (violation's of Title II of the American's
                     w/ Disabilities And Rehabilitation Act's)

# "Statement of Claim's"

This Lawsuit is about violation's of the 8ᵗʰ Amendment ("deliberate-indifference") and violation's of title Ⅱ of the American's w/Disabilities and Rehabilitation Acts. Defendant's are guilty of violating all of these. Plaintiff thus bring's this action, pursuant to 42 U.S.C. §1983, seeking Injunctive and Monetary relief.

All Defendant's have acted Under Color of State Law at all relevant times concerning plaintiff's claim's contained in this lawsuit. This is presently an "Ongoing" issue, no resolution has been offered by defendant's at any point in time. Plaintiff suffer's everyday, and his health, safety, and life is put in jeopardy as a direct result. The date in relation to my allegations are 7/19/2022 thru present date.

① Defendant Heidi Washington ("Washington") is, and at all relevant times herein mentioned was, the Director of the MDOC, the State agency that manages the Correctional facilities within the State of Michigan. Defendant Washington has ultimate responsibility for the promulgation and implementation of MDOC policies, procedures, and practices — And for the management of the MDOC. As to to the claims presented herein against her, Defendant Washington is being Sued in her individual and official capacities for Damages.

② Defendant Michigan Department of Corrections ("MDOC") is, and at all relevant times herein mentioned was, the State Agency that manages the correctional facilities within the State of Michigan. Defendant MDOC has policies, procedures, practices in place to violate title Ⅱ of the Americans w/Disabilities and Rehabiltation Acts. As to the claims against this "Entity", Defendant MDOC is being Sued in it's official Capacity for Damages.

③ Defendant's MDOC-Executive Policy Team Member's ("EPT")-(Jane/John Doe's #1 thru #40). At all relevant times related to my claim's in this Lawsuit, An "EPT" member or member's or designee are responsible for initiating and/or informing the policy section of the need to prepare a New or revised Policy directive that affect's their respective administration. In all cases, "EPT" member's whose administration's are directly affected by the policy directive shall be responsible for approving the content of the final draft policy directive before it is submitted to the Director. The Director must approve and only the Director can sign the policy Directive, only the Director may rescind a policy

2

directive of a state issued operating procedure. A variance is a temporary or permanent change to a specific policy or operating procedure requirement and may be granted only by the Director, Defendant – MDOC Executive Policy Team member's ("EPT") – Jane/John Doe's #1 thru #40 are being sued in their individual and official capacities for damages.

④ Defendant Noah Nagy ("Nagy") is, and on information and belief at all relevant times herein mentioned was, the Warden of G. Robert Cotton Correctional facility ("JCF"), a prison under the control of the MDOC within the state of Michigan. Defendant Nagy has responsibility for the execution of MDOC policies, procedures, practices at "JCF", including the approval of local operating procedures that affect "JCF" only. As to all claims presented herein against him, Defendant Nagy is being sued in his individual and official capacities for Damages.

⑤ Defendant J. Jarrett ("Jarrett") is, and on information and belief at all relevant times herein mentioned was, the Deputy Warden of G. Robert Cotton Correctional facility ("JCF"), a prison under the control of the MDOC within the State of Michigan. Defendant Jarrett has responsibility for the execution of MDOC policies, procedures, practices at "JCF." As to all claims presented herein against him, Defendant Jarrett is being sued in his individual and official capacities for Damages.

⑥ Defendant Charles Jamsen ("Jamsen") is, and on information and belief at all relevant times herein mentioned was, chief Medical officer of The Michigan Department of Corrections – Bureau of Healthcare Services ("BHCS"). A medical Doctor, Defendant Jamsen has responsibility for the implementation and Execution of MDOC policies, procedures, practices and for the management of the MDOC – Bureau of Healthcare Services. As to the claims presented herein against him, Defendant Jamsen is being sued in his individual and official capacities for Damages.

⑦ Pursuant to Rule 38 (b) of the federal Rules of Civil Procedure, Plaintiff Scott Sedore hereby demands a trial by Jury in this action of all issues so triable.

⑧ The following are examples of conduct by prison official's that Show more than mere negligence: ① Delaying treatment for non-medical reason's, ② knowledge of a serious medical need and a failure or refusal to provide necessary care, ③ Grossly inadequate care, ④ A decision to take an easier but less effacious

3

course of treatment ; ⑤ medical care that is so cursory as to amount to no treatment at all.

✱ → I argue that the Defendant's have been "deliberately indifferent" under "Every" formulation of the Standard.

Ⓐ This lawsuit is about violation's of the 8th Amendment to the U.S. constitution, which ban's cruel and unusual punishment "or" treatment of prisoner's.

Ⓑ underlying the 8th Amendment is a fundamental premise that prisoner's are not to be treated as less than human being's.

Ⓒ "wrongful Intent" is not a necessary element for an 8th Amendment violation. If the physical pain, emotional and mental Anguish that result's is cruel and unusual, it is a violation of the 8th Amendment, regardless of the "Intent or Purpose" of those who inflict it.

---

The following is the main issue of this lawsuit, that relates to Any/All that I named as Defendant's. According to MDOC policy, procedures, practices - prisoner's in the MDOC are only allowed to purchase and possess a 6" Fan for personal use. All Defendant's have policies, procedures, practices in place to deny prisoner's access to purchase 8" or larger fan's (3-speed) or in the alternate, furnish/issue one of these fan's as cell furnishing's that are supplied by the MDOC! There are most certainly an endless amount of manufacturer's who produce such fan's that don't place facility safety and security in jeopardy or at risk. The Defendant's refuse to seek and approve one of these fan's - despite being well aware of the current allowable 6" desk fan not being adequate, sufficient, or effective at providing necessary Air flow and Air circulation within my cell/room on Hot and Humid day's when it is over 90°degree's and Humid outside. They are recklessly disregarding and dismissing a known risk to plaintiff's Health, Safety, life.

Plaintiff is suing over living condition's and condition's of Confinement, Humane treatment related to those condition's. Plaintiff understand's that prison is not meant to be a vacation, but on the Flip-side, it cannot be allowed to put my life in Jeopardy either. There must be a Humane, Common ground found.

Plaintiff quailfies as disabled under title II of the "ADA" and the Rehabilitation Act. plaintiff cannot take care of his (ADL's) Activities of Daily living. I have an "Aide" Assigned to me 7 day's/week, that clean's my cell/Room, makes my bed,

4

changes my bedding, help's w/Laundry, takes me to all my callouts and every meal - pushing me in my wheelchair. I struggle to get in or out of my bed, on or off the toilet, in or out of the shower, put on my sock's and shoe's, get dressed - Just to name some of the "ADL's" that I struggle to meet on a daily basis. I cannot meet a majority of my own daily living need's.

Also, plaintiff has the following medical Diagnosis/Designation's: COPD, severe sleep Apnea, chronic scarring both lung's, severe breathing restriction's, Right Side (ventricle) congestive heart failure, Bradycardia, Hypertension, and I am permanently wheelchair bound due to Agonizing chronic pain issues related to multiple underlying orthopedic injuries. I have a mountain of underlying chronic medical conditions that affect my ability to meet necessary daily living need's, I am currently completely bedridden an average of 20-22 hour's per day.

There is not sufficient or effective ventilation, Air Circulation, no forced Air, no Air conditioning in my cell/Room, my cell/Room has a "Door" that is required to be closed at specific times of each day, when it is Hot and Humid, 90° or more, like it is often during the summer month's of July and August, It is extremly Hot, Humid, and Humanely unbearable condition's within my cell/room, I often feel like I am living inside a Sauna or a Volcano. It places extreme stress on my Heart, lung's, and respiratory system. This puts me at severe risk of respiratory failure or death. It aggravates chronic Heart and lung conditions significantly. Some day's I feel like I am dying due to prolonged exposure to the Heat, Humidity, living condition's within my cell/Room on some day's.

I have severe "Sleep Apnea" untreated sleep Apnea is the #1 cause of Heart failure, sleep Apnea causes me to stop breathing completely periodically thru out each and every night, when I do sleep, I have order's from a Cardiologist, dated 12/22/2022, that strongly recommend's that I "strictly Adhere" to using my "CPAP" machine to assist to breathe when I do manage to get some sleep. Due to chronic pain issues, I only sleep about 3 hour's per night on any given night. As a direct result of not using my "CPAP" machine more - I am currently diagnosed to suffer from Right-Side congestive heart failure, I'm at risk of dying if I don't use my "CPAP" machine as prescribed or needed, when it is 90° and Humid outside and inside my cell/room, I cannot use my "CPAP" machine at all. I cannot possibly go to sleep when it is so "Hot" in my cell/room that I cannot stand to wear the "Mask" of the "CPAP" machine that makes me more restricted and Hotter. Again, I am going to die eventually of Heart failure if I don't use my "CPAP" machine.

5

Other Symptom's that I experience when it is Hot and Humid outside, and inside my Cell / Room, Due to chronic lung condition's, Health issues.

① Hot and Humid Air is thicker / Heavier, making it nearly impossible to inhale deeply and get sufficient Air intake - contributing to lack of necessary oxygen in my Blood stream.

② feel's like I am drowning.

③ I feel like a fish out of water, trying to breathe.

④ I feel like an elephant is sitting or standing on my chest.

⑤ I experience frequent, repeated symptom's similar to an Asthma Attack, leaving me gasping for Air often.

⑥ Severe chest tightness and Pain.

⑦ Respiratory distress for long periods of time.

⑧ Head-Aches.

⑨ light Headiness.

⑩ cramp's and muscle spasm's.

⑪ Blackout's.

⑫ Symptom's of Heat Stroke.

I suffer any / all symptom's of Heat related illness when it is Hot and Humid outside, because this causes it to become just as Hot in my cell / room because there is absolutely no ventilation, Air circulation, forced Air, Air conditioning, my 6"-desk fan is not capable of creating any of these thing's either, my fan is about 6-2 feet from my face / Head, presently the MDOC only allow's prisoner's to purchase a 6"-desk fan, It has 2-speed's ( ~~████████~~ ). There is no shelving built into my wall or Bed to allow me to place this 6" Fan close enough to my upper body or head to sufficiently and effectively provide me with enough "Air flow" from my fan to help me to cool off, I have a desk about 8 feet away from my head, I cannot even feel the Air flow from my fan hit me in the face when I am laying down in my bed, which is what I am doing 20-22 hour's per day (laying in bed) because of massive untreated chronic pain, I am pretty much bedridden and miserable almost 100% of the time at this stage in my life.

It get's so "Hot" and "Humid" inside my cell / Room that the concrete Block wall's "Sweat" profusely 24/7. Also, another issue is that my Floor "sweats" so much that I often have a very "wet" floor also, when this happens, It develop's almost like a small lake of standing water underneath my Bed

6

because of the Heat and Humidity in the July and August summer month's.

It is like a "Sauna" in my cell/room during this time. It is like sitting in a vehicle on a Hot/Humid day, in the Scorching Sun, with the window's rolled up. Everybody know's that if you leave something sitting in a Hot and Humid day, in a vehicle, for a prologned period of time — that there is a good chance that that living thing may well die. Defendant's would not leave their dog in these condition's in a Hot/sweltering car, for fear that the dog would die. They don't have any problem leaving me and other prisoner's in these same exact situation's in our Hot and Humid cell/room though. I am at Just as much risk of death living in my cell/room on those day's as a Dog would be if he was left in a vehicle w/the window's rolled up. I cannot open my window in my cell/room on those Hot and Humid day's because it only causes my room to get even "hotter", because only the "intense heat" off the Brick on the outside of the building is coming into my cell/room thru my window. I feel like i'm going to suffocate and die on those Hot and Humid day's. The cardiologist also recommended that MDOC and wellpath Inc.. medical provider's take me to be assessed by a "Pulmonologist".(lung specialist). This recommendation was made at the 12/22/2022 appt. w/the cardiologist. As of the date that I am writing this lawsuit, over 2 month's later, I still have not been taken for this Assessment of my lung's by the "Pulmonologist", that the cardiologist recommended.

Defendant's are recklessly disregarding a known Risk to my Life, my Health, safety, and over-all well being. This constitutes neglect, mistreatment, Inhumane treatment. The physical pain, emotional and mental Anguish that results is a form of "Torture" as far as I'm concerned. It is much more than Inhumane treatment. This is a result of the fact that I do not have a Fan of sufficient size that creates adequate, effective Air circulation/Air Flow in my cell/room. Therefore when the resulting symptom's come on those Hot and Humid day's — It creates a long lasting, Lingering affect on my ability to breathe. I feel like i'm physically dying when this happens. I was not sentenced to prison to be punished, treated inhumanely, tortured by the "reckless indifference" created by the defendant's in this lawsuit. All of them. I was sentenced to prison as punishment, not in an attempt to be punished by the defendants inhumane treatment.

7

This lawsuit is not about plaintiff wanting to be comfortable. This issue affects my "ongoing", daily health, thus it becomes relevant to my constitutional right to be free of cruel and Inhumane treatment.

G. Robert Cotton Correctional facility ("JCF") is an MDOC medical facility. Most of the prisoner's including myself, have serious, life altering chronic medical issue's. Like myself, most have serious Heart or lung issue's of some type of cancer. Prolonged exposure to extreme Heat and Humidity contributes, Aggravate's, compound's, and multiplies complications and symptom's from these "ongoing" chronic Heart and lung issue's/problems in my case.

It is a policy, procedure, practice of the MDOC and all defendant's that at "Every" facility – to stop "all" physical activities outdoor's (work, recreation, etc...) when the outdoor temperature and Heat Index climb's to over 90° degree's. So this policy, procedure, practice in itself show's that defendant's culpable state of mind, and admission that the intense heat has a profound negative affect on the Human body. That our Health and well-being is at great risk/jeopardy when exposed to Hot and Humid temperatures/condition's – especially for prolonged periods of time. Currently prisoner's in the MDOC are only allowed to purchase and possess 1-6" desk fan for themselves. This creates "barbaric" living condition's in the summer months of July and August.

It is a policy, procedure, practice of All defendant's to not allow or seek and approve adequate, effective, necessary fan's for purchase by prisoner's, (8" or larger/3-speed fan's). It is also a policy, procedure, practice by all defendant's to not furnish sufficient, Adequate, effective fan's as part of prisoner cell furnishing's that are provided by the MDOC. They are recklessly "deliberately indifferent" to this issue/problem.

Not all fan's that are over 6" inches in size are a threat to the safety and security of the MDOC institution. Defendant's just refuse to seek and approve a fan and/or vendor of 8" or larger (3-speed) fan's that would be sufficient and effective for prisoner's need's. They know for sure that the current approved 6" fan does not meet mine or any other prisoner's need's. As a direct result, they are guilty of "deliberate indifference" to my serious medical need's and guilty of violating title II of the American's w/disabilities and Rehabilitation Act's.

Defendant's want to claim that prisoner's cell's/room's have sufficient Air circulation and ventilation. Maybe they should come and stay in these

8

room's for a couple day's and night's in the middle of July or August, when it is Hot and Humid. I promise you that they would have an attitude adjustment and a different point of view if the shoe was on the other foot, and they were to see the condition's of confinement that I and other prisoner's are subjected to in the Hot and Humid summer month's.

The Defendant's have had multiple chances to resolve this matter with me in the past year too 2 year's. The "JCF" warden's forum member's (prisoner's) have submitted multiple proposal's to the "JCF" Administration, which includes Warden Nagy and Deputy warden Jarrett, to allow the "Prisoner Benefit Fund" to pay for an Independent assessment, inspection, evaluation of cell/Room Air circulation/ventilation/cooling issue's, "JCF" administration refuses to entertain or approve this ⬛ proposal because they know what the results/outcome of the assessment will be, and that will create liability for them, our cell's/room's are like oven's, like a Volcano when it is Hot and Humid outside.

The defendant's have had "2"-alternative option's to resolve this issue with me also. I have tried/attempted to resolve this issue at least half a-Dozen times in the past year and a Half, They left me no choice but to file this litigation. The following 2-option's have been available since on/or around 6/4/2021 too present.

① Issue me an "accomodation order" that was verbally agreed too and promised to me by MDOC litigation manager (Brandon Waddle) and assistant attorney General (Kevin O'dowd) on or around June 4th, 2021 @ my settlement conference before U.S. magistrate Judge (David R. Grand) for case # 4:19-cv-10259, that would allow plaintiff to purchase an 8"/3 speed fan at his own expense. The MDOC litigation manager and assistant attorney General "Reniqqed" on the verbal agreement that they gave me, my attorney (Dan manville), and U.S. magistrate Judge David R. Grand! They never provided me with the "accomodation order" that they promised me on 6/4/2021.

② Issue/furnish an 8" or larger/3-speed fan as part of prisoner cell/room furnishing's that are issued by the MDOC for all prisoner's.

our housing unit's in all MDOC facilities are like "Stone Brick Oven's" the outside of the building's are all concrete and brick. As the sun beat's down

on them during "Hot" and "Humid" day's, they gradually Heat up inside our cell's, turning my cell into a "Sauna", when you open the window in your cell, all you feel is th "Hot" Air flow from the Heat being produced by the "Hot" brick on the outside of th building. Even if the Heat/temperature drop's outside the building, it takes several day's for the Heat produced by the "Hot" brick on the building to lower or dissipate,

The Window that open's in my cell/room is approximately <u>18" X 18".</u> There is a metal "grate" over the window that does have small slot's in it, but the "grate" <u>greatly restrict's</u> any <u>air flow</u> from coming into my room. It does let some "Hot Air" into my room though, This causes my room to get even Hotter inside. next to the window that open's is a seperate window that is Rectangular Shaped. It is approximately 20" X 45", <u>This window does not open.</u> The Sun shines directly into my window for the <u>Hottest part</u> of the day, in the afternoon, There is no <u>curtain or blind</u> (provided by the MDOC) to cover the 20" X 45" window, to shield me from this very Hot sun coming in my window and room, my bed is bolted to the floor, right next to this window. I am forced to lay in the Hot sun in the Hottest part of the day. Remember I am almost completely bedridden Due to chronic pain and other chronic medical condition's, I am forced to lay in my bed 20-22 hour's per day as a result, The sunlight coming in this 20"x45" window contributes greatly to my cell heating up during the hottest part of the day's, It turn's my cell condition's into being unbearable, feeling like a sauna or Volcano inside, The MDOC does not give prisoner's <u>a curtain or a Blind</u> to prevent the Hot sun from heating up our cell's/room's, This show's <u>reckless indifference and a culpable state of mind</u> also. They refuse to approve 8" or larger/3-speed fan's, that could create sufficient, Adequate, effective Air flow and Air circulation to diminish the unbearable condition's of confinement inside my cell/room during Hot/Humid summer day's in July and August, There is no window <u>"Tinting"</u> on the window's to diminish the effect's of the Sun.

on 2/2/2023 – "JCF" Housing unit staff, at the direction of Warden (Noah Nagy) and Deputy Warden (J. Jarrett) came to my housing unit (B-unit) and <u>confiscated</u> any/all fan's that were over 6" inches in size, Every since coming to "JCF" on 7/24/19, within a month of that date, <u>I had purchased from another prisoner</u>, a 20 inch fan w/ 3 speed's, I no longer have this fan. This will have a profound affect on <u>all</u> inmates who

10

had one of these 20"inch fan's, This 3-speed fan was the only device that provided relief from the Hot and Humid day's. There were probably a rough estimate of 100-150 of these 20"inch fan's confiscated, facility wide. This will have a profound affect on me, I have had this fan since around August, 2019, It will be very miserable in my cell/room on these Hot and Humid day's. There is absolutely no Airflow, Air-circulation inside my Cell/room when my door is closed.

MDOC Housing unit staff have a 20" or bigger fan blowing on them at all times on these Hot and Humid day's, The "4"-Dayroom's in each housing unit have a 20" fan to cool them off. I cannot go spend any prologned time in the Day room. I stay in my bed almost all the time due to Agonizing chronic pain and other medical condition's. All officer stations, counselor offices, Healthservices offices ç Building ) Qaurtermaster, property room, classroom's in the School (300 Bldg.) all have these 20"inch/3speed fan's. These area's are all easily accessible to prisoner's, if they are such a Safety and security issue, why are they left where prisoner's have easy access to them? why do all staff have a 20"inch or larger/3-speed fan blowing on them at all times? They are nobody special, their life and comfort is not worth any more than mine. The extreme Heat affect's me physically, emotionally, and mentally. I'm sure that MDOC staff dont have the health issues, problem's, risk's that I have - yet I am only allowed to possess and use a 6"inch desk Fan that does absolutely nothing to alleviate or diminish the Heat related risk's to my health, safety, well-being. My life is being put at risk 24/7 as a result. At least MDOC staff are comfortable, while all prisoner's are suffering. Defendant's are recklessly disregarding a known risk to my health and my life. They are guilty of "deliberate indifference" to my serious medical need's and violation's of title II of the "ADA" and Rehabilitation Act.

Defendant's have a "Duty" to provide Humane condition's of confinement and living condition's. They are presntly failing this "Duty" miserably. Defendant's have an affirmative, non-discretional "Duty" to provide a safe environment, housing and Surrounding's to protect my health and my life. They have a "Duty" to follow and Execute MDOC policies, procedures, practices. They have a "Duty" to follow state and federal civil right's law's. They have a "Duty" to follow and Execute title II of the "ADA" and Rehabilitation Act. They have a "Duty" to not treat me inhumanely.

Defendant's have violated the 8ᵗʰ Amendment to the U.S. Constitution (deliberate indifference), and violated Title II of the American's with disabilities and Rehabilitation Act's.

① MDOC Director - Heidi Washington: At all relevant time period's related to the fact's of this lawsuit, 7/19/22 - present date. This is an "ongoing" Issue. Heidi Washington, despite knowing that the 6' desk fan's are not adequate and not effective — she approves, follow's, and Executes policies, procedures, practices to deny plaintiff and other MDOC prisoner's access to either purchase or be issued as part of MDOC cell furnishings — 8" inch or larger / 3-speed Fan's. She is recklessly disregarding a known risk to Plaintiff's and other MDOC prisoners' Health, safety, well-being. She is recklessly indifferent, she is well aware that she is placing prisoner's life's, such as mine, In Jeopardy and violating 8ᵗʰ Amendment civil right's to be free from cruel and unusual or Inhumane treatment and condition's of confinement. She is also violating title II of the American's w/ disabilities and Rehabilitation Act's.

② Michigan Department of Correction's: At all relevant time period's related to the facts of this lawsuit, 7/19/22 - present date. This is an "ongoing" issue. The MDOC does not provide Adequate ventilation, Air circulation, Airflow, forced Air, or Air conditioning in any of the cell / room's at "JCF" and most other Facilities. Despite knowing that 6" inch Desk Fan's are not adequate and are ineffective — the MDOC has policies, procedures, practices in place to deny plaintiff and other prisoner's access to either purchase or issue as part of MDOC cell furnishings — 8" inch or larger / 3-speed Fan's in each cell / room. The MDOC is recklessly disregarding a known risk to plaintiff and other prisoner's Health, safety, well-being. The MDOC is placing prisoner's life's in Jeopardy as a direct result. The MDOC is guilty of violating Title II of the American's w/ disabilities and Rehabilitation Act's.

③ MDOC - Executive Policy Team member's (Jane / John Doe's #1 thru #40): At all relevant time period's related to the facts of this lawsuit, 7/19/22 - present date. This is an "ongoing" issue. The MDOC - Executive Policy Team member's, despite knowing that 6" inch desk fan's are not adequate and not effective at lowering risk factor's to MDOC prisoner's due to Heat related factor's in the cell / room's at MDOC facilities, refuse to initiate; Author, Approve policies, procedures, practices that would allow prisoner's to purchase or receive as MDOC issued cell furnishings, an 8" inch or larger / 3-speed fan. They have a "Duty" to initiate, implement,

12

Author policy directives that address condition's of confinement for any/all prisoner's. They know our cell's have no adequate Air flow, circulation, forced Air, or Air conditioning. They know our cell's are like sauna's in the Hot and Humid July and August day's. They have a "Duty" to provide solution's to this problem. They are guilty of recklessly disregarding a known risk to prisoner's Health, safety, well-being. They are placing prisoner's life's in jeopardy as a direct result. They are guilty of "deliberate-indifference" and violation's of title II of the American's w/ disabilities and rehabilitation Act's.

④ "JCF" Warden - Noah Nagy: At all relevant time period's related to the facts of this lawsuit, 7/19/22 - present date. This is an "ongoing" issue. "JCF" Warden - Noah Nagy, despite knowing about ventilation, Air circulation issue's and problem's in prisoner cell/room's at "JCF", he is and has recklessly disregarded a known risk to prisoner's, including myself. He is recklessly indifferent to my health, safety, well-being. On 2/2/2023 warden Nagy and other "JCF" administration directed housing unit staff to confiscate any/all fan's over 6"inch fan's in prisoner cell/room's. Warden Nagy is well aware of the fact that the 6"inch fans don't alleviate or effectively reduce the effect's of the heat and humidity in prisoner cell's/room's at "JCF" during the Hot and Humid July and August day's. He has put my and other prisoner's life's in jeopardy as a direct result. Warden Nagy has a "Duty" to provide Humane condition's of confinement in the facility that he is in charge of and oversee's. As a direct result of the fact's of this lawsuit, warden Nagy, is guilty of "deliberate indifference" and violation's of title II of the American's w/ disabilities and Rehabilitation Act's.

⑤ "JCF" Deputy Warden - J. Jarrett: At all relevant time period's related to the facts of this lawsuit, 7/19/22 - present date. This is an "ongoing" issue. "JCF" Deputy warden - J. Jarrett, despite knowing about ventilation, Air circulation issue's and problem's in prisoner cell/room's at "JCF", he is and has recklessly disregarded a known risk to prisoner's, including myself - health, safety, well-being. On 2/2/2023 Deputy Warden - J. Jarrett and other administration directed "JCF" Housing unit staff to confiscate any/all fan's over 6"inch fan's in prisoner cell/room's. Deputy warden J. Jarrett is well aware of the fact that the 6"inch fan's don't alleviate or effectively reduce the effect's of the heat and humidity in prisoner cell's/room's at "JCF" during the Hot and Humid

13

July and August day's. He has put me and other prisoner's life's in Jeopardy as a direct result. Deputy warden J. Jarrett has a "Duty" to provide Humane condition's of confinement in the facility that he is in charge of and oversee's. He is guilty of "deliberate indifference" and Violation's of Title II of the American's w/ disabilities and rehabilitation Act's.

(6) Doctor Charles Jamsen - MDOC chief Medical officer! At all relevant time period's related to the fact's of this lawsuit, This is an "ongoing" issue, like other defendant's, the time period in question is 7/19/22-present date. On 7/19/22, plaintiff had an appointment with Dr Charles Jamsen to assess his need for approximately 12-15 special accomodation's order's that I was seeking. This appt, was in response to a "mediation settlement Agreement" for a different lawsuit. At this appointment plaintiff requested multiple Accomodation order's, including an accomodation order that would allow plaintiff to purchase at his own expense - An 8" inch / 3-speed fan from an approved MDOC vendor. Dr Jamsen's Assessment fell well short of being thorough And/or competent, by any medical standard's. It was merely a "shit show" by the MDOC and Dr Jamsen. He did not access or look at any of my available medical record's during this appt.! He did not physically examine me or take into account my medical History, ongoing orthopedic issues or plaintiff's medical record's to support my claims in any way. He refused to look at any of the medical record's that I attempted to show him. Dr Jamsen did not follow any established standard's of treatment in his "so-called" assessment of my need for requested Accomodation order's, including the ability to purchase an 8" inch / 3-speed fan. He had his mind made up prior to our appt. even starting. Dr Jamsen has recklessly disregarded a known risk to plaintiff's Health, safety, well being. He has put my life in Jeopardy as a direct result. I begged and pleaded with Dr Jamsen during this appointment, trying to show him relevant medical record's, telling him that he cannot make decision's based solely on MDOC electronic medical record's, because they are at most only 25% complete and accurate, true reflection of plaintiff's "ongoing" medical issues and history - because none of plaintiff's medical record's from Hospital's, specialist's who treated me between 10/9/09 "Head-on" car accident and my 4/20/10 arrest were any part of the MDOC electronic medical record's. He adamently refused to

14

look at the medical record's that plaintiff attempted to show him, during the 7/19/22 apptt.! As a result Dr Jamsen denied each and every accomodation request that plaintiff made. He basically said screw you and your medical need's mr sedore, in an indirect way. Dr Jamsen is guilty of having policies, procedures, practices in place to ration, limit, deny necessary accomodation order's. Dr Jamsen is guilty of violating his Hippocratic oath. His actions on 7/19/22 have led to a lot of harm and suffering on my part. Dr Jamsen is guilty of "deliberate indifference" and of violating title II of the American's w/ disabilities and Rehabilitation Act's. He has placed my Health, Safety, Well-being, life, peace of mind in Jeopardy.

Because of the policies, procedures, practices in place by defendant's to only allow prisoner's to purchase and/or possess one - 6"inch desk fan, they are guilty of "deliberate indifference" to plaintiff's serious medical need's and guilty of violating title II of the American's w/ disabilities and Rehabilitation Act's. People could die as a direct result.

① The conduct of All Defendant's was objectively unreasonable and was undertaken intentionally with Malice, willfulness, and reckless indifference.

② Plaintiff's suffering, Injuries, and the violation's of his constitutional right's were directly and proximately caused by the policies and practices of Defendant's, which were and are the moving force of the violation's.

③ Defendant's unconstitutional policy, practices, and custom's are ongoing and continue to violate plaintiff's right's, and as such plaintiff has no adequate remedy at law.

④ Plaintiff is entitled to "Injunctive Relief" requiring Defendant Washington to prohibit defendant's from continuing to violate the constitution, Title II of the American's w/ disabilities and Rehabilitation Act's.

⑤ As a result of the foregoing, plaintiff seek's compensatory and punitive damages against the individual defendant's.

15

6. plaintiff re-alleges and incorporates by reference herein all of the allegation's in the prior paragraph's.

* I swear under penalty of Perjury that any/all claim's are accurate and the truth.

Respectfully Submitted,

printed name: Scott Sedore #210661

Signed name: Scott Sedore #210661

Date: 3/16/2023

* A couple of Fact's that I would like to make known:

① Through out the MDOC - there are Dog training program's at many facilitie's. Even the Dog's are each provided Big / 3-speed Fan's to keep them cool in the room/cell's that they are housed in. Prisoner's are not allowed to have these type of fan's. It is a Damn shame that the Dog's are treated better, more humanely than prisoner's.

② During the Hot and Humid summer month's - It get's so Sticky and Humid in my room/cell that all my "stamped Envelope's" are glued completely shut and ruined due to said Humidity.

③ Some of the main claim's brought forth in this lawsuit were presented to not only the facility "Warden", but also the "Director" of the MDOC on numerous occassion's. During G. Robert Cotton Corr. facility ("JCF") - Warden's Forum meeting's, on the following date's:
  ⓐ July 23, 2018
  ⓑ August 27, 2018
  ⓒ September 24, 2018
  ⓓ July 24, 2019
  ⓔ March 25, 2020
  ⓕ August 30, 2022
  ⓖ September 30, 2022

(The facility Warden Actively participates in the Warden's Forum meeting's. He/she then personally sign's the Warden's Forum meeting "minutes", and a copy is then forwarded to the MDOC Director's office, for each/every meeting.)

* I swear under penalty of Perjury that these claim's are accurate and the truth!
Scott Sedore # 210661 ( 3/16/2023 )

## "Relief Requested"

Wherefore, Plaintiff Scott Sedore, respectfully request's Judgement against defendant's, jointly and severally, for the following:

A) A declaration that Defendant's policies and practices violate the United States Constitution.

b) A declaration that Defendant's policies and practices violate the Title II of the American's w/ Disabilitie's and the Rehabilitation Act's.

c) A preliminary and permanent injunction requiring Washington to prohibit Defendant's from continuing to violate the constitution, Title II of the American's w/ Disabilitie's and the Rehabilitation Act's, and providing any other equitable relief deemed as necessary.

d) An Award of Compensatory, punitive, and nominal damages,

e) An Award of full cost's and attorney's fee's arising out of this litigation; and

F) Any and other further relief this court may deem just and appropriate.

Respectfully Submitted,

printed name: Scott Sedore #210661

Signed name: Scott Sedore #210661

Date: 3/16/2023

# Index of Exhibit's

1) "JCF" Grievance – Step #1 <u>thru</u> Step #3
(# JCF/2207/1478/12D3)
<u>13 pages total</u>

2) medical Accomodation Order's

3) Warden's forum meeting minutes: July 23, 2018

4) Warden's forum meeting minutes: August 27, 2018

5) Warden's forum meeting minutes: September 24, 2018

6) Warden's forum meeting minutes: July 24, 2019

7) Warden's forum meeting minutes: March 25, 2020

8) Warden's forum meeting minutes: September 30, 2022

9) Warden's forum meeting minutes: August 30, 2022

10) MDOC Policy Directive: PD 01.04.110

11) MDOC Policy Directive: PD 03.03.130

12) MDOC Policy Directive: PD 04.06.160

*"Exhibit #1"*

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I _____     Grievance Identifier: | J | C | F | 2 | 2 | 0 | 7 | | 1 | 4 | 7 | 8 | | 1 | 2 | 0 | 3 |

Be brief, and concise in describing your grievance state. All grievance information must be dimensional. Alteration, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Scott Sedore | 210661 | JCF | B-1 | "ongoing" 7/11/2022 | 7/21/22 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? **I had an appt. at "JCF"** If none, explain why. Doctor~ Dr Jameson (spelling?) on 7/19/22. Issued not resolved. This is all "ongoing" Issue. grievant has made numerous, multiple attempts w/all involved. Those involved are as follows: M.D.O.C.'s Director Heidi Washington, Well Path, NP melodic Bale, thus M.S. Irena Landfair (RN). Also involved are numerous Jane/John Doe's) ~ past, present, future. (Jane/John Doe's) names and Job titles will be furnished once known by Grievant. numerous attempts made by grievant w/michigan attorney general's office, M.D.O.C.'s legal affairs, litigation

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used **section** Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted **also,** to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. grievant has made all those Named as being involved in the issue of this grievance~ That his medical special Accomodation needs are many and that they are numerous, multiple needs related to declining physical Health. This grievance is about neglect, improper treatment, Inhumane medical treatment, Those involved have policies, procedures, practices in place to ration, limit, delay, deny necessary medical special Accomodation needs, related to grievant's numerous serious medical needs. All of these needs. In this grievance I specifically talk about my need for an 1st Fan or bigger. The issue of this grievance/Accomodation needs) is a bigger issue than just a Fan. This grievance issue not just limited to a Fan. grievant is grieving living conditions, Inhumane treatment, am grieving only how this issue directly affects me at this point. (PD 03.02.130 - J #8, F), M.D.O.C.'s (PD 01.04.110 (g.1)) - "All employees are to be informed of department policies as well as necessary procedures to carry out these policies." Also "deliberate indifference" violations, violations of M.D.O.C. 02.03.100, PD 03.03.130, PD03.04.100, PD04.06,160! I suffer 24/7 as a result, grievant cannot meet my living needs, has an "Aide" assigned to assist, violation's of Title II of ADA "also" I qualify as disabled and,) 2) chronic scarring (both lungs), 3) severe breathing restrictions) 4) Heart failure, 5) bradycardia, 6) hypertension, (irreparably) when chair, bound i noventilation), Air circulation, forced Air, AirConditioning in my ill Room. This puts me at severe risk of respiratory failure or death. ____ Scott Sedore It place extreme stress on my heart, lungs, respiratory system when 90 and Humid outside, 6 Fan not sufficient to diminish affects of Antirespiratory Heart and lungs.

*Scott Sedore*  Grievant's signature

**RESPONSE** (Grievant Interviewed? ☐ Yes  ☐ No    If No, give explanation. If resolved, explain resolution.)

| Respondent's Signature | | Date | Reviewer's Signature | | Date |
|---|---|---|---|---|---|
| Respondent's Name (Print) | Working Title | | Reviewer's Name (Print) | | Working Title |

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | Grievant's Signature | Date |
|---|---|---|---|

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

Step #1 - extra Page

grievant has attempted to resolve this issue multiple times, multiple ways, multiple formats w/ all those I named as being involved in this issue.

I have attempted to receive necessary 8" fan or larger on numerous occassions with all those involved. By denying grievant this need — you are inflicting a known risk to my physical, emotional, mental health and well being. you are putting me at risk of a catastrophic health issue or event on a daily basis. Despite knowing of this risk, those involved refuse to acknowledge or remotely follow standard medical procedures.
It is like a Sauna in my cell/room. It is like sitting in a vehicle on a Hot, Humid day, in the scorching Sun, w/ the windows rolled up. I feel like i'm going to suffocate and Die.

Resolution: Provide grievant a medical special Accomodation order to purchase at own expense, an 8" fan or larger. In the alternative — provide accomodation order to purchase and possess 2 - 6" fans also.

Also, to legitimately assess grievants need for multiple Accomodation needs, not what Dr Jameson did on 7/19/2022.

* Everyone is well aware what happens to people and other living things that are left in a vehicle w/ the windows rolled up on a "Hot", scorching Day,
Thy Die eventually.

Michigan Department of Corrections
FIRST STEP GRIEVANCE RECEIPT

DATE:        7/21/2022

TO:        SEDORE          210661        LOCATION:   JCF        B-1

FROM:        Grievance Coordinator:  Cobb

SUBJECT    Receipt for Step I Grievance

Grievance Identifier:    JCF        2022 /    07 / 1478    / 12D3

Issue:        Physician Services – Quality of treatment

Received:        7/21/2022

Date Due:        8/11/2022

Your Step I grievance was received as indicated above. You should receive a response no later than the due date listed above. If you have not received a response by this date and no extension has been given, you may submit a written request for a I appeal form to this office. You will need to note, on your request, the grievance identifier as listed above.

MICHIGAN DEPARTMENT OF
CORRECTIONS

CSJ-247S 3/18/2019

## STEP I GRIEVANCE RESPONSE SUPPLEMENTAL FORM
(Use if space on the CSJ-247A is insufficient for a full response by stating on the CSJ-247A "See attached CSJ-247S")

| Prisoner Last Name: | Prisoner # | Lock/Location | Grievance #: |
|---|---|---|---|
| Sedore | 210661 | 01/B | JCF-22-07-1481-12D3 |

| | ☐ | NO | ☐ | | |
|---|---|---|---|---|---|
| | ☐ | NO | ☐ | | IF "YES", Enter End Date |

**COMPLAINT SUMMARY:**
Grievant alleges neglect regarding grievants accommodations and living conditions. Inmate states no air conditioning and ventilation in his cell/room put him in risk of respiratory failure or death. Mr. Sedore lists date of incident as 07/19/2022.

**INVESTIGATION SUMMARY:**
the Electronic Medical Record (EMR) was utilized. Grievant was seen by Medical 07/19/2022 by a onsite Medical Provider. The visit here was conducted by one of the MDOC's Chief Medical Officers and was to review requests for accommodations. These accommodations are not listed as part of the 02/03/2020 settlement agreement. Grievant was also seen by a secondary Medical Provider for his Chronic Care visit on 08/03/22. This visit addressed pulmonary/COPD concerns as well as cardiovascular. Plan of care shows medication changes (related to Cardiovascular/Respiratory systems), Lab orders, and a consult request. Vitals in both visits are within defined limits of Hypertension and COPD comorbidities.

**APPLICABLE POLICY, PROCEDURE, ETC.:**
PD 03.04.100 Health Services

**DECISION SUMMARY:**
The MP is the most qualified staff member to determine the course of treatment and determined that the plan of care determined was appropriate at that time. No evidence was found to support that allegations of neglect regarding accommodations and respiratory failure have been made. this grievance is denied.

| RESPONDENT NAME: | J. Salazar | TITLE: | RN 13 |
|---|---|---|---|
| RESPONDENT SIGNATURE: | *signature* | DATE: | 08/05/2022 |
| REVIEWER NAME: | S. Landfair | TITLE: | HUM |
| REVIEWER SIGNATURE: | *signature* | DATE: | 08/05/2022 |

**Distribution:** Original - Step I Grievance Coordinator   Copies – 3 To Grievant (1 Prisoner Copy; 1 for Step II filing; 1 for Step III filing)

Daniel Manville
*Clinical Professor of Law*

*Civil Rights Clinic*

*(handwritten, circled: Step #2 Appeal "Exhibit")*

# UNIVERSITY
## COLLEGE OF LAW

June 15, 2021

Scott Sedore, #210661
G. Robert Cotton Correctional Facility (JCF)
3500 N. Elm Road
Jackson, MI 49201

Dear Mr. Sedore:

I have enclosed a complete copy of the settlement for your review and for you to keep. I have enclosed a second copy of Page 8 of 8 so that you can sign that page and return it to me. After all the other signatures are added, I will send you back a copy.

I have read the settlement and it meets what you agreed to. I know it is 8 pages for you to agree to settle for $3,500.00, but that is just part of life.

*(redacted line)*

If you have questions as to the settlement, let me know and I can arrange a call.

I have enclosed a stamped, self-address envelope so you can return that signed Page 8.

Sincerely,

*(signature)*

Legal Clinic

PO Box 1570
East Lansing, MI 48826
517-432-6880
Fax: 517-432-6990
www.law.msu.edu/clinics

*(handwritten: ✱ Fan – 8"/3-speed ① ⅃ Heavy Duty Air Mattress ②)*

MSU College of Law is an affirmative-action, equal opportunity institution

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE APPEAL FORM**

 ＊HID

4835-4248  5/09
CSJ-247B

Date Received by Grievance Coordinator
at Step II: _____

Grievance Identifier: | J | C | F | 2 | 2 | 0 | 7 | | 1 | 4 | 7 | 8 | 1 | 2 | D | 3 |

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided
with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step
II and Step III.

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: _____
_____GC_____ by ___8-29-22___. If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's
Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Scott Sedore | 210661 | JCF | B-1 | "ongoing" 9/7/7/72 | 8/16/2022 |

STEP I — Reason of Step #1 Response until 8/16/22 - Step #1 "Due Date" was 8/11/22. All claims and issues from step #1 carry over to step #2 Appeal, no relief of resolution offered in step #1 response on or around June 4th, 2021 @ settlement conference case #18-cv-10258 present were the following people U.S. District court magistrate Judge (David R. Grand), M.D.O.C. litigation section manager (Brandon Waddle), @ Assistant Attorney General (Kevin O'David) @ Plaintiffs attorney (Dan Manville), @ Plaintiff (Scott Sedore). At this settlement Conference, although not a part of settlement itself - Judge David R. Grand told defendant's representatives (M.D.O.C) that the strongly recommend that M.D.O.L. should provide me w/an Accomodation order that would allow me to purchase a 8" fan at my own expense, from a approved M.D.O.C vendor, both Brandon Waddle and Kevin O'David acknowledged, agreed, and verbally agreed to provide me w/that accomodation order. It never happened, they lied, re-nigged on that part of the agreement. The Judge died on 6/1/21 - "I don't want to see a lawsuit from mr Sedore come across my desk over a fan." I want to name John Doe from step #1, I just became aware of his name and involvement, Job Title: Dr. Rickey Coleman (M.D), who approves/denies requests for medical special Accomodations, A 6" fan does not have sufficient output of Air, it does virtually nothing to alleviate the affects of Hot Air, Humidity, Heat related Respiratory Symptoms

STEP II — Response

Date Received by
Step II Respondent:

_____          _____          _____
Respondent's Name (Print)          Respondent's Signature          Date

Date Returned to
Grievant:

STEP III — Reason for Appeal "Due Date"; therefore I sent my step #3 Appeal according to PQ03.02.130. did not receive any step #2 response if response of notice of "Extension of time to respond to step #2 Appeal on or before the 9/7/22 response all claims and issues from my step #1 grievance, step #2 Appeal carry over to my step #3 Appeal, no resolution or relief offered at any step. There is no available administrative remedy to exhaust. The M.D.O.C. don't follow, Execute their own policies and procedures. The M.D.O.C. and those involved have a "Duty", the Ability, the opportunity to do the right thing and address and resolve this issue. They chose to simply recklessly dismiss a known risk to my Health and safety. @ Either issue me the necessary Accomodation order to purchase a 8" or larger -3 speed fan, or in the Alternate - Issue the same as part of my cell furnishing's by the M.D.O.C, 18" or larger - 3 speed fan. Refer to the following ① Risher v. Lappin, 639 F. 3d 236 ② Boyd v. corr. corp. of Am., 380 F. 3d 989 ③ Ross v. Blake, 136 S. Ct. 1850

**NOTE: Only a copy of this appeal and the response will be returned to you.**

**STEP III** — Director's Response is attached as a separate sheet.

DISTRIBUTION:  White – Process to Step III;  Green, Canary, Pink – Process to Step II;  Goldenrod – Grievant

Step #2 - Extra Page

I cannot even feel the Air from my fan hit me in my face area, when laying on my bed. It would need to be within 2-3 feet away from my head (max), in order to feel the output of Air flow from it. There is no "shelf" near my bed, on the wall or bed, to put my fan on, so it is close to my bed. Another violation of Title II of the ADA, and Deliberate Indifference.

When it is Hot and Humid it feel's like it is substantially harder to breathe. It feel's like I am drowning, like an elephant is sitting or standing on my chest. It often contributes and triggers symptom's like an Asthma Attack, and leaves me gasping for Air, breathing problems, chest tightness and pain.

I have told everybody involved in this issue repeatably when I have talked to them, how this issue affects me. It causes me extreme distress, immense suffering. I feel like a fish out of water, gasping for Air. Extreme suffering and Torture by the M.D.O.C, was not part of my sentence for my crime, by my Judge.

Grievant is most certainly susceptible, At risk to all form's of Heat related illness, and have suffered repeated episodes and symptom's of Heat related illness on numerous occassion's as a direct result of not having sufficient Air Circulation / Air flow in my room/cell, on these extremely Hot and Humid day's.

Symptom's also include chest pain / tightness, respiratory distress, headaches, light headeness, Blackout's.

This grievance is not about grievant wanting to be comftorable. This issue affect's my "ongoing" daily health, thus it becomes relevant to my Constitutional right to be free of cruel and Inhumane treatment.

* Bigger, 3-speed Fan's are given / allowed at other M.D.O.C. facilities.

Michigan Department of Corrections
GRIEVANCE APPEAL RECEIPT STEP II

**DATE:** 8/17/2022

**TO:** SIDORE 216661 **LOCATION:** JCF B-1

**FROM:** Grievance Coordinator: Cobb

**SUBJECT:** Receipt of the Grievance Appeal form

acknowledges receipt of your Step II grievance appeal, identifier **JCF / 2022 / 07 / 1478 / 12D3** which was received in this office on **8/17/2022**

unless you are otherwise notified, you should be provided a Step II response within 15 business days of the date your appeal was received or no later than **9/7/2022**

If you have not received a response by this date or are notified of an extension, you may submit your step III appeal to the Director's office.

Michigan Department of Corrections                    **JCF-2022-07-1478-12D3**

Grievance Step II Response                            **SEDORE 210661**

Grievant claims that he has been inappropriately denied a special accommodation allowing him to purchase, at his own expense, an 8-inch (or larger) fan OR to purchase and possess two 5-inch fans. Grievant asserts that he requires such accommodation to address the heat, humidity, and lack of sufficient air movement that he experiences in his cell. Grievant states that the lack of proper ventilation/air circulation puts him "at severe risk of respiratory failure or death."

Date of Incident is listed as 7/19/2022.

Review of the electronic medical record confirms that grievant was evaluated by a medical provider on 7/19/2022. Regarding grievant's request for a medical accommodation allowing him to self-purchase an 8-inch fan, the provider noted that this accommodation was not medically necessary. The provider added that medical (Health Care) does not write accommodations related to self-purchased items. He advised grievant to discuss the matter with his ARUS. Further record review reveals that grievant was seen by nursing staff and medical providers on numerous occasions throughout the summer. Per documentation of these encounters, grievant was not observed to be in respiratory distress during this time.

Grievant's claim is not supported. Health Care provides medically necessary items when these items are approved and ordered by Health Care for an individual prisoner's use. Grievant has no current medical detail or special accommodation for a fan. Per the Medical Services Advisory Committee guidelines, fans are not provided by Health Care. Health Care does not issue details or accommodations for prisoners to self-purchase items. Prisoners may purchase fans (size as authorized by custody) from an approved vendor through the procurement process. Health Care is not involved in that process. Likewise, Health Care has no control over ventilation in the housing units.

If grievant feels he is experiencing adverse symptoms re: heat/humidity/ventilation issues, he should promptly notify Health Care so that an evaluation may be conducted and necessary interventions provided.

Grievance denied.

| | | |
|---|---|---|
| Patricia Lamb, RN, BSN | *Patricia Lamb, RN, BSN* | September 8, 2022 |
| Respondent Name | Respondent Signature | Date |

MICHIGAN DEPARTMENT OF CORRECTIONS
**DISBURSEMENT AUTHORIZATION/CATALOG ORDER FORM**

Prisoners write clearly-illegible/incomplete forms will not be processed

Date: 9/8/2022

Lock Number:

| Prisoner Number: | Prisoner's Last Name: | Institution: |
| --- | --- | --- |
| 210661 | Sedore | "JCF" cotton Corr. facility  B-1 |

Send To!

Pay To: M.D.O.C. - Postage /u.s. mail

Address: Director's office - P.O. Box 30003
Lansing, michigan - 48909

Cost/Amount
$ 1.81

Reason/Description: (If to relative, identify relationship)   Step #3 Grievance Appeal
Identifier # JCF/2207/1478/1203

**COMPLETE THIS PORTION FOR CATALOG ORDERS ONLY**

| Page No. | Description of Item | Unit | Catalog Number | Color | Size | Qty | Unit Price | Total Price |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| — | Step #3 Grievance Appeal | — | — | | | | $ | $ |
| | # JCF/2207/1478/1203 | | | | | | | |
| | | | | | | | | |
| | (1- Envelope) | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Scott Sedore # 210661
Gilbert Cotton Correctional facility
3500 North Elm Road
Jackson, michigan - 49201

| | |
| --- | --- |
| Sub-Total | $ |
| Delivery Costs | $ |
| Tax (if applicable) | $ |
| Total Amount Enclosed | $ |

Scott Sedore          9/8/2022
Prisoner's Signature       (Date)

9-8-2022
R.U.M. or Authorized Agent       Date

Deputy Warden or Authorized Agent       Date

Warden or Authorized Agent       Date

Date went out!
SEP 09 2022
U.S. Mail

| | | |
| --- | --- | --- |
| | | |
| Code | Actual Expense | Batch Number |

Distribution: White-Business Office; Canary-Vendor; Pink-Property; Goldenrod-Prisoner

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

**ID#: 210661**              **Name: SEDORE,SCOTT**         HOUSING UNIT: B01BOTL
INSTITUTION:        JCF          DATE:       9/10/2022 5:11:06 AM

| Date | Description | Doc # | Credit | Debit |
|------|-------------|-------|--------|-------|
| 9/12/2022 | LEGAL STAMPS | | | $1.92 |
| 9/12/2022 | LEGAL STAMPS | | | $1.92 |
| **9/9/2022** | **STAMPS**  # JCF/2207/1478/1203  (step #3 Appeal) | | | **$0.81** |
| 9/2/2022 | GTL | | $200.00 | |
| 9/1/2022 | REGULAR COPIES DISBURSEMENT | | | $3.80 |
| 8/31/2022 | LEGAL STAMPS | | | $0.57 |
| 8/31/2022 | LEGAL STAMPS | | | $0.57 |
| 8/31/2022 | LEGAL STAMPS | | | $0.57 |
| 8/22/2022 | REGULAR COPIES DISBURSEMENT | | | $24.00 |
| 8/17/2022 | TAX REFUND | | $1418.49 | |
| 8/15/2022 | REGULAR COPIES DISBURSEMENT | | | $2.80 |
| 8/10/2022 | LEGAL STAMPS | | | $0.81 |
| 8/10/2022 | LEGAL STAMPS | | | $0.81 |
| 8/9/2022 | MEDICAL RECORDS COPIES | | | $1.00 |
| 8/2/2022 | VENDOR REFUND | | $50.61 | |
| 7/31/2022 | GTL | | $200.00 | |
| 7/21/2022 | REGULAR COPIES DISBURSEMENT | | | $1.70 |
| 7/18/2022 | LAWSUIT RECEIPT-IET | | $1000.00 | |
| 9/13/2022 | **         Current Balance: $7,191.44         ** | | | |





# STATE OF MICHIGAN
GRETCHEN WHITMER
GOVERNOR
## DEPARTMENT OF CORRECTION
LANSING
HEIDI E. WASHINGTON
DIRECTOR

**STEP III GRIEVANCE DECISION**

Rec #:     138577
28e

| | |
|---|---|
| **To Prisoner:** | Sedore                    #:  210661 |
| **Current Facility:** | JCF |
| **Grievance Identifier:** | JCF-22-07-1478-28e |
| **Step III Received:** | 10/3/2022 |

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".

**THE REJECTION IS UPHELD.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.          **JAN 1 2 2023**

**Richard D. Russell, Manager Grievance
Section, Office of Legal Affairs**

CC: Warden, Current Facility:   JCF
     Warden,  Grieved Facility:

GRANDVIEW PLAZA • P.O. BOX 30003 • LANSING, MICHIGAN 48909

Sedore v. Greiner, No. 19-10311, 2020 U.S. Dist. LEXIS 249600, 2020 WL 8837441, at *7 (E.D. Mich. Sept. 21, 2020)

("The fact that the prison did not reject this grievance for a procedural error that existed, if at all, until the final step is troubling .... As a matter of policy, it would be unfair to allow prison officials to address the merits of a prisoner's grievance, but then reject the grievance for a procedural error that existed throughout the process at the final step, where the prison official has the last word ... Put another way, when MDOC officials shift their rationale in denying a grievance from a purely merit-based determination to a procedural defect at the final step in the grievance process, the defect has been waived, thus exhausting the claim for purposes of federal suit.")

*"Exhibit #2"*

# Michigan Department of Corrections
## Medical Detail Special Accommodations

| **Off #:** 0210661 | **Offender Name:** SEDORE, SCOTT LEE |
|---|---|

| **X** No Work | | Exp. Date: | 12/31/2031 |
|---|---|---|---|
| ___ Lay In | | Exp. Date: | |

**Housing Restriction:**

| Restriction | Expiration Date |
|---|---|
| Elevator | |
| Bottom Bunk | |
| ███████████████ | |
| Electrical Outlet Required | |

**Physical Limitation/Restriction**

| Restriction | Expiration Date |
|---|---|
| Attendant Assist with Meal or Other Movement | |
| Lifting limited to 10 pounds | |
| H-Hearing Impaired | |

| Equipment | Start Date | End Date | Return Date |
|---|---|---|---|
| Personal Glasses | 11/17/2021 | | |
|   Glasses rec'd from MSI and distributed to prisoner 11/17/21 | | | |
| C-Pap | 09/07/2021 | | |
|   DeVilbiss CPAP/Autoset sn HD216185. | | | |
|   Humidifier sn HH433155. | | | |
|   Swift FX nasal pillow system #61500. | | | |
|   Distilled water. | | | |
|   ACMO 09/02/2021 | | | |
| Ice Pack | 12/18/2020 | | |
|   ICE pack TID. *indefinitely* | | | |
| Air Mattress | 02/18/2020 | | |
|   Mediation settlement agreement 2/3/2020 - indefinitely | | | |
|   New one Given on 8/24/2021 | | | |
| Wheelchair Cushion | 02/18/2020 | | |
|   ROHO cushion - Mediation settlement agreement 2/3/2020 indefinitely. | | | |
| Urinal | 02/18/2020 | | |
|   Mediation settlement agreement 2/3/2020. | | | |
| Personal Adaptive Equipment | 02/18/2020 | | |
|   Sock donner. Mediation settlement agreement 2/3/2020. | | | |
| Prescription Shoes - MSI Special Order | 01/10/2020 | 05/05/2022 | |
|   patient reports he has not had prescription shoes provided by MSI | | | |
| Cane - wood | 01/10/2020 | | |
| Bite Plate | 01/10/2020 | | |
|   Dental Bite Plate | | | |
| Shower Chair | 01/10/2020 | | |
| Extra Pillow | 01/10/2020 | | |
|   2 extra pillows | | | |
| Extra Blanket | 01/10/2020 | | |
|   Blankets must be cotton | | | |
| Incontinence Garment | 01/10/2020 | | |
| Prescription Shoes - Orthotic | 01/10/2020 | | |
|   with 1inch lift. ACMO approved indefinitely | | | |

| Off #: 0210661 | Offender Name: SEDORE, SCOTT LEE | | |
|---|---|---|---|
| **Equipment** | **Start Date** | **End Date** | **Return Date** |
| ▓▓▓▓▓▓▓▓ | 01/10/2020 | | |

Pt is allowed to purchase and keep a wheelchair of his choosing as long as it is consistent with MDOC specifications. Mediation settlement agreement 2/3/2020.

**Comments:**  May also have in possession  Reacher (ACMO approved indefinitely).
Assigned helper/attendant will be his roommate if not housed in a single cell. Mediation settlement agreement 2/3/2020.
Cup holder for wheelchair, ACMO approved 10-12-2020 indefinitely.

▓▓▓▓▓▓▓▓

05/17/2022
Date

| Offender Name: | **SEDORE, SCOTT LEE** | Off #: | **0210661** | Lock: | **B:01:Bot:L** |

*ALL EXPIRATION DATES ARE AT 24:00*

# G. ROBERT COTTON CORRECTIONAL FACILITY

*"Committed to Protect, Dedicated to Success"*

## WARDEN'S FORUM MEETING

"Exhibit #3"

COTTON LAW LIBRARY

IN LAW LIBRARY

| Prisoner Representatives | | | | | |
|---|---|---|---|---|---|
| A Unit | Moses | 768260 | I/J Unit | Billingsley | 402052 |
| A Unit | Caputo | 221386 | I/J Unit | Mosby | 523973 |
| B Unit | Hill | 341515 | K Unit | CLOSED | |
| B Unit | VACANT | VACANT | K Unit | CLOSED | |
| C Unit | Heard | 252329 | TA Unit | Porter | 940999 |
| C Unit | Bowman | 240982 | TA Unit | Olajos | 189246 |
| D Unit | Smith | 382629 | TB Unit | Moore | 401434 |
| D Unit | McKaskle | 501978 | TB Unit | Goins | 237165 |
| E Unit | McGuff | 247494 | TC Unit | Brown | 216145 |
| E Unit | Spangler | 170604 | TC Unit | Melnik | 761161 |
| F Unit | Downtinel | 144736 | TD Unit | McCaskill | 508291 |
| F Unit | Fawaz | 570500 | TD Unit | Proctor | 278458 |
| G Unit | Lundy | 193051 | TE Unit | Jones | 268606 |
| G Unit | VACANT | VACANT | TE Unit | Mestauskas | 353956 |
| H Unit | King | 372154 | TF Unit | Rushton | 306542 |
| H Unit | VACANT | VACANT | TF Unit | Lane | 403113 |

**Date:** Monday July 23, 2018

**Staff Attendance:** A/Deputy Warden Kisor, A/Deputy Warden Howard,  HUM Landfair, and Wardens Forum Coordinator McCumber-Hemry

**New Business:**
On behalf of the JCF prison population, the Warden's Forum would like to bring forth the following issues:

1. **PD05.02.110K states prisoners shall be paid one and a half times his/her normal rate of pay for those days he/she is required to work under conditions which are considered unusually difficult (ie: blood borne pathogen cleanup).  Why isn't this provision being followed?**
Per Classification Director Purdy prisoners are being paid their regular pay plus .5 , so it is 1.5 of their pay ( ie they are paid .84 /.42  (.5 of their pay) = $1.26) is being followed.  PD 05.02.110 K also states the Warden or designees shall determine what conditions shall warrant such pay.  The provision is being followed.  Effective August 1, 2018 PD05.02.110 has extensive changes throughout and bloodborne pathogen cleanup is one of the changes.  Prisoners are encouraged to read the updated policy.

2. **Could the Warden ensure first shift officers bring conflict callout print-outs to the units?**
Third shift picks them up and delivers them to the units.  We will ensure this is being done and follow up.  If problems continue please let us know.

Warden Forum Agenda
July 23, 2018

→ 3. ████████████████████████████████████████████

The sanitarian comes yearly to test the air in each unit. ████████

→ ████████ This will be addressed with all staff to keep these doors closed as well as the windows on base.  A/DW Howard will make rounds today and prior to the end of the month on 3rd shift to look and give instructions to all Capt's, Lt's, Sgt's, RUM's, ARUS's/PC's.

→ 4. ████████████████████████████████████████████

OP03.04.100E 18/F states, "Takes other appropriate action based on facility and housing unit capabilities, physical plant considerations and security level. Examples of action that ████ be taken are:  Placing large floor fans in strategic places in general population and segregation units ████████ Level I prisoners have ceiling fans as well as they can purchase personal fans. Level II and Level IV have ventilation systems as well as prisoners can buy personal fans. Further, in the Lower level of Level II the large fans would impede traffic if there is a need to evacuate, so they are not allowed per the fire inspector due to this.

→ 5. ████████████████████████████████████████████

No this is a security issue to have doors open to cells at any time especially during formal count.

Old Business:

→ 1. ████████████████████████████████████

Per Maintenance, Ed Dell they are not replacing fans in the bathrooms. Due to the ventilation systems in place in that area, fans are not necessary. Per PD 04.07.110 Attachment C allows prisoners in level I and Level II to have personal portable fans, state issued fans are no longer required to be provided in Level II and I. Regarding replacement fans for dayrooms, a work order needs to be submitted before we can look at replacing or repairing the fan.  The large ceiling fans in the temp-side units were added several years ago to assist with air flow as well, and most pole barn style housing units within the state do not have these.  All day rooms and quiet rooms compound wide will get fans.

2. **Could the Warden ensure that the store officer provide a written response to the store committee's agenda for the past year?**
This will be discussed with the store committee.

2

Warden Forum Agenda
July 23, 2018

3. **Could the Warden ensure that the Food Service Director meet with the committee members and provide responses to the agendas submitted?**
   When agendas are submitted meetings are held.

**Wardens/Staff Announcements:**
1. The Level 1 weight pit has new vinyl throughout.

2. The Level 2 weight pit is halfway completed due to running out of vinyl. New foam and vinyl is being purchased to complete the task.

3. The E/F Unit washing machine is due to arrive the 2nd week of August.

**Warden has approved the following movies:**

**July 2018**
Star Wars: The Last Jedi
Black Panther
ReMemory

**August 2018**
I Tonya
The 15:17 to Paris

Submitted By:

_____                         _____7/24/18_____
K Lindsey, Warden                                Date
G. Robert Cotton Correctional Facility

*"Warden Forum Agenda Minutes and facility generated memos signed by the Warden or designee shall be posted and reviewed by staff. These documents may reflect pertinent information that directly affects the facilities current process or procedure. This information shall be considered a directive from the Warden and staff shall implement change accordingly. All facility process or procedure changes will be reflected in the next revision of the document originally addressing the issue 'IE JCF OP, facility rule)."*

Cc:   L. Rapelje Assistant Deputy Director CFA Southern Region
      Paul Slagler Administrative Assistant to Asst Dep Director
      Cindy L Thaden CFA
      Keith Barber, Ombudsman Office
      K Lindsey, Warden
      K Napier, Administrative Assistant
      T Kisor, A/Deputy Warden
      B Johnsen A/Deputy Warden
      C Blair, Facility Manager
      RUMs / ARUSs / PC (posted on unit bulletin boards)
      C. McCumber-Henry Warden's Forum Coordinator
      T Schubring Trinity Food Service Director

3

Warden Forum Agenda
July 23, 2018

Department Heads
Warden's Forum Representatives
Library
Control Center
JCF LAN email
File

# G. ROBERT COTTON CORRECTIONAL FACILITY

*"Committed to Protect, Dedicated to Success"*

## WARDEN'S FORUM MEETING

**"Exhibit #4"**

### Prisoner Representatives

| Unit | Name | Number | Unit | Name | Number |
|------|------|--------|------|------|--------|
| A Unit | Moses | 768260 | I/J Unit | VACANT | VACANT |
| A Unit | Caputo | 221386 | I/J Unit | Mosby | |
| B Unit | Hill | 341515 | K Unit | CLOSED | |
| B Unit | Billingsley | 402052 | K Unit | CLOSED | |
| C Unit | Heard | 252329 | TA Unit | Porter | 940999 |
| C Unit | Bowman | 240982 | TA Unit | Olajos | 189246 |
| D Unit | Smith | 382629 | TB Unit | Moore | 401434 |
| D Unit | McKaskle | 501978 | TB Unit | Goins | 237165 |
| E Unit | McGuff | 247494 | TC Unit | VACANT | VACANT |
| E Unit | Thompson | 181739 | TC Unit | Melnik | 761161 |
| F Unit | Downtinel | 144736 | TD Unit | McCaskill | 508291 |
| F Unit | Fawaz | 570500 | TD Unit | Proctor | 278458 |
| G Unit | Lundy | 193051 | TE Unit | Jones | 268606 |
| G Unit | VACANT | VACANT | TE Unit | Vanhaven | 976290 |
| H Unit | King | 372154 | TF Unit | Rushton | 306542 |
| H Unit | VACANT | VACANT | TF Unit | Lane | 403113 |

**Date:** Monday August 27, 2018

**Staff Attendance:** A/Deputy Warden Johnsen, Facility Manager Blair, HUM Landfair, RUM King, FSD Schubring, and Wardens Forum Coordinator McCumber-Hemry

**New Business:**
On behalf of the JCF prison population, the Warden's Forum would like to bring forth the following issues:

1. **Why aren't the facility Classification Director, RUM's and Assignment Supervisors complying with JCF-OP05.01.100 Section III #8? When a prisoner is terminated from his job, the assignment supervisor is not submitting a CSJ-363 or CJS-363A to the Classification Director; nor is the PC/ARUS/RUM holding the reclassification hearings or making recommendations as required by OP.**
The 363's are completed anytime a prisoner is terminated from a position and/or placed on '00'. A prisoner cannot be terminated/00 without a 363 even if there is a misconduct involved or a waiver signed. Regarding the RUM/ARUS/PC they do not do "reclassification hearings" as there is no such thing as this. When a prisoner is terminated/placed on "00" it is the prisoners responsibility to request to be reclassified through their ARUS/PC/RUM 2 weeks prior to end of the 30 days "00" status ending. JCF-OP 05.01.100 is being followed regarding termination and

Warden Forum Agenda
August 27, 2018

363's being completed.   The ARUS/PC/RUM does the CSX-175 for reclassification.

2. **Under what conditions would the Warden restore either good-time or disciplinary credits under PD 03.01.100 Good Time and PD 03.01.101 Disciplinary Credits (L-N)?**
The Warden follows the direction and guidance given in both PD 03.01.100 Good Time Credits, Paragraph Y 1-2 and PD 03.01.101 Disciplinary Credits, Paragraph BB (1-2), CC (1-8), DD, EE, FF, GG. Prisoners do not have a right to have forfeited good time credits and/or forfeited disciplinary credit restored but the Warden may consider the appropriate factors listed in the policies when considering restoring forfeited good time and disciplinary time.

3. **The population would like to know what is the schedule to have bedding (blankets) exchanged/washed?  As the Warden knows, there was a recent bed-bug outbreak, and several units had to be quarantined and visits canceled because of health issues. PD03.03.130 Humane Treatment and Living Conditions for Prisoners paragraphs B (1) (3), PD 04.03.102 Sanitation and Housekeeping Standards.**
A prisoner can kite the QM for bedding exchange.  You will not necessarily get NEW bedding in exchange, but it will be laundered and clean.  When bedrolls are issued, they are all laundered and clean.  There is no guarantee you will get new items.

4. ████████████████████████████████████
There is a thermometer in each housing unit that provides the temperature to staff working the housing units. Fans are available for prisoners to purchase and have in their cells to also cool their area.  We have also addressed the ventilation system usage to staff and the doors being propped open.  Curtains will not be allowed.

5. **The population would like the Warden to investigate why visitor applications are taking nearly a month to be processed?**
The LEINS were checked and we had some that were two 1/2 weeks out. Third shift has had some issues due to printer problems and being able to print the LEINS out. We are working on getting a printer. As of today, we are a week out. Visiting applications are being processed in a timely manner.

2

Warden Forum Agenda
August 27, 2018

6. **The population requests the Warden to investigate why housing unit officers are refusing to allow receptacles to collect pop bottles? i.e.: C unit.**
All units have receptacles available in their respective housing units for the pop bottles. C unit's has been put back in its proper place and staff have been advised they need to ensure it remains there.

**Old Business:**
1. **The facility is still not in compliance with PD 04.04.130 Prisoner Movement within an Institution Paragraph D, H. Third shift is still not bringing out conflict callouts to the units each night.**
Third Shift Command has been spoken to about this, if it continues to be an issue let us know. An email reminder has been sent as well. This has been resolved.

2. **October 23, 2017 #5, Early Chow Callouts for GED students, VPP, BRIDGES, T4C, Law Library, Health Care and other Core Programming callouts. This issue was "tabled until we get the new med-line window done and start feeding Level 4's in and see if that fixes the problem." However, the problem has not been fixed. Could the Warden simply fix the problem by adding early-chow to the above said callouts?**
We are not going to put everyone that is in GED, Law Library, Health Care, and other Core programming on Early Chow unless it is deemed necessary. This could feasibly create a bigger problem. We have identified those prisoners/callouts that need early chow placed on their callouts and have done so. Officers can call Control Center for permission for those prisoners who may require it for a callout to have them sent to early chow as there are instances where this may be necessary. As we see the need to place early chow on prisoner's callouts; we will do so. The new ADW's are looking at the movement schedules and will adjust as needed.

3. **In the December 2017 minutes, the Warden stated he was willing to approve a prisoner Re-entry/Job Search seminar. However, the Warden just denied both proposals submitted July 24, 2018. Why were they denied?**
Just because the proposals were denied does not mean the facility is not working towards providing positive events to benefit the population in things such as Job Search/Re-entry. We just had a successful Career/Job Fair that had people from various agencies helping and guidance to the population. We will continue to look at more positive events such as that one. We also have a Re-entry Facility Coordinator/Facility Veteran Liaison at this facility who also provides service for the population.

3

Warden Forum Agenda
August 27, 2018

4. **July 2017 meeting minutes #5-What is the status of having the permanent yard bathrooms fixed?  It has been over a year.**
This has been put on hold due to cost.  There are issues with plumbing, winterizing, roofing, etc.  We are going to stay with the porta-johns until we find another solution.  The porta-johns are cleaned twice a week.  There was a week when we didn't have a driver to come in and clean.  There have not been any issues since that we are aware of.

5. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
They are not TV shelves, they are writing surfaces.  Level 2 has desks as a writing surface whereas Level 1 does not.  Therefore Level 1 has the bottom bunk shelf as their writing surface. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Wardens/Staff Announcements:**
1. Late night power for Labor Day weekend has been approved.

2. The movie channel is being repaired.  We have been troubleshooting for a few weeks now.  Neither repairs that the vendor has completed have fixed the problem.  A subcontractor will be coming in to look at the issues.  We are actively trying to get this repaired.  We will show the movies that have been missed.

**Warden has approved the following movies:**

> **August 2018**
> I Tonya
> The 15:17 to Paris

Submitted By:

K Lindsey, Warden
G. Robert Cotton Correctional Facility

Date

*"Warden Forum Agenda Minutes and facility generated memos signed by the Warden or designee shall be posted and reviewed by staff. These documents may reflect pertinent information that directly affects the facilities current process or procedure. This information shall be considered a directive from the Warden and staff shall implement change accordingly. All facility process or*

4

Warden Forum Agenda
August 27, 2018

*procedure changes will be reflected in the next revision of the document originally addressing the issue. (IE JCF OP, facility rule).* '

Cc      L Rapelje Assistant Deputy Director  CFA Southern Region
          Paul Slagter  Administrative Assistant to Asst  Dep  Director
          Cindy L  Thaden  CFA
          Keith Barber  Ombudsman Office
          K  Lindsey  Warden
          K  Napier, Administrative Assistant
          T  Kisor  A/Deputy Warden
          B  Johnsen  A/Deputy Warden
          C  Blair  Facility Manager
          RUMs / ARUSs  PC (posted on unit bulletin boards)
          C  McCumber Henry Warden's Forum Coordinator
          T. Schubring  Trinity Food Service Director
          Department Heads
          Warden's Forum Representatives
          Library
          Control Center
          JCF LAN email
          File

# G. ROBERT COTTON CORRECTIONAL FACILITY

*"Committed to Protect, Dedicated to Success"*

## WARDEN'S FORUM MEETING

"Exhibit #5"

| Prisoner Representatives | | | | | |
|---|---|---|---|---|---|
| A Unit | Moses | 768260 | I/J Unit | VACANT | VACANT |
| A Unit | Caputo | 221386 | I/J Unit | Mosby | 523973 |
| B Unit | Hill | 341515 | K Unit | CLOSED | |
| B Unit | Billingsley | 402052 | K Unit | CLOSED | |
| C Unit | Heard | 252329 | TA Unit | Porter | 940999 |
| C Unit | Bowman | 240982 | TA Unit | Olajos | 189246 |
| D Unit | Smith | 382629 | TB Unit | Moore | 401434 |
| D Unit | McKaskle | 501978 | TB Unit | Goins | 237165 |
| E Unit | Vann | 263113 | TC Unit | VACANT | VACANT |
| E Unit | VACANT | VACANT | TC Unit | Melnik | 761161 |
| F Unit | Downtinel | 144736 | TD Unit | McCaskill | 508291 |
| F Unit | Fawaz | 570500 | TD Unit | Proctor | 278458 |
| G Unit | Lundy | 193051 | TE Unit | Jones | 268606 |
| G Unit | VACANT | VACANT | TE Unit | VACANT | VACANT |
| H Unit | Curtiss | 192071 | TF Unit | Rushton | 306542 |
| H Unit | VACANT | VACANT | TF Unit | Swan | 977840 |

**Date:** Monday September 24, 2018

**Staff Attendance:** Warden Lindsey, A/Deputy Warden Johnsen, ADW Howard, ADW Kisor, RN13 Lester, Physical Plant Superintendent E. Dell and Warden's Forum Coordinator McCumber-Hemry

**New Business:**
On behalf of the JCF prison population, the Warden's Forum would like to bring forth the following issues:

1. **PD03.04.100, Health Services, states in paragraph X, "Health care staff shall schedule an annual health care screening appointment of each prisoner in a CFA facility within 30 calendar days before or after the prisoner's birthday, unless the prisoner is in SAI".  However, as of date, JCF Health Care is not in compliance with said averment. Annual health care screenings are back logged by two months. What step has Warden Lindsey taken to ensure AHCS appointments are scheduled according to policy?**
Healthcare is working diligently to get AHS up to date and we have staff coming from other facilities to assist in getting up to date.

2. **Population is concerned about the treatment cancer patients are receiving.   Specifically, cancer patients complain the pain relief medication is not working, therefore they are in constant pain.  They further complain the medication they need is not being provided, such**

Warden Forum Agenda
September 24, 2018

as narco, even though the physician recommended that it be provided. Population would like to know how do cancer patients go about getting the right medications?
This has not been addressed at the committee level.

3. **The population would like for the Warden to address and monitor medical emergencies. PD03.04.125 states "Employees shall provide appropriate and timely response to medical emergencies....." Health Care staff has told the population the reason they do not respond promptly to emergencies is because they are understaffed. Furthermore, nurses are walking at normal pace to emergencies. The population would like for the Warden to monitor nurses' reaction times to medical emergencies and to take corrective action. PD 03.03.130 Humane Treatment and Living Conditions for Prisoners paragraph H.**
According to PD 03.04.125 "Whenever a person in a CFA or an FOA facility is determined to need emergency medical attention, INITIAL staff response to that emergency shall begin immediately but no later than four minutes after discovery. They also shall initiate emergency first aid <u>as they are qualified to provide</u> as soon as possible, unless the victim is clearly deceased." Nursing staff is responding as soon as possible to emergency requests in the facility. Staffing continues to increase as we continue to train staff as they are hired. We are working on fixing the old mini ambulance since we have been unable to order a new one.

4. **People who are either very sick, weak from medical treatments, or serious injury to their leg (broken or sprained ankle, etc.) are told by medical staff, that no medical detail for a lay-in tray would be provided. If that person cannot make it to the dining hall, he just won't eat. PD03.03.130 Humane Living Conditions for Prisoners paragraph E.**
Prisoners that are housed in this facility are to perform their own ADL's. This includes getting back and forth to the dining hall. The medical staff provide the medical equipment that is needed to transport prisoners throughout the facility. We do not do medical tray lay ins.

5. **There are two inter-related issues population would like for Warden Lindsey to resolve. First, caustics/cleaning supply refills are being called during meal times. If there is no one in the housing unit due to being in the dining hall, then we go without cleaning supplies. Also, if a full tray is not returned, the staff governing cleaning refills refuse to refill those bottles that are brought back. Both acts are in violation of PD04.03.102 Sanitation and Housekeeping Standards paragraph E,**

2

Warden Forum Agenda
September 24, 2018

because necessary cleaning materials and equipment are not being
issued by staff.
We will investigate the issue and work on scheduling around meal times.
This is part of the movement schedule the ADW's are working on. You need
to return all bottles to get new bottles issued for accountability reasons.

6. **The population would like for the Warden to resolve the dispute over
who is responsible for repairing and/or removing broken weight-pit
equipment and installing new equipment. Maintenance states it's not
their job and they don't want to be liable for weight pit equipment
installing and repairs. Moreover, no company wants to take a bid to
repair, replace, or install weight pit equipment. Meanwhile broken
equipment sits in Cotton weight pit and newly purchased equipment
sits idle.**
We will be installing the weight equipment in the future.

7. **There is a problem with the mailroom and business office over-
charging postage fees for oversize mail. We have no way to challenge
mailroom weight and postage determinations. Is Warden Lindsey
willing to put a scale in each unit for PC/ARUS/RUM's to determine the
weight of the mail and to provide a list of the different price options
the post office offers in oversize mail?**
We are looking into the possibility of allowing scales and what type of scales
are available that would be approved to be used in the facility. ADW Kisor
has found a scale that will be ordered and tested in one unit for accuracy
and durability for 60 days. If that works, then more will be ordered.

8. **The population would like for Warden Lindsey to ensure wheelchairs
are in each housing unit, for medical emergencies.**
This has not been addressed at the committee level.

9. **The mailroom or designee that monitor and determine which photos
are acceptable to receive via JPay are not adhering to the standards
set forth in PD05.03.118 Prisoner Mail paragraph NN. Could the
Warden ensure staff follow policy and provide a way for the population
to challenge photo rejections?**
Without specific examples this issue cannot be addressed. The Warden will
look at specific examples.

10. **PD05.03.115 Law Libraries paragraph I states "Library coverage
generally shall be provided only by the librarian or a library
assistant/library technician; however, another staff person shall
provide coverage when the librarian and his/her staff are temporarily
away from the library (e.g.: staff meeting) or absent from the facility,**

3

Warden Forum Agenda
September 24, 2018

including if the positions are temporarily vacant.  This is not being
followed and the library is then closed denying prisoner's access to
the library and to the courts.
The Law Library is staffed properly and is well within the hours required by
policy, which is the law library must be available for 25 hours per week, with
12 of those hours after 1700 hours or on weekends. Since we are above
the required hours, if the law library is closed for any reason we do not need
to have it covered by other staff in place of the Librarian or their staff.
Further, we do not have the staff available to cover the Library nor is it
needed. Prisoners are given opportunities to make up their Law Library if it
is cancelled so they are not being denied their access to the law Library.
ADW Kisor will investigate the rescheduling of cancelled callouts further.

**Old Business:**
1. **There are frequent delays in the movie selection process. Can this
   matter be resolved by having JCF-OP05.03.101 amended to reflect the
   LTA committee Chairman (Mr. Fairley) to be the Warden's Designee as
   the movie and selection committee chairman?**
   We will continue to follow the current policy directive PD 05.03.101
   (9/18/2006) and OP-JCF operating procedure (6/27/2013) Movie Selection
   and Previewing. The movie committee chair will remain the same.

2. **There is a continuous problem with minutes from the Warden's Forum
   and sub-committees not being posted in the housing units and library.
   Could the Warden ensure the minutes are being posted?**
   Housing Staff and Library staff have been advised that they are to ensure
   that the Warden's Forum Minutes are posted each month and have now
   been provided additional access to the minutes, so they can ensure they
   are being posted once finalized.  Committees will be reminded to send
   meeting minutes to the library as well.  We will continue to monitor to ensure
   this is being done.

3. ██████████████████████████████████████████████████
   ██████████████████████████████████████████████████
   ██████████████████████████████████████████████████
   ██████████████████████████████████████████████████

E. Dell was present at the meeting.  He explained that the ventilation system
is used for fire purposes, if the fire alarm is pulled it automatically comes on
to clear the unit of smoke.  If being used to bring in air to circulate in the
units, then it will pull in the air from the outside at the temperature that it is
outside. ████████████████████████████████  There is no air

4

Warden Forum Agenda
September 24, 2018

conditioning.  In the winter, the air is warmed over a coil and heats it to keep the units warm.

4. **The population has raised the issue of the Store and PBF committees not receiving written responses.  There have been no written responses to PBF and Store agendas since April 2018.  Could the Warden have the designated staff provide written responses to April, May, June, July and August 2018 minutes?  We also request account statements, balance sheets, and ledgers which have not been provided since October 31, 2017 to present.**
The missing Store and PBF meeting minutes have been distributed as of 9/24/18.  The October through March PBF financial statement were distributed on 9/24/18.  The March financial statement is the most recent statement, which was received from the regional business office in September.

5. **What is the status of the "early chow" details being placed on callouts?  The population continues to lose valuable programming because of time out of class.**
We will not be putting "early Chow" on the itinerary.  Instead we are considering incorporating into the JCF movement plan allowing prisoners to eat chow 30 minutes prior to the call out times.

**Wardens/Staff Announcements:**
1. The Forum asked about being proactive with flu season approaching and having hand sanitizer stations at the officer's desk.  Warden Lindsey researched this and was told that no other facilities have these and due to food codes, it is not suggested by the Regional Sanitarian.  Frequent handwashing with soap is always the best approach.

2. The Forum expressed concerns about spoiled milk and quality of milk.  Warden Lindsey will address with FSD Schubring.

**Warden has approved the following movies:**

**September**
Avengers: Infinity War
Breathe
Hurricane Heist

**October**
Insidious: Last Key
Truth or Dare

5

Warden Forum Agenda
September 24, 2018

**November**
A Quiet Place
Pacific Rim: Uprising
Tomb Raider

**December**
Ready Player One

Submitted By:

_____

K Lindsey, Warden
G. Robert Cotton Correctional Facility

_____
Date  10/3/18

*"Warden Forum Agenda Minutes and facility generated memos signed by the Warden or designee shall be posted and reviewed by staff. These documents may reflect pertinent information that directly affects the facilities current process or procedure. This information shall be considered a directive from the Warden and staff shall implement change accordingly. All facility process or procedure changes will be reflected in the next revision of the document originally addressing the issue. (IE JCF OP, facility rule)."*

Cc:     L. Rapelje Assistant Deputy Director, CFA Southern Region
        Paul Slagter, Administrative Assistant to Asst. Dep. Director
        Cindy L. Thaden, CFA
        Keith Barber, Ombudsman Office
        K. Lindsey, Warden
        K. Napier, Administrative Assistant
        T. Kisor, A/Deputy Warden
        B. Johnsen, A/Deputy Warden
        C. Blair, Facility Manager
        RUMs / ARUSs / PC (posted on unit bulletin boards)
        C. McCumber-Henry Warden's Forum Coordinator
        T. Schubring, Trinity Food Service Director
        Department Heads
        Warden's Forum Representatives
        Library
        Control Center
        JCF LAN email
        File

6

# ROBERT CORRECTIONAL FACILITY

*"Committed to Protect, Dedicated to Success"*

## WARDEN'S FORUM MEETING





### Prisoner Representatives

| A Unit | Moses | 768260 | J Unit | Tyler | 758420 |
|--------|-------|--------|--------|-------|--------|
| A Unit | King | 760461 | J Unit | King | 814508 |
| B Unit | Watson | 148946 | K Unit | CLOSED | |
| B Unit | Wagner | 821351 | K Unit | CLOSED | |
| C Unit | Johnson | 374140 | TA Unit | Curby | 196969 |
| C Unit | Gee | 196523 | TA Unit | Gavenda | 759489 |
| D Unit | Stokes | 600702 | TB Unit | Wilson | 864210 |
| D Unit | Rose | 524217 | TB Unit | View | 891185 |
| E Unit | Vann | 263113 | TC Unit | Clements | 486825 |
| E Unit | Jones | 166505 | TC Unit | Stanley | 289277 |
| F Unit | Carradine | 179317 | TD Unit | Anderson | 827896 |
| F Unit | Boussum | 168825 | TD Unit | Lano | 492084 |
| G Unit | Sattler | 833872 | TE Unit | Morgan | 607180 |
| G Unit | Lundy | 193051 | TE Unit | Phillips | 303048 |
| H Unit | Curtis | 192071 | TF Unit | Glover | 975503 |
| H Unit | Spirdione | 947841 | TF Unit | Brendel | 687237 |

**Date:** Wednesday July 24, 2019

**Staff Attendance:** Warden Lindsey, DW Howard, ADW Kisor, FSD Coffelt, Facility
Manager Schubring, Warden's Forum Coordinator Hemry

**New Business:**
On behalf of the JCF prison population, the Warden's Forum would like to bring
forth the following issues:



No, we will not consider putting anything on the windows as it creates a
safety and security issue for the facility. Fans have been ordered and some
are already in place. Placement of them will be addressed in the rules and
with staff. J Units fans are also on order.

2. **This Forum wants clarification on why Level 4 movement is being shut
   down or postponed particularly store and yard due to isolated
   incidents?**
   There are, at times, situations or incidents which require staff to prioritize
   activities and delay or postpone some things. Obviously, urgent and
   emergency events take precedence over the schedule for yard, and may,

in fact, occasionally, but rarely cause a delay in store.  If there are specific
instances, give dates to Warden's Forum Coordinator Hemry.

3. **Prisoners are entitled to a receipt to all disbursements.  Why does the
   population not receive a receipt from the GTL phone disbursements
   and why does it take so long for phone disbursements to be
   processed?**
   All phone disbursements are entered within two business days of receipt by
   the business office in accordance with policy.  Mr. Schubring has been away
   from the facility for training and audits, and Mr. Bolton has been working two
   positions simultaneously, and was also away from the facility in the past
   month.  We are in the process of hiring a new account tech, so the forms
   should be received on a more frequent basis soon.

4. ██████████████████████████████████

   Additional efforts (administrative rounds, email reminders to shift
   commanders, and the ventilation memorandum was shared with staff) were
   completed last week after this information was brought to the warden by the
   forum.

**Old Business:**
1. **This Forum is asking Warden Lindsey what clarification did he get in
   response to him speaking with Lansing about the Visiting Room PD
   language that states "prior to consumption"?  If Warden Lindsey has
   yet to receive clarification this Forum respectfully propose that
   Warden Lindsey, consider allowing the PBF to purchase cellophane
   wrap to sit at the officer's station to cover the food especially now in
   the summertime where flies and ants are prevalent in the VR.  This
   issue has been lingering since April 2019.**
   We are not making any changes to this due to the language in the state-
   wide visiting standards.  The issue was already addressed within the forum
   in May 2019.

2. **This Forum respectfully asks Warden Lindsey to revisit the cleaning
   schedule for the visiting room.  The visiting room is not being cleaned
   properly including the ceiling fans which also creates a health risk for
   food being uncovered.  Also, the toys are filthy can these items please
   be cleaned in front of supervision to ensure proper cleaning?**
   Toy cleaning is now part of the daily duties of the front house porter(s).  A
   work order was submitted to have the ceiling fans inspected and cleaned, if
   necessary.  Ceiling tiles are on order to replace as well.  The kid's couches
   will be washed in the machine as well.

2

3. **This Forum is asking Warden Lindsey why are some officers honoring early chow and others not? This Forum is asking Warden Lindsey to send a memo of some sort to ensure that all officers 1st and 2nd shift honor especially when early chow is printed on a prisoner's pass.**
I cannot explain why some are honoring the early chow and some are not. It is noted that this is the third time this specific issue has been brought up, so we will continue to address it with the shift commanders. Specific incidents, with detailed information (i.e., time, place, staff involved) may be forwarded, in writing, to Forum Coordinator Hemry.

4. **Cotton side prisoners are still experiencing the yard being opened later than what it supposed to. On 7/13/19 the yard was opened close to nearly 1900, also on 7/15/19 the yard was opened at 1847 and when inmates questioned CO Lamb he retorted "act like a prisoner and go to yard".**
ADW Johnsen has been monitoring yard operations along with A/Captain Anderson. Please keep in mind that we may have situations where we are waiting for staff to return from other assignments or critical incidents to open the yard.

**Open Discussion:**
1. The Block Rep issue in B unit has been resolved at this time.

2. The Forum asked about bathroom use during count. New unit rules are coming out to address this issue.

3. 

4. There is a delay in mail. Facility Manager Schubring reported that currently the mailroom is about a week behind due to vacations and training, the mail should be caught up soon.

5. The Forum questioned food being thrown away when prisoners are packed up for segregation. PD 04.04.112 Letter Y and JCF-OP 04.04.112 Attachment G provide more information on this. If you feel food items have been thrown away in violation of these policies, you can file a State Administrative Board Claim under PD 03.02.131 or seek reimbursement through the Prisoner Benefit Fund per PD 04.02.110.

6. The Forum asked about the spoiled milk that was recently served in the chow hall. FSD Coffelt reported that 108 crates of milk were thrown out that were found to be spoiled BEFORE the expiration date. This was an issue

3

with the vendor that has been addressed and FS corrected the milk issue on the lines when it was notified of the problem by the population as well.

**Warden has approved the following movies:**

**August**
Glass
Escape

**September**
Mortal Engines
Fighting with my Family
Fantastic Beast: The Crime of Grindewald

**October**
Replicas
Green Book

Submitted By:

K Lindsey, Warden
G. Robert Cotton Correctional Facility

Date 7/29/19

*"Warden Forum Agenda Minutes and facility generated memos signed by the Warden or designee shall be posted and reviewed by staff. These documents may reflect pertinent information that directly affects the facilities current process or procedure. This information shall be considered a directive from the Warden and staff shall implement change accordingly. All facility process or procedure changes will be reflected in the next revision of the document originally addressing the issue. (IE JCF OP, facility rule)."*

Cc:    L. Rapelje Assistant Deputy Director, CFA Southern Region
       Paul Slagter, Administrative Assistant to Asst. Dep. Director
       Cindy L. Thaden, CFA
       Keith Barber, Ombudsman Office
       K. Lindsey, Warden
       K. Napier, Administrative Assistant
       J. Howard A/Deputy Warden
       T. Kisor, Assistant Deputy Warden
       B. Johnsen, A/Assistant Deputy Warden
       T. Schubring, Facility Manager
       RUMs / ARUSs / PC (posted on unit bulletin boards)
       C. McCumber-Hemry Warden's Forum Coordinator
       A. Coffelt, Food Service Director
       Department Heads
       Warden's Forum Representatives
       Library
       Control Center

4

Warden Forum Agenda
July 24, 2019

JCF LAN email
File

# G. ROBERT COTTON CORRECTIONAL FACILITY

*"Committed to Protect, Dedicated to Success"*

## WARDEN'S FORUM MEETING

**Prisoner Representatives**

| Unit | Name | Number | Unit | Name | Number |
|------|------|--------|------|------|--------|
| A Unit | VACANT | VACANT | J Unit | TYLER | 758420 |
| A Unit | BURTON | 322888 | J Unit | HUGHES | 697047 |
| B Unit | HILL | 341515 | K Unit | CLOSED | CLOSED |
| B Unit | COLEMAN | 170248 | K Unit | CLOSED | CLOSED |
| C Unit | GEE | 196523 | TA Unit | CURBY | 196969 |
| C Unit | VACANT | VACANT | TA Unit | CARTIER | 453791 |
| D Unit | VACANT | VACANT | TB Unit | BROOKS | 351208 |
| D Unit | VACANT | VACANT | TB Unit | ANGULA-SALAZAR | 295178 |
| E Unit | SAMUELS | 136716 | TC Unit | ARRINGTON | 188575 |
| E Unit | BUTLER | 246650 | TC Unit | HARMON | 430376 |
| F Unit | DOWTIN-EL | 144736 | TD Unit | ANDERSON | 827896 |
| F Unit | ARCHER | 528415 | TD Unit | FOLLOWELL | 447762 |
| G Unit | LUNDY | 193051 | TE Unit | DAVIS | 790614 |
| G Unit | AUSTIN | 218161 | TE Unit | LANE | 403113 |
| H Unit | REYNOLDS | 399207 | TF Unit | GLOVER | 405155 |
| H Unit | SHELTON | 588130 | TF Unit | BRENDEL | 687237 |

*"Exhibit #4"*

**Date:** Wednesday, March 25, 2020

**Staff Attendance:** Warden Nagy, A/Deputy Warden Rurka, Assistant Deputy Warden Kisor, Assistant Deputy Warden White, Facility Manager Schubring, Warden's Forum Coordinator Royalty

**Warden's Announcements:**

**1. Movies**

During our current facility status, movies selected and purchased by the Warden's Forum will play on a rotating basis of 3-5 movies a day, depending on the available supply. These movies will be changed on each shift.

**New Business:**

**1. With programs shut down temporarily, how will the parole board process be affected? What will happen with prisoner who are up to see the parole board, but are unable to finish their programming?**

Programs have resumed, but they may be in different locations to accommodate social distancing.

**2. Why are units being called two at a time for chow?**

We are slowing chow lines down in order to accomplish social distancing and ensure the safety of prisoners and staff during these unusual times.

Warden Forum Agenda
March 2020

**3. Can handicap prisoners be called first for med lines and chow?**
> We are looking at all different ways to make this run smooth for all and will be reevaluating it to ensure we are doing the best for all regarding chow and med lines. This is an option we will look at as well.

**4. Can prisoners be allowed to take fruit and dessert out of the chow hall while the facility is under the current facility status? This is in an effort to shorten the amount of time prisoners are eating in the chow hall and to move units through the chow hall quicker.**
> No, we will not change what is allowed to be taken out of the chow hall.

**5. Will prisoners be tested for Covid-19?**
> Healthcare staff will meet with prisoners who have presented with symptoms of COVID-19. The MDOC cannot make the diagnosis of the COVID-19, however, the department is following the Michigan Department of Health and Human Services protocol. If a prisoner has symptoms and meets the criteria for testing, the MDOC will seek permission from the local health department in the county the prison is in to conduct a test utilizing a test kit. A limited number of test kits have been distributed to all MDOC facilities but can only be used with the permission of local community health officials.

**6. Can level IV TL/LOP prisoners utilize the hearing-impaired phones from 1230-1330 while under the facility status?**
> No, those phones are designated for hearing impaired prisoners.

**7. Can larger toothbrushes be ordered for the facility status? The current toothbrushes do not prevent a person's hand from touching their mouth while brushing their teeth.**
> No, we will continue ordering the approved toothbrushes as the bigger ones pose a security issue to the facility. Everyone should be washing their hands and continuing with proper hygiene.

**8. Are vendors going to be allowed in the facility to service microwaves and pop machines in the units?**
> Yes, as of today, March 24, 2020, but make a note that vendors have reported that they are running into difficulties with their suppliers due to parts coming from foreign countries. Eight microwaves have been ordered to replace microwaves that are currently broken. The facility also plans on buying additional microwaves to have on stand-by.

**09. Is the facility going to provide non-alcoholic hand-sanitizer?**
> No, non-alcoholic hand-sanitizer is not recommended by the CDC. Wash your hands often with soap and water.

**10. Can the housing units get soap dispensers or be provided with more soap?**
> No, soap dispensers will not be installed, and we have plenty of hand soap for the housing units. More soap was just ordered to ensure we have supply.

2

Warden Forum Agenda
March 2020

11. **While under facility status, can a work detail yard be added?**
    We can look into a detail yard, but it may not be feasible at this time.

12. **What is the new schedule/procedure for Law Library under facility status?**
    The Librarian is coming up with the schedule. Everyone will get their required hours per policy, but we may be tweaking it as we go to ensure we are getting everyone who needs it in.

13. **Can prisoners be provided clarity on the use of bleach?**
    Directions on use of bleach have been sent to the population as well as staff. Each unit is supplied with four bottles.

14. **Can JPAY provide extra games while under facility status?**
    No, they are currently offering 2 free stamps.

15. **Do the two free phone calls count against the five phone calls per week?**
    No, the two free phone calls are in addition to the regular calls.

16. **Can a power washer be brought in to clean the bathrooms/showers?**
    No, it tears up the tile and grout. Staff should ensure that unit porters are properly cleaning the showers.

17. **Can unit doors be propped open while bleach is being used?**
    No, safety and security must be maintained. The bleach bottles should be properly diluted.

18. **What is the procedure to ensure prisoners get access to water during mass mobilizations?**
    We will address properly as situations come up due to each situation with mobilizations and mass mobilizations being different

19. **What is the status of the weight equipment in maintenance?**
    Maintenance it is taking the weight equipment into the facility today (March 24, 2020). Maintenance will install the equipment once the equipment is assembled.

20. **Can there be designated days that funds are to be processed for property disbursements?**
    No, with the state of emergency, regional staff working from home, and uncertainty of future protocol, we cannot make this guarantee.

**Old Business:** None.

3

Warden Forum Agenda
March 2020

**Open Discussion:**

██████████████████████████████████
The current ventilation units have passed previous inspection. A/Deputy Warden
Rurka will follow up with maintenance to evaluate if any follow up is needed.

**2. Cam a tint be placed on the housing unit windows?**
No, this would be in violation of PREA and safety and security.

**3. The population has concerns over the water pressure of the sinks in the units.**
If you believe your unit sinks have low water pressure, please report this to your
ARUS/PC so that a work order can be placed.

**4. Will video visitation be put in place?**
There are no plans, or resources available, to implement video visitation at this
facility.

**5. Can contagious diseases be spread by sharing soap bars?**
Bars of soap should not be shared from prisoner to prisoner. Bars of soap that are
left out on the sinks should be discarded immediately.

**Upcoming Movies:** To Be Determined.

Submitted By:

_____          ___04/02/2020___
N. Nagy, Warden                                          Date
G. Robert Cotton Correctional Facility

*"Warden Forum Agenda Minutes and facility generated memos signed by the Warden or
designee shall be posted and reviewed by staff. These documents may reflect pertinent
information that directly affects the facilities current process or procedure. This
information shall be considered a directive from the Warden and staff shall implement
change accordingly. All facility process or procedure changes will be reflected in the next
revision of the document originally addressing the issue. (IE JCF OP, facility rule)."*

4

Warden Forum Agenda
March 2020

Cc:    J. Bush, A/Assistant Deputy Director, CFA Southern Region
        N. Nagy, Warden
        K. Napier, Administrative Assistant
        R. Rurka. A/Deputy Warden
        T. Kisor, Assistant Deputy Warden
        J. White, Assistant Deputy Warden
        T. Schubring, Facility Manager
        RUMs / ARUSs / PCs (posted on unit bulletin boards)
        L. Royalty Warden's Forum Coordinator
        A. Coffelt, Food Service Director
        Department Heads
        Warden's Forum Representatives
        Library
        Control Center
        JCF LAN email
        File

# G. ROBERT COTTON CORRECTIONAL FACILITY

*"Committed to Protect, Dedicated to Success"*

## WARDEN'S FORUM MEETING



| | | | | | |
|---|---|---|---|---|---|
| A Unit | Ellis | 218987 | J Unit | VACANT | VACANT |
| A Unit | Haugen | 651225 | J Unit | VACANT | VACANT |
| A Unit | White | 228524 | K Unit | CLOSED | CLOSED |
| B Unit | VACANT | VACANT | K Unit | CLOSED | CLOSED |
| B Unit | Chahine | 534769 | TA Unit | Beach | 959868 |
| C Unit | Lundy | 193051 | TA Unit | Soto | 653244 |
| C Unit | Cruz | 253055 | TB Unit | Williams | 867884 |
| D Unit | DELAYED | DELAYED | TB Unit | Thompson | 181739 |
| D Unit | DELAYED | DELAYED | TC Unit | Porter | 158151 |
| E Unit | Robinson | 404988 | TC Unit | Stauter | 654958 |
| E Unit | King | 171671 | TD Unit | Williams | 249041 |
| F Unit | Woods | 139404 | TD Unit | Doty | 545233 |
| F Unit | Northington | 193035 | TE Unit | Bishop | 619748 |
| G Unit | Loyd | 234363 | TE Unit | Shively | 167606 |
| G Unit | Griffin | 691819 | TF Unit | VACANT | VACANT |
| H Unit | Reynolds | 399207 | TF Unit | VACANT | VACANT |
| H Unit | VACANT | VACANT | | | |

**Dates:** September 16, 2022, and September 30, 2022.

**September 16, 2022, Staff Attendance:** Deputy Warden Kisor Facility Manager Schubring, Administrative Assistant Napier, Warden's General Office Assistant Gordon.
(*17 Forum Representatives in attendance) Forum agenda meeting with housing unit representatives.

COTTON LAW LIBRARY

**September 30, 2022, Staff Attendance:** Warden Nagy, Deputy Warden Jarrett, Facility Manager Schubring, RUM Losinski, and Administrative Assistant Napier.

(*18 Forum Representatives in attendance).

**New Business:**
On behalf of the JCF prison population, the Warden's Forum would like to bring forth the following concerns:

1.  JCF Population would like to know why the video visits have been malfunctioning as far as video and audio. Unit officers are notified and then they call the control center and often times the video visit will be terminated if the problem doesn't get fixed and the inmate is charged a visit and family members are charged a fee for the video visit. What else can GTL do to fix this ongoing issue with the video visits?

    **Response:** GTL is working on the software issues. Visitors were reimbursed and the visit was credited back to the prisoner. Visitors can test their device after login to make sure the device is able to function properly for conducting a video visit.

Warden Forum Meeting
September 30, 2022

2. JCF Population is hearing that JCF staff are discarding inmate's R-10 Koss headphones upon them being returned to facility after being repaired. The R-10 Koss headphones have a lifetime warranty and inmates who still have them is still entitled to that warranty. When an inmate send out their R-10's they have to fill out a property disposition form and they have to fill out a disbursement for shipping to Koss Corporation in Milwaukee, Wisconsin and when the repaired R-10's are returned to the facility there is a shipping invoice and tracking number and post mark from Milwaukee attached. JCF Staff should be checking for that info and verifying that the inmate's property is returning from the vendor since it is obvious that Koss Corporation is not located in Michigan. What is JCF's current position on inmates sending out R-10 Koss Headphones and receiving them back after being repaired?

**Response:** This matter is under review. COTTON LAW LIBRARY

3. Can the asphalt by temp foods be repaired?

**Response:** This is a part of the overall facility grounds project that is projected to start in 2023.

4. Can we get bids and replace temp sides track and yard entrance areas as well as level 2's?

**Response:** Due to pricing, this was previously rejected by the PBF.

5. Moving state pay or store days so that people don't miss store.

**Response:** This cannot be addressed at the facility level. Dates are set within the statewide contract.

6. Adding jobs at MSI and Adding PAWS program for level 1.

**Response:** We are still cohorting by level. Therefore, we are not adding jobs for level I in MSI at this time. The request for the Leader Dog Program in level I is under review.

7. Mixing trash carts and workers to transport food to TF units, can it be addressed that there (sic) things need to be separate. Additionally, workers and staff are still not properly wearing beard guards and hair nets. This presents a health issue. Can this be addressed.

**Response:** This matter was immediately addressed and corrected with the Food service staff. Carts should be cleaned between uses.

2

Warden Forum Meeting
September 30, 2022

**OLD Business**



1.

In March of 2022 and at the request of the Office of Legislative Corrections Ombudsman, the Southern Regional Sanitarian completed a ventilation/air flow inspection in Level II housing. Specifically, a velometer in a grid measurement system was used to measure the flow of air in each air vent, community fan and exhaust vent in the unit. The inspection determined that the facility is operating above the standard for Adult Correctional Institutions. In addition, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and prisoners can use a personal fan in their cell at their bunk to add additional airflow. ▬▬▬▬▬▬▬

2. Follow up on level 2 shower lights that need immediate replacement. The lights are rusted to the point that pieces are actually falling on us while showering. This is a health and safety issue.

   **Response:** June 27, 2022 work order was submitted by PC Crane for E unit showers. A work order was resubmitted on September 22, 2022. Maintenance has replaced all the shower lights in E unit.

3. Follow up that level 2 has requested fans on the base in units. It is extremely hot on base.

   **Response:** The fans are not needed.

**Warden has approved the following movies: JPAY Sent on 9/22/2022 to Population**

1. Top Gun: Maverick PG 13
2. Agent Game R
3. Fantastic Beasts: Secrets of Dumbledore PG13
4. Downton Abbey: New Era PG
5. Doctor Strange: in the Multiverse of Madness PG13
6. Sonic the Hedge Hog 2 PG
7. Belfast PG13
8. Fortress: Snipers Eye R
9. Black Widow PG13
10. Respect PG13
11. Dating & New York PG13
12. Dangerous R
13. In the Heights PG13

3

Warden Forum Meeting
September 30, 2022

    14. Morbius PG13
    15. Uncharted PG13
    16. The Way Back R

Submitted By:

_____

N. Nagy, Warden
G. Robert Cotton Correctional Facility

Date  10/04/2022

*"Warden Forum Agenda Minutes and facility generated memos signed by the Warden or designee shall be posted and reviewed by staff. These documents may reflect pertinent information that directly affects the facilities current process or procedure. This information shall be considered a directive from the Warden and staff shall implement change accordingly. All facility process or procedure changes will be reflected in the next revision of the document originally addressing the issue. (IE JCF OP, facility rule)."*

Cc:    S. Brewer, Assistant Deputy Director CFA
        N. Nagy, Warden
        J. Jarrett, Deputy Warden
        J. White, Assistant Deputy Warden
        T. Kisor, Assistant Deputy Warden
        T. Schubring, Facility Manager
        K Napier, Administrative Assistant/Warden's Forum Coordinator
        RUMs / ARUSs / PC (posted on unit bulletin boards)
        A. Coffelt, Food Service Director
        Warden's Forum Representatives
        Library
        Control Center
        JCF LAN email
        File

COTTON LAW LIBRARY

4

# G. ROBERT COTTON CORRECTIONAL FACILITY

COTTON LAW LIBRARY *"Committed to Ideals, Dedicated to Success"*

## WARDEN'S FORUM MEETING

"Exhibit #9"

| Prisoner Representative | | | | | |
|---|---|---|---|---|---|
| A Unit | Hill | 341515 | J Unit | VACANT | VACANT |
| A Unit | Haugen | 651225 | J Unit | VACANT | VACANT |
| B Unit | VACANT | VACANT | K Unit | CLOSED | CLOSED |
| B Unit | Chahine | 534769 | K Unit | CLOSED | CLOSED |
| C Unit | Lundy | 193051 | TA Unit | Beach | 959868 |
| C Unit | Cruz | 253055 | TA Unit | Soto | 653244 |
| D Unit | DELAYED | DELAYED | TB Unit | Williams | 867884 |
| D Unit | DELAYED | DELAYED | TB Unit | Thompson | 181739 |
| E Unit | Robinson | 404988 | TC Unit | Brooks | 351208 |
| E Unit | King | 171671 | TC Unit | Stauter | 654958 |
| F Unit | Woods | 139404 | TD Unit | Williams | 249041 |
| F Unit | Northington | 193035 | TD Unit | Doty | 545233 |
| G Unit | Loyd | 234363 | TE Unit | Bishop | 619748 |
| G Unit | Griffin | 691819 | TE Unit | Shively | 167606 |
| H Unit | Reynolds | 399207 | TF Unit | VACANT | VACANT |
| H Unit | Bieri | 288329 | TF Unit | VACANT | VACANT |

**Dates:** August 12, 2022, August 26, 2022 and August 30, 2022.

**August 12, 2022, Staff Attendance:** Facility Manager Schubring, Administrative Assistant Napier, Warden's General Office Assistant Gordon and Deputy Warden's Secretary Bess.
(*20 Forum Representatives in attendance) Forum agenda meeting with housing unit representatives.

**August 26, 2022, Staff Attendance:** Facility Manager Schubring and Administrative Assistant Napier.
(*20 Forum Representatives in attendance).

**August 30, 2022, Staff Attendance:** Warden Nagy, Assistant Deputy Warden White, Assistant Deputy Warden Kisor, Facility Manager Schubring, RUM Losinski, RUM Ulch, RUM Yuki and Administrative Assistant Napier.
(*17 Forum Representatives in attendance).

**New Business:**
On behalf of the JCF prison population, the Warden's Forum would like to bring forth the following concerns:

1. The Warden's Forum addressed this issue with the previous Warden. Because of the severity of the matter, the present Warden's Forum would like the current Warden to address this issue. JCF level II prisoners suffer from a lack of proper ventilation within their living area (cells, rooms). The Society of Ventilation Engineers, The American Society of Heating, Refrigeration and Air Conditioning Engineers (ASHRAE), which is an international organization (federally regulated), set a standard of 20 cubic feet of airflow per minute. The MDOC does not use ASHAE standards and does (or has) reportedly used the American Correctional

Warden Forum Meeting
August 30, 2022

Associations (ACA), standards of 10 cubic feet of airflow per minute, per occupant. JCF has two prisoners per cells/rooms do not have any ventilation ducts and standards of airflow are not being met. JCF prisoners suffer heat related illness, chronic obstructive pulmonary disease (COPD), asthma, chronic bronchitis, emphysema, and are experiencing serious adversities from their conditions of confinement. With different variants of COVID plaguing the system, and how quickly this spreads within the MDOC, this should be corrected and taken serious.

Response: This concern was previously addressed by the current Warden in the September 2020 Warden's Forum Meetings. The ventilation system was inspected by the Regional Sanitarian and found that our systems in the new buildings are operating within design parameters. Recirculated filters and fresh air are provided. Filters are routinely changed, and openable windows are available. In addition, Maintenance staff continuously check the operations of the HVAC units and return air on a regular basis. The air intake screens are cleaned on an annual basis. We have installed MERV 13 filters in the housing units and they are changed monthly.

2. GTL, through the department, implemented phone calls every 15 minutes. Attorney calls, that are entered into and recognized as such in the as such in the system, should not have the same restrictions. If a prisoner is talking to his attorney and they ask that the prisoner to call back, he can not under the current programming of the system, It violates state and federal law to frustrate or impeded access to legal counsel.

Response: Pursuant to PD 05.03.130 Prisoner Telephone Use, telephone equipment shall automatically limit each call to 15 minutes, for attorneys 20 minutes. Therefore, calls to attorney's do not have the same restriction. Since COVID 19, Attorney's that wish to speak to their clients have been able to schedule a call through my office and schedule a face to face in-person visit.

3. The property room officer here at JCF is constantly getting pulled from his assignment and being placed elsewhere and not being able to process disbursements or pass out orders. Can Administration provide this officer with some assistance getting caught up without pulling him off his assignment and getting further behind?

Response: This concern is being addressed.

4. Can yard crew be assigned to clean up all the bird fecies from the big yards basketball court, softball field, tennis court and yard because it is preventing inmates from working out, playing sports, etc.?

Response: We are looking into this concern with Custody and Maintenance staff.

5. Manilla Envelopes are on long term delay for over 6 weeks. We need an alternative vendor.

Response: We are looking into this concern. As soon as we receive a response will be able to provide an update.

6. Fixed Pop Machine- Rid of AVI. Move machine from TF to TA.

Warden Forum Meeting
August 30, 2022

# COTTON LAW LIBRARY

**Response:** We will not be moving the machine from TF to TA at this time as there are prisoners in TF unit that utilize the machine. AVI has been contacted about coming out to fix the machine in TA.

7. Updated Catalogs:

**Response:** Updated catalogs were sent to all staff.  Please speak to your RUM/ARUS/PC.

**OLD Business**

1. With the video visit phone being in operation in the housing units, population would like for one more regular phone to be added to each unit on base.  This was a previous request and we are seeking approval from the Warden.

**Response:** We would need to have a site survey completed. We do not know if there is enough physical space to add another phone.

2. What's the update on the Warden's communication with Lansing regarding getting visiting hours extended as well as getting more in-person visiting days through custody level cohorting?

**Response:** Warden will review schedules for cohorting by level for possible back-to-back visits. Nothing is approved at this time.

3. GTL still hasn't made the adjustment to the video visit phone's camera so that guys in wheelchairs, really tall guys or really short guys can all be seen by their visitors on the monitor without having to move around to be inline with the camera's current position.

**Response:** GTL has addressed this with the installation team.

**Open Discussion:**

1. Members- JPAY E & F knocks you off when you sign on.  This is occurring in other units.
   **Response:** We are looking into this concern.
2. Two sports channels 16 and 18 (ESPN and Bally Sports) not working.
   **Response:** Buford Satellite came out but could not restore channel 18 so they ordered a new receiver.  Channel 16 was checked today, and it is working.
3. Medline in A unit going last on second shift.
   **Response:** Medline was running in the same order every day.  The Medline is now running in a rotation with the housing unit mealtime.
4. Law Library shutting down. Yesterday (Monday).
   **Response:** The library is closed on Monday's.
5. The yard/weight pit is not opening on time during second shift.
   **Response:** Shift Command was contacted and there have not been any concerns brought to their attention.  They have not had any instances of the yard not opening on time.

- 3

Warden Forum Meeting
August 30, 2022

**Warden has approved the following movies: JPAY Sent on 8/26/2022 to Population**

1. Don't Breathe 2 R
2. Those who wish me Dead R
3. Resident Evil: Welcome to Raccoon City R
4. Blue Bayou R
5. Matrix Resurrections R
6. Twist R
7. The Devil You Know R
8. The Requin R
9. Being the Ricardos R
10. Chaos Walking R
11. Cosmic Sin R
12. Crawl R
13. King Richard PG13
14. Space Jam: A New Legacy PG
15. Twist R
16. The Batman PG13
17. Marry Me PG13
18. Licorice Pizza R
19. The Humans R
20. The Lost City PG13

Submitted By:

N. Nagy, Warden
G. Robert Cotton Correctional Facility

Date: 9/01/2022

*"Warden Forum Agenda Minutes and facility generated memos signed by the Warden or designee shall be posted and reviewed by staff. These documents may reflect pertinent information that directly affects the facilities current process or procedure. This information shall be considered a directive from the Warden and staff shall implement change accordingly. All facility process or procedure changes will be reflected in the next revision of the document originally addressing the issue. (IE JCF OP, facility rule)."*

Cc:    S. Brewer, Assistant Deputy Director CFA
       N. Nagy, Warden
       J. Jarrett, Deputy Warden
       J. White, Assistant Deputy Warden
       T. Kisor, Assistant Deputy Warden
       T. Schubring, Facility Manager
       K. Napier, Administrative Assistant/Warden's Forum Coordinator
       RUMs / ARUSs / PC (posted on unit bulletin boards)
       A. Coffelt, Food Service Director
       Warden's Forum Representatives
       Library
       Control Center
       JCF LAN email
       File

| MICHIGAN DEPARTMENT OF CORRECTIONS **POLICY DIRECTIVE** | EFFECTIVE DATE 01/11/2021 | NUMBER 01.04.110 |
|---|---|---|
| SUBJECT ADMINISTRATIVE RULES, POLICIES AND PROCEDURES | SUPERSEDES 01.04.110 (08/10/2020) | |
| | AUTHORITY MCL 791.203, 1969 PA 306, MCL 24.201 et seq. | |
| | PAGE   1   OF   4 | |

*"Exhibit #10"*

**POLICY STATEMENT:**

The Department's administrative rules, policy directives (PDs), Director's Office Memoranda (DOMs), operating procedures (OPs), and variances shall be prepared and issued as set forth in this policy directive.

**POLICY:**

GENERAL INFORMATION

A.    All employees shall be informed of Department policy directives, operating procedures, DOMs, and administrative rules issued by the Department. All current Department policy directives, operating procedures, variances, DOMs, and administrative rules shall be readily available to all employees. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Failure to follow policy may also result in an employee not being represented by the Department of Attorney General or not being indemnified by the Department if a monetary judgment is obtained against the employee as set forth in PD 02.01.102 "Litigation - Department and Employee Responsibilities."

B.    The decision on whether a policy directive, operating procedure, or DOM is exempt shall be made by the Director or designee. If a policy directive, operating procedure, or DOM is marked exempt, it shall not be disclosed in response to a Freedom of Information Act (FOIA) request. Authorization from the Office of Legal Affairs (OLA) Administrator must be obtained before any exempt policy directive, operating procedure, or DOM is released outside of the Department.

C.    The Procurement Monitoring and Compliance Division (PMCD) Administrator, in consultation with OLA Administrator, may allow exempt policy directives, operating procedures, and/or DOMs to be reviewed by contractors and vendors who are bidding on contracts. Review of exempt policy directives, operating procedures, and/or DOMs by contractors or vendors shall only take place during an on-site visit to an MDOC location, and the exempt policy, operating procedure, and/or DOM shall not be released to the contractor or vendor.

ADMINISTRATIVE RULES

D.    An administrative rule is promulgated under the Administrative Procedures Act (APA), 1969 PA 306, MCL 24.201 *et seq.* and has the full force of law. Some policy directives and DOMs are based on an administrative rule(s). The Policy Section in OLA, Budget and Operations Administration (BOA), is responsible for the promulgation of the Department's administrative rules and maintaining all relevant documents relating to the promulgation process. Recommendations for changes to administrative rules shall be approved by the appropriate Executive Policy Team (EPT) member and forwarded in writing through the chain of command to the OLA Administrator.

POLICY DIRECTIVES, MANUALS, AND DOMS

E.    Policy directives and DOMs are documents that set forth the Department's position on a given subject and are signed by the Director. Each policy directive and DOM derives authority from statute, administrative rule, or court order, and must be consistent with applicable statutes and administrative rules. A policy directive or a DOM may be necessary to clarify or implement an administrative rule. The Director's approval is also required for any revisions to the Transportation, Absconder Recovery Unit (ARU), Emergency Response Team (ERT) and Ordnance Manuals, as well as any other manual as determined by the Director. The Policy Section is responsible for writing all policy directives and DOMs, and for retaining all original policy directives and DOMs issued by the Director.

F.    A DOM provides new information not contained in a current policy directive or revises an existing policy directive.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 01/11/2021 | 01.04.110 | PAGE 2 OF 4 |

A DOM is typically used when immediate changes are required to an existing policy directive and the entire policy directive cannot be updated by the date the changes need to be implemented. All requests for a new or revised DOM shall be approved by the appropriate EPT member and forwarded to the Policy Section. A DOM shall be in effect only for the calendar year in which it is issued but may be renewed each January by the Director.

Development and Revision of Policy Directives

G. An EPT member or designee is responsible for informing the Policy Section of the need to prepare a new or revised policy directive that affects their respective administration. The EPT member shall designate a contact person knowledgeable of the subject matter to work with the Policy Section to develop or revise the policy directive. The contact person, EPT member, and the OLA Administrator shall be responsible for approving the content of draft policy directives prior to going out for review as identified in Paragraph H.

H. The Policy Section may send drafts of proposed new and revised policy directives to the EPT members, Administrative Management Team members, and Wardens for review and comment, identifying the date by which comments are due. Department administrators receiving draft policy directives for comment shall ensure that appropriate staff in their respective areas have an opportunity to review the drafts and provide comment. Department administrators shall review the comments received with their policy contact person and forward comments that they approve of to the Policy Section by the date specified in the transmittal.

I. The Policy Section may send drafts of new or revised policy directives to additional individuals for review and comment.

J. Comments received regarding a draft policy directive may be incorporated into the policy draft by the Policy Section. The contact person for the policy directive shall be consulted on any substantive issues raised.

K. A Policy Review Committee may be established by the Policy Section Manager to review draft policy directives before submission to the Director for signature. Revisions to the Transportation, ARU, and Ordnance Manuals, as well as any other manual as determined by the Director, may also be reviewed by the Policy Review Committee prior to being sent to the Director for signature. The Committee shall be chaired by the Policy Section Manager or designee and include the Deputy Directors, OLA Administrator, Administrator of the Offender Success Administration, Policy Specialist, contact person identified for the policy directive, Performance Audit Specialist, and any other members as designated by the Policy Section Manager or designee.

L. A policy directive may be issued without distribution for comment and/or without submission to the Policy Review Committee, as determined by the OLA Administrator or designee. Regardless, in all cases, EPT members whose administrations are directly affected by the policy directive shall be responsible for approving the content of the final draft policy directive before it is submitted to the Director.

M. Policy directives shall be self-audited as set forth in PD 01.05.100 "Self-Audits and Performance Audits." The Policy Specialist, in consultation with the Performance Audit Specialist, shall develop a Primary Audit Elements List for new or revised policy directives if necessary. The list shall be available to staff responsible for ensuring compliance with the policy.

VARIANCES

N. A variance is a temporary or permanent change to a specific policy or operating procedure requirement and may be granted only by the Director. A request for a variance shall be submitted on a Request for Policy Variance (CAJ-296) through the appropriate chain of command to the OLA Administrator or designee for submission to the Director. In order to be processed by OLA, the form must contain justification for the variance and appropriate administrative signatures. The Policy Section Manager shall ensure that all approved variances are entered into the Document Access System (DAS) and shall be responsible for retaining all original signed copies. When a policy directive or operating procedure has a permanent variance, the Policy Section shall incorporate the variance into the policy or operating procedure the next time it is revised.

OPERATING PROCEDURES

O. An operating procedure is a document that sets forth the specifics on how a policy directive is to be carried out. The operating procedure details who, what, where, when, and how the goals of the policy directive are to be

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 01/11/2021 | 01.04.110 | PAGE 3 OF 4 |

accomplished.  An operating procedure shall not exist without a corresponding policy directive and derives authority from a policy directive or a DOM.

P.  An operating procedure shall not be issued as a substitute for an administrative rule, policy directive, or DOM.  All operating procedures shall be formatted consistently with requirements set forth by the OLA Administrator and have an identifying number assigned based on the policy from which it derives its authority.

Q.  Each Administration is responsible for preparing its own operating procedures.  Whenever an operating procedure crosses administration lines, content approval is required from affected EPT members or designees.  Authors of operating procedures are encouraged to solicit input from employees and organizations affected by the procedure for consideration of appropriate revisions.

R.  Wardens and other administrators may issue local operating procedures that only affect their respective areas. Local operating procedures issued by a Warden or other administrator shall not conflict with any existing policy directive and/or statewide operating procedure. All statewide operating procedures shall be approved by the appropriate EPT member and the Director.

S.  Each Warden and other administrator authorized to issue local operating procedures shall ensure that the original of each local operating procedure is retained. OLA staff shall be responsible for retaining all statewide operating procedures.

## DISTRIBUTION

T.  OLA staff shall be responsible for maintaining the Document Access System (DAS), or any successor system, by which employees may electronically access various Department documents, including the Department's administrative rules, policy directives, DOMs, variances, and statewide operating procedures.  Only staff trained in DAS entry shall enter documents into DAS.

U.  The Manager of the Policy Section shall ensure that all new or revised Department administrative rules, policy directives, DOMs, variances, and operating procedures issued by the Director are promptly entered onto DAS. The Manager of the Policy Section also shall ensure that notice of each new or revised rule, policy directive, DOM, or operating procedure issued by the Director is sent to all Department employees with Department e-mail.  All Department employees are responsible for reviewing updated administrative rules, policy directives, operating procedures, and DOMs.  Wardens and other administrators shall confirm that their employees have reviewed all new and revised administrative rules, policy directives, variances, DOMs, and operating procedures by having them complete the read and sign in Attachment A.  Notice also shall be sent to appropriate collective bargaining units, and, for non-exempt policy directives and operating procedures, to courts and other governmental agencies requesting notification.

V.  Each Warden and other administrators authorized to issue local operating procedures shall ensure that all operating procedures they issue are distributed either through DAS or through other appropriate means (e.g., printed copy) in a timely manner to all staff affected by the procedure.

## RESCISSION

W.  Only the Director may rescind a DOM, policy directive, or statewide operating procedure. The notice of rescission for these items shall be prepared by the Policy Specialist. The Policy Section Manager shall ensure DAS is updated whenever a DOM, policy directive, or other statewide operating procedure is rescinded.

X.  If a Warden or other administrator rescinds an operating procedure issued locally for their facility or administration, they shall ensure DAS is updated, as appropriate, by staff trained in DAS entry.

## POLICY REVIEW

Y.  Administrators shall review all policy directives that affect their area at least every three years.  The administrator shall forward substantial revisions to the appropriate EPT member for approval.  When an EPT member becomes aware that a policy directive that affects their area is in need of substantial revisions, a request to revise the policy directive shall be submitted to the Policy Section as set forth in Paragraph G.

| DOCUMENT TYPE<br>POLICY DIRECTIVE | EFFECTIVE DATE<br>01/11/2021 | NUMBER<br>01.04.110 | PAGE 4 OF 4 |
|---|---|---|---|

## OPERATING PROCEDURES

Z.      If necessary, to implement requirements set forth in this policy, Department heads shall ensure procedures are developed or updated.

## AUDIT ELEMENTS

AA.     A Primary Audit Elements List has been developed and is available on the Department's Document Access System to assist with self-audit of this policy pursuant to PD 01.05.100 "Self-Audits and Performance Audits."

## ATTACHMENTS

Attachment A - Read and Sign

APPROVED: HEW 11/21/2020

| MICHIGAN DEPARTMENT OF CORRECTIONS | EFFECTIVE DATE | NUMBER |
|---|---|---|
| **POLICY DIRECTIVE** | 10/01/2019 | 03.03.130 |
| SUBJECT<br>HUMANE TREATMENT AND LIVING CONDITIONS FOR PRISONERS | SUPERSEDES<br>03.03.130 (02/23/2009) | |
| | AUTHORITY<br>MCL 791.203 | |
| | PAGE   1   OF   3 | |

*" Exhibit # 11 "*

**POLICY STATEMENT:**

All prisoners committed to the jurisdiction of the Department shall be treated humanely and with dignity in matters of health care, personal safety, and general living conditions. They also shall not be discriminated against based on race, religion, ethnic background, sex, sexual orientation, gender identity, national origin, or disability. Youths adjudicated as delinquent offenders or charged with offenses that would not be crimes if committed by adults are not under the jurisdiction of the Department and therefore are not housed in Department facilities.

**RELATED POLICY:**

03.03.140      Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners

**POLICY:**

**GENERAL INFORMATION**

A.      Each prisoner shall be assigned to a housing unit upon arrival at a correctional facility. Housing unit staff shall be available to provide advice and assistance to prisoners in their respective housing units. They also shall ensure prisoners are referred to other staff as necessary to provide any required counseling services, in accordance with Department policy.

**LIVING CONDITIONS**

B.      Prisoners shall be provided with the following:

1.      Clean and orderly surroundings.

2.      A sufficient number of toilets, washbasins, and showers to meet the needs of the prisoner population and is consistent with Department of Licensing and Regulatory Affairs (LARA). Urinals may be substituted for up to half the toilets in male facilities.

3.      Laundry and other facilities for personal hygiene.

4.      Lighting▮▮▮▮▮▮▮heating, and nois▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5.      Non-housing areas maintained in a healthy and safe manner.

C.      Prisoners shall be encouraged to maintain a "well groomed" appearance. Prisoners shall be provided or permitted to purchase personal hygiene items, including soap, toothbrushes, toothpaste/toothbrushes/shaving necessities, shampoo, toilet paper, suitable comb/pick/hairbrush, deodorant, and, for female prisoners, sanitary napkins. Showers shall be offered in general population as often as possible. Showers shall be offered in segregation in accordance with PD 04.05.120 "Segregation Standards."

D.      Prisoners shall be permitted to maintain head and facial hair in accordance with their personal beliefs provided that reasonable hygiene is maintained. Haircare services shall be offered at each facility in accordance with applicable sanitation and health requirements.

E.      All prisoners shall be provided wholesome and nutritionally adequate meals prepared and served as set

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/01/2019 | 03.03.130 | PAGE 2 OF 3 |

forth in PD 04.07.100 "Offender Meals and Food Quality Assurance." Prisoners shall be permitted to eat in group dining facilities, unless they are restricted for security, medical, or behavior reasons. During meal periods, prisoners shall be permitted to talk using normal conversational tones.

F.    All general population prisoners shall be afforded the opportunity for at least two hours per day indoor or outdoor recreation (i.e., yard), unless restricted for medical or security reasons, including due to potentially dangerous weather conditions (e.g., lightning; low wind chill factor). Decisions to restrict activities due to extreme weather conditions or other urgent circumstances shall be made by the Administrative Duty Officer with notification to the Assistant Deputy Director (ADD). Segregation prisoners shall be permitted out-of-cell movement as set forth in PD 04.05.120 "Segregation Standards."

## HEALTHCARE

G.    Healthcare, including psychological services, shall be available to prisoners consistent with contemporary standards of medical practice in the community, as set forth in PD 03.04.100 "Health Services." Healthcare shall be available, accessible, and organized for delivery in a humane, cost-effective, and efficient manner.

H.    All seriously ill or injured prisoners shall receive prompt medical attention as set forth in PD 03.04.125 "Medical Emergencies." Appropriate staff shall be informed of any special needs of prisoners due to physical or mental problems.

## PROTECTION FROM MENTAL OR PHYSICAL ABUSE

I.    To prevent abuse of prisoners, the following safeguards shall apply:

1.    Facility staff shall identify prisoners who are assaultive or predatory. Such prisoners shall be placed at the level of security necessary to control such behavior.

2.    The cell or room assignment of prisoners shall be regulated to prevent manipulation by other prisoners. Cell or room changes should be made only on the basis of program need, facility security, or for good order of the housing unit, as determined by housing staff. A prisoner shall be placed in a single occupancy cell when necessary to ensure the safety of the prisoner or others.

3.    Prisoners shall be provided reasonable safety from assaults. This shall include adequate staff supervision, as set forth in institutional staffing charts, and the strict control of tools and weapons.

4.    No prisoner or group of prisoners shall be given control or authority over other prisoners.

5.    Activity against a prisoner that may constitute a felony shall be reported to appropriate law enforcement authorities. In addition, prisoners shall be subject to the Department disciplinary process in accordance with PD 03.03.105 "Prisoner Discipline."

6.    Staff shall not use or engage in, and shall discourage through appropriate means any person's use of, derogatory, demeaning, humiliating, or degrading actions or language toward others. It is a violation of Department work rules for staff to engage in sexual harassment or sexual misconduct with a prisoner, as defined in the Employee Handbook. Staff also are prohibited from retaliating against a prisoner who refuses to participate in prohibited staff conduct or who files a complaint or cooperates in an investigation of prohibited staff conduct. Staff engaging in sexual harassment, sexual misconduct, or other prohibited conduct shall be subject to discipline in accordance with PD 02.03.100 "Employee Discipline" and in accordance with PD 03.03.140 "Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners" as appropriate.

J.    Prisoners shall not be subjected to personal abuse from staff. Staff shall act objectively and with restraint when in conflict with a prisoner or under threat of personal danger. Facility authorities shall be alert to identify staff members unable to properly respond to these pressures to ensure corrective action.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 10/01/2019 | 03.03.130 | PAGE 3 OF 3 |

Allegations of use of force in violation of PD 04.05.110 "Use of Force" shall be investigated and appropriate action taken in accordance with PD 02.03.100 "Employee Discipline."

K.   Staff have a responsibility to protect the lives of both employees and prisoners, provide for the security of the State's property, prevent escape, and maintain good order and discipline. Thus, they are sometimes required to act under circumstances where the use of physical restraint or force is required. The following are prohibited:

1.   Corporal punishment.

2.   Deprivation of clothing, light, ventilation, heat, balanced diet, or hygienic necessities, or subjection to excessive noise, except as set forth in PD 04.05.120 "Segregation Standards" and PD 04.06.115 "Suicidal and Self-Injurious Behavior."

3.   Any act or lack of care, whether by willful act or neglect, that injures or significantly impairs the health of any prisoner.

4.   Willful infliction of mental distress, degradation, or humiliation.

5.   Willful damage to prisoner property.

L.   Discrimination based on personal prejudices as to race, religion, color, national origin, age, sex, sexual orientation, gender identity, height, weight, marital status, or disability is prohibited. This includes sexual harassment. This also includes discrimination in the form of paternalism or expecting less than full responsibility from members of minority, ethnic, or racial groups, or from either sex.

M.   Prohibited forms of discrimination shall not serve as the basis for prisoner programming, including work and school assignments, or other administrative decisions.

N.   The Administrator of the Training Division shall ensure training is available to all staff in the areas of race relations, the understanding of cultural differences, and sexual equality.

PROCEDURES

O.   Operating procedures are not required for this policy directive.

AUDIT ELEMENTS

P.   A Primary Audit Elements List has been developed and is available on the Department's Document Access System (DAS) to assist with self-audit of this policy pursuant to PD 01.05.100 "Self-Audits and Performance Audits."

APPROVED: HEW 09/30/2019

| MICHIGAN DEPARTMENT OF CORRECTIONS<br>**POLICY DIRECTIVE** | EFFECTIVE DATE<br>08/24/2020 | NUMBER<br>04.06.160 |
|---|---|---|
| SUBJECT<br>MEDICAL DETAILS AND SPECIAL ACCOMMODATION NOTICES | SUPERSEDES<br>04.06.160 (06/17/2019) | |
| | AUTHORITY<br>MCL 791.203; 791.204 | |
| | PAGE   1   OF   3 | |

"Exhibit #12"

**POLICY STATEMENT:**

Prisoners in Michigan Department of Corrections (MDOC) facilities shall be provided with devices, supplies, and other services necessary for medical needs, subject to restrictions necessary to maintain the safety, security, and good order of the facility.

**RELATED POLICIES:**

| 03.03.140 | Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners |
|---|---|
| 03.04.100 | Health Services |
| 04.06.165 | Optometric Services |
| 04.07.112 | Prisoner Personal Property |
| 05.01.140 | Prisoner Placement and Transfer |

**STATEWIDE OPERATING PROCEDURE:**

| 04.06.160 | Medical Details and Special Accommodation Notices |
|---|---|

**POLICY:**

DEFINITIONS

A.   Medical Provider: A qualified health professional who is a physician, physician assistant, or nurse practitioner licensed to practice in the State of Michigan.

B.   Qualified Health Professional (QHP): A Physician, Psychiatrist, Nurse Practitioner, Physician Assistant, Psychologist, Social Worker, Licensed Professional Counselor, Dentist or Registered Nurse who is licensed and registered/certified by the State of Michigan to practice within the scope of their training.

GENERAL INFORMATION

C.   This policy does not apply to eyeglasses, solar shields, and contact lenses that are addressed in PD 04.06.165 "Optometric Services."

D.   During each health care encounter, Bureau of Health Care Services (BHCS) staff shall screen the prisoner to determine if the prisoner has a medical condition that restricts their ability to function adequately in a facility environment. This includes screening during the health appraisal conducted at reception facilities pursuant to PD 03.04.100 "Health Services."

ISSUANCE OF MEDICAL DETAILS/SPECIAL ACCOMMODATION NOTICES

E.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Options may include prosthetics, medical supplies, devices (e.g., wheelchairs, canes, hearing aids), medical treatment, or restrictions on activities, placement, or housing. Options also may include the issuance of non-wool blankets, extra blankets or sheets, special mattresses, or special shoes. The recommended option(s) shall be set forth on a Medical Detail if expected to be temporary (i.e., six months or less) or on a Special Accommodation Notice if expected to be long-term (i.e., more than six months) or permanent.

F.   Each Medical Detail and Special Accommodation Notice issued shall include an expiration date except in

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/24/2020 | 04.06.160 | PAGE 2 OF 3 |

the case of a Special Accommodation Notice that is permanent, in which case that shall be indicated instead. When a Medical Detail or Special Accommodation Notice expires, it shall be reissued only after a QHP examines the prisoner and determines that the prisoner's special medical need still exists. Review of the continued need for a Medical Detail or Special Accommodation Notice shall be conducted during the annual health care screening performed pursuant to PD 03.04.100 "Health Services."

G.   The prisoner shall receive a copy of their Medical Detail or Special Accommodation Notice at the time of issuance. A copy of each Medical Detail and Special Accommodation Notice issued shall be distributed through institutional mail to the housing unit and Record Office for placement in the prisoner's files. A copy also shall be distributed to the Control Center, Classification Director, and, as necessary, to the Property Room.

H.   BHCS staff shall immediately notify housing unit staff and the Control Center by telephone whenever a Medical Detail or Special Accommodation Notice is issued that requires immediate attention. Telephone notification shall be logged in the appropriate logbooks and noted in the prisoner's health record (PHR).

I.   If a prisoner claims to have a currently valid Medical Detail or Special Accommodation Notice for which the housing unit does not have a copy or has not received telephone notification of its existence, housing unit staff shall contact appropriate BHCS staff for verification and to ensure that a copy is provided for placement in the prisoner's counselor file.

J.   Appropriate health information staff shall enter required information pertaining to the issuance of a Special Accommodation Notice on the Department's computerized database and in the PHR as soon as possible after issuance. The responsible health information manager shall review the information entered at least quarterly to verify accurate and appropriate entry.

CANCELLATION OF MEDICAL DETAILS/SPECIAL ACCOMMODATION NOTICES

K.   A currently valid Medical Detail or Special Accommodation Notice shall not be canceled without approval from an appropriate medical provider after examination of the prisoner. Whenever a Medical Detail or Special Accommodation Notice is cancelled prior to its expiration date, Health Care staff shall distribute to the appropriate prisoner and send staff-written notification of the cancellation in the same manner set forth in Paragraph G. Appropriate health information staff shall ensure proper entries are made as set forth in Paragraph J. A nurse may discontinue a medical detail ordered by another nurse only after evaluation determines no medical necessity. A nurse may not discontinue a medical detail or special accommodation notice ordered by a medical provider.

L.   An employee who believes the options provided pursuant to a Medical Detail or Special Accommodation Notice compromise facility safety or security shall report the concern through the chain of command to the Warden. If the Warden believes facility safety or security is being compromised, the medical provider shall seek alternative options to meet the medical need that does not compromise facility safety or security. If alternative options are available, the medical provider shall cancel the current Medical Detail or special accommodation notice and issue a new one. If alternative options are not available, the medical provider shall notify the Warden.

M.   An employee who observes a prisoner acting inconsistently with a medical restriction or otherwise questions the current medical need for a Medical Detail or Special Accommodation Notice shall report the concern to a QHP. If, after examination of the prisoner, the medical provider believes there is no current medical need for the Medical Detail or Special Accommodation Notice, they shall cancel the Medical Detail or Special Accommodation Notice.

N.   If the concern raised pursuant to Paragraph L or M cannot be resolved by the Warden and medical provider, it shall be referred through the appropriate chain of command until it is resolved.

TRANSFER OF PRISONERS WITH MEDICAL DETAILS/SPECIAL ACCOMMODATION NOTICES

O.   A current Medical Detail or Special Accommodation Notice shall be valid at all facilities unless canceled in accordance with Paragraphs K through N of this policy. If a prisoner's medical detail or special accommodation notice needs cannot be met at their current facility, the prisoner shall be transferred to a

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 08/24/2020 | 04.06.160 | PAGE 3 OF 3 |

facility where their special medical needs can be met unless otherwise approved by the CFA Deputy Director. In accordance with PD 05.01.140 "Prisoner Placement and Transfer," it shall be noted on a prisoner's Transfer Order (CSJ-134) if the prisoner has any currently valid Medical Details or Special Accommodation Notices. BHCS staff shall ensure the Transfer Assessment in the PHR is completed upon transfer. If the prisoner has a Medical Detail or Special Accommodation Notice for a medical device, the medical device shall transfer with the prisoner and be recorded on the Prisoner Property Receipt (CSJ-241A). If the Warden at the receiving facility has a security concern with the medical device, they shall contact the Assistant Chief Medical Officer (ACMO) through the chain of command to see if an alternate medical device can be issued to the prisoner. The prisoner shall be allowed to retain the medical device until the ACMO makes a determination if an alternate medical device can be issued.

PURCHASE OF MEDICALLY NECESSARY ITEMS

P.     When a Medical Detail or Special Accommodation Notice requires the purchase of a prosthetic, medical supplies, an assistive device, or other medically necessary items, the item shall be paid for by the Department, except that the prisoner may choose to purchase the item as permitted pursuant to PD 04.07.112 "Prisoner Personal Property" or receive the item as a donation from a source approved by the appropriate Deputy Director or designee. Questions regarding the appropriateness of an item shall be directed through the chain of command to the Warden or ACMO, as appropriate.

PROCEDURES

Q.     If necessary, to implement requirements set forth in this policy directive, the BHCS Administrator shall ensure that a state-wide procedure is developed or updated.

AUDIT ELEMENTS

R.     A Primary Audit Elements List has been developed and is available on the Department's Document Access System (DAS) to assist Wardens and Health Unit Managers with self-audit of this policy pursuant to PD 01.05.100 "Self-Audits and Performance Audits."

APPROVED: HEW 07/13/2020

Scott Sedore #210661

Case No.
Hon.
Mag.

vs.

Heidi Washington, etal.

"New Case!"

"Certificate of Service"

I swear under Penalty of Perjury that i sent an exact Copy of my "Motion" For Appointment of Counsel, Via U.S. mail, to all participants in the Above referenced Action/Lawsuit. I sent a copy to the following participants:

① U.S. District Court
   Attn: Clerk of the Court
   231 Lafayette Boulevard
   Detroit, Michigan
        48226

② Michigan Attorney General office
       P.O. Box 30217
       Lansing, Michigan
           48909

Respectfully Submitted,

Signed: Scott Sedore #210661

Date: 3/16/2023

Clerk of the Court,                                    3/16/2023

Since I (plaintiff) paid the full filing fee
to commence this Lawsuit / action — under the
federal Rules I am therefore responsible for
affecting service of the summons and complaint
upon each defendant , in accordance with federal
Rule of Civil Procedure 4(E).

Please send plaintiff 15-20 summons forms
so that I can affect service of the summons and
complaint. I will fill them out and send them back
to the clerk A.S.A.P., so that the clerk can "certify"
the summons forms — thus plaintiff can start serving
each defendant a copy of the "summons and complaint"
in a timely manner,

Thanking you in Advance,

Scott Sedore #210661
Scott Sedore #210661

3/16/2023



Scott Sedore   #210661
G. Robert Cotton Correctional Facility
3500 North Elm Road
Jackson, Michigan
49201

CERTIFIED MAIL

7009 0080 0001 2337 5341

Nevere

TO: Clerk of the Court
U.S. District Court
231 Lafayette Boulevard
Detroit, Michigan
48226