UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SEDORE,

    *Plaintiff*,

v.

HEIDI WASHINGTON, et al.,

    *Defendants*.
_____/

Case No. 2:23-cv-10647

Jonathan J.C. Grey
United States District Judge

Patricia T. Morris
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON DEFENDANTS JARRETT, NAGY, AND JAMSEN'S MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 17, 48)**

**I.    RECOMMENDATION**

For the following reasons, **I RECOMMEND** that the Court **DENY** Defendants Jimmy Jarrett, Noah Nagy, and Charles Jamsen's motions for summary judgement (ECF Nos. 17, 48).

**II.    REPORT**

    **A. Background**

Scott Sedore is a prisoner in the custody of the Michigan Department of Corrections ("MDOC") who alleges that various MDOC officials violated his rights under the Eighth Amendment and Title II of the Americans with Disabilities Act. (ECF No. 1, PageID.4–6, 9–11). Sedore explains that although he suffers from a slew of respiratory and circulatory conditions that render him bedridden and

1

sensitive to high temperatures, officials refuse to provide him with adequate means to regulate the temperature in his cell. (*See id.* at PageID.2, 10, 15). As a result, he is exposed to dangerously high temperatures in his cell during the summer. (*Id.* at PageID.10).

Among several other officials, Sedore names his Warden, Noah Nagy, and an assistant deputy warden, Jimmy Jarrett, as defendants. (*Id.* at PageID.5–6). Sedore alleges that in February 2023, Nagy and Jarrett "directed" their subordinates "to confiscate any/all fans over" six inches in "prisoner cell[s]" despite knowing that fans under six inches did not "effectively reduce . . . heat and humidity in prisoner cell[s] . . . ." (*Id.* at PageID.18).

Sedore also names a physician, Charles Jamsen. (*Id.* at PageID.6, 8, 19). Jamsen is employed by Wellpath, a private company which provides medical services to the MDOC. (ECF No. 46, PageID.449). Sedore alleges that he met with Jamsen in July 2022 to assess his need for a variety of medical accommodations. (ECF No. 1, PageID.19). At the appointment, Sedore requested an accommodation for an "[eight] inch, [three]-speed fan." (*Id.*) But Jamsen denied his request. (*Id.*) According to Sedore, this was because Jamsen conducted an incomplete assessment of his medical history, "refus[ing]" to conduct a "physical[] examin[ation]" or to review any medical records predating Sedore's imprisonment. (*Id.*)

2

The MDOC provides a three-step, internal process for prisoners to raise formal complaints. (ECF No. 17-2, PageID.158–61). At step one, a prisoner must "attempt to resolve the issue with the staff member involved within two business days" and, if unsuccessful, must file a "grievance" within five business days. (*Id.* at PageID.156, 158). A prisoner's step one grievance must include the "[d]ates, times, places, and names of all those involved in the issue being grieved . . . ." (*Id.* at PageID.158). If the inmate is dissatisfied with the disposition of the step one grievance or does not receive a response ten days after the due date, then he or she may file a step two grievance using the appropriate form. (*Id.* at PageID.160). Similarly, if the inmate is dissatisfied with the step two response or does not receive a response for ten days after the response was due, he or she has ten days to file a step three grievance. (*Id.* at PageID.161). While the MDOC has no deadline to respond to a claimant's step-three appeal, its internal policies note that it will "[g]enerally" respond to a step-three appeal "within [sixty] business days." (*Id.*)

Sedore filed a grievance concerning the prison's ban on large fans in July 2022, two days after his appointment with Jamsen. (ECF No. 17-4, PageID.238–39). At the top of the grievance form, the MDOC provided a box for the "date of incident," which Sedore listed as "'ongoing' 7/19/2022." (*Id.* at PageID.238). Just below that box, the form asked Sedore to detail any attempts he made "to resolve the issue prior to writing" the grievance. (*Id.*) In response, Sedore wrote that he had an

3

appointment with Jamsen on July 19. (*Id.*) He then listed the officials "involved" in the issue, but neglected to mention Jamsen, Nagy, or Jarrett. (*Id.*) The next section of the grievance form instructed Sedore to "state [his] problem clearly." (*Id.*) In response, Sedore complained that the MDOC's refusal to allow him to purchase a large fan put him "at risk of a catastrophic health issue . . . ." (*Id.* at PageID.239). He also complained about the inadequacy of Jamsen's assessment, writing that Jamsen did not "legitimately assess [his] need for" an eight-inch fan. (*Id.*)

Officials denied Sedore's step one grievance on its merits and Sedore timely appealed his grievance through steps two and three, again receiving denials on the merits at both levels. (ECF No. 17-3, PageID.222; ECF No. 17-4, PageID.235–37, 240). In the MDOC's response to Sedore's step one and step two grievances, the responding officials focused primarily on Sedore's appointment with Jamsen. (ECF No. 17-4, PageID.237, 240).

After Sedore brought this action, Jarrett and Nagy filed a joint motion for summary judgment, arguing that Sedore failed to properly exhaust his claims against them before filing his complaint, as required by the Prison Litigation Reform Act ("PLRA"). (ECF No. 17). Months later, Jamsen also moved for summary judgment, arguing, like his codefendants, that Sedore failed to comply with the PLRA's exhaustion requirement. (ECF No. 48).

### B. Summary Judgment Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that would affect "the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact . . . ." *Id.* at 249–50, 255. Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004). The nonmoving party cannot rebut a Rule 56 motion by merely alleging that a genuine factual dispute exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) (quoting Fed. R. Civ. P. 56(e)). Instead, the nonmoving party must show that there is sufficient evidence in the record for "a reasonable finder of fact could find in its favor." *Anderson*, 477 U.S. at 248.

### C. Discussion

Under the PLRA, prisoners may not bring actions against prison officials to challenge the conditions of their confinement without first exhausting their administrative remedies. 42 U.S.C. § 1997e(a) (2018); *Porter v. Nussle*, 534 U.S.

516, 523 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). And not only must prisoners exhaust their administrative remedies before filing a complaint, but they must do so "properly," meaning that they must "compl[y] with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006).

Relevant here, the MDOC's procedural rules require inmates to include the "names of all those involved in the issue being grieved" in their step one grievance. (ECF No. 17-2, PageID.158).[1] Although Sedore appealed his grievance through the entire three-step process, Jarrett, Nagy, and Jamsen argue that Sedore did not properly exhaust his claims against them because he did not name them in his step one grievance.

### 1. Defendants Jarrett and Nagy

Jarrett and Nagy are correct that they are not identified in Sedore's step one grievance or in any of his appeals. (ECF No. 17-3, PageID.223, 225, 229–30). Although Sedore lists several individuals and entities involved in the denial of his requested accommodation, he never mentions either defendant. (*Id.* at PageID.225).

---

[1] The PLRA, itself, does not require prisoners to name the officials involved in the issue being grieved. *Jones v. Bock*, 549 U.S. 199, 218–19 (2007). Michigan inmates need only name the officials involved in their grievance because the MDOC's policies require them to do so. *Vandiver v. Correctional Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

For his part, Sedore explains that he did not name Jarrett and Nagy because they were not involved in the matter until he had already completed the grievance process. (ECF No. 21, PageID.273–74). While Sedore filed his step one grievance on July 21, 2022, and was denied at step three on January 12, 2023, Defendants Jarrett and Nagy were not involved in the matter until February 2023, when they enforced the Policy Directive prohibiting fans larger than six inches by instructing "housing unit staff to confiscate" any nonconforming fans. (ECF No. 1, PageID.18; ECF No. 17-3, PageID.222, 227). But recognizing both that he might not know the identity of every individual involved in issue, and that his need for a larger fan was an "ongoing" issue, Sedore targeted his step one grievance at not only the officials he knew to be involved up to that point, but also "numerous Jane/John Does" from the "past, present, [and] future" who "[a]lso" were (or would be) "involved." (ECF No. 17-3, PageID.225; *see also* ECF No. 21, PageID.274). Sedore wrote that he would include these individuals' "names and job title[s] . . . once known." (ECF No. 17-3, PageID.225).

In essence, Sedore argues that he was not required to re-grieve the same, ongoing issue once he learned that two new officials had become involved. That argument, to be sure, has some support. (ECF No. 21, PageID.274); *cf. Knight v. Wexford Health Sources, Inc.*, Nos. 3:21-cv-50329, 3:21-cv-50330, 2022 WL 16972507, at *7 (N.D. Ill. Oct. 25, 2022); *see Morgan v. Trierweiler*, 67 F.4th 362,

7

369–71 (6th Cir. 2023) (holding that grievances concerning "ongoing harm[s]" serve to exhaust the prisoner's administrative remedies for any future events stemming from the same, ongoing pattern of harm). But whatever it merits, the Court need not address this issue because the MDOC has forfeited any argument that Sedore violated its procedural rules by targeting his grievance against unknown, yet-to-be-involved officials.

That is because the MDOC chose to deny Sedore's grievance entirely on its merits at each step, rather than reject the grievance, on procedural grounds, insofar as it addressed any unknown officials. Where prison officials excuse or overlook an inmate's procedural mistakes and consider a grievance on its merits, they may not later argue that the prisoner failed to properly exhaust his or her administrative remedies. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

Of course, prison officials can only be said to have excused or overlooked a procedural defect if that defect is apparent from the grievance. *Id.* Thus, in *Reed-Bey*, the Sixth Circuit held that officials could not argue that an inmate did not comply with MDOC regulations by failing to "name" them in a grievance they had addressed on the merits because the grievance at issue did not name *any* individuals. *Id.* at 324–25. For that reason, it should have been apparent to the MDOC that the grievance was procedurally defective. *Id.* By contrast, when a prisoner names specific individuals in a grievance, the prisoner may not later bring claims against

8

defendants who were not named in the grievance, even if prison officials considered the grievance on its merits. *Brown v. McCulick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. 2019); *Ewing v. Finco*, No. 1:17-cv-505, 2018 WL 6033537, at *4 (W.D. Mich. Sept. 1, 2018); *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146, at *2 (W.D. Mich. Oct. 24, 2013).  Without any reason to know that other officials were involved, the state cannot have overlooked or forgiven the failure to name every official by addressing the grievance on its merits. *Brown*, 2019 WL 5436159, at *3.

But here, Sedore raises a genuine dispute as to whether the MDOC could have known that he intended for his grievance to cover unnamed officials.  Indeed, Sedore explicitly directed his grievance at "numerous Jane/John Doe[s]," including those who would not be involved until the "future."  (ECF No. 17-3, PageID.225).  If the MDOC believed that this violated its procedural rules, then it should have raised this issue in its response to the step one grievance.  Nothing prevented the MDOC from rejecting the grievance on procedural grounds, at least insofar is it sought to exhaust claims against officials who were not yet involved.  Instead, the MDOC rejected Sedore's grievance entirely on its merits. *Cf. Harp v. Hallett*, No. 5:19-cv-13789, 2022 WL 17494605, at *10 (E.D. Mich. Feb. 15, 2022), *report & recommendation adopted in relevant part by* 2022 WL 17039315 (E.D. Mich. Nov. 17, 2022). Whether that choice was the product of forgiveness or incompetence, it must be

9

respected. *See Reed-Bey*, 603 F.3d at 324–25. Accordingly, I recommend that the Court deny summary judgment in favor of Jarrett and Nagy.

### 2. Defendant Jamsen

Like Jarrett and Nagy, Jamsen argues that he, too, was not properly "named" in the grievance. But unlike Jamsen's codefendants, Sedore mentions Jamsen by name in his step one grievance. (ECF No. 17-3, PageID.225, 229). Yet in Jamsen's view, simply mentioning him in the grievance is not enough; to "name" Jamsen, Sedore must have indicated that Jamsen's conduct was the subject of his grievance. (ECF No. 48, PageID.467–70). But this, Jamsen argues, Sedore did not do.

Though his brief could be clearer on this point, Jamsen appears to ground this proposition in two distinct principles. First is Sedore's obligation to properly exhaust his grievances. Because the MDOC's policies instruct inmates to "name" all officials "*involved*" in the dispute, simply mentioning an official without describing the nature of their involvement is inadequate to properly exhaust the inmate's claims against that official. (ECF No. 17-2, PageID.158 (emphasis added); *see* ECF No. 48, PageID.465, 468–69 (quoting *Kensu v. Rapeljie*, No. 12-11877, 2013 WL 1774637, at *3–4 (E.D. Mich. Apr. 25, 2013)); ECF No. 53, PageID.501).

Second is the axiomatic principle that proper exhaustion of a prisoner's administrative remedies only serves to exhaust the issues pursued at the administrative level. *See Jones*, 549 U.S. at 220 (2007); 42 U.S.C. § 1997e(a) ("No

10

action shall be brought . . . until such administrative remedies as are available are exhausted.") Prisoners cannot grieve some issues and then tack entirely new, unexhausted issues on to their pleadings; the issues raised in the grievance must match the claims raised in the complaint. *See Ford v. Martin*, 49 F. App'x 584, 585 (6th Cir. 2002), *abrogated on other grounds by Jones*, 549 U.S. at 216; *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 17210124, at *1 (6th Cir. Nov. 8, 2000). So to exhaust a claim against a prison official, a prisoner's grievance must "allege" some "unconstitutional act or omission" by the eventual defendant. *McDuff v. Willard*, No. 1:22-cv-20, 2023 WL 2499025, at *1 (W.D. Mich. Mar. 14, 2023).

Yet no matter how the Court gets there, the bottom line is the same: to have exhausted his claims against Jamsen, Sedore must have raised those same claims in his grievance. The thrust of Sedore's complaint (as it relates to Jamsen) is that Jamsen wrongfully denied his request for an "[eight] inch, [three]-speed fan" after conducting a shoddy assessment of his need for various medical accommodations. (ECF No. 1, PageID.19). And for four reasons, a rational factfinder could infer that Sedore targeted his grievance at this exact conduct.

First, in response to a prompt asking him to describe his attempts to resolve his issue before filing the grievance, Sedore wrote that he attempted to resolve his issue by attending an appointment with Doctor Jamsen on July 19. (ECF No. 17-3, PageID.466). This is significant because under the MDOC's internal policies, the

11

prisoner must "attempt to resolve the issue *with the staff member involved*" before filing the grievance. (ECF No. 17-2, PageID.156, 158). Thus, the individual with whom the inmate attempts to resolve the issue before writing a grievance is typically one the individuals involved in the issue. (*See id.*)

Second, Sedore refers to his appointment with Jamsen as one specific data point in an ongoing struggle to obtain an eight-inch fan. Sedore's grievance concerns his "ongoing" inability to purchase a fan rather than specific instances where he was denied access. (ECF No. 17-3, PageID.225, 229). Thus, Jamsen's refusal to provide an accommodation for an eight-inch fan appears to fall under the scope of the broader, ongoing issue Sedore complains of. (*See id.*) And to shore up any doubt that the appointment was part of this "ongoing" issue, Sedore wrote in a box on his grievance form labeled "date of incident" that the incident at issue, which was "ongoing," occurred on July 19, 2022—the date of Sedore's appointment with Jamsen. (*Id.* at PageID.225).

Third, Sedore complains about his appointment with Jamsen in the body of his grievance. After asking Sedore to describe his attempt to resolve the issue, the grievance form instructed him to "state [his] problem clearly." (*Id.*) Following this prompt, Sedore wrote that "Dr. [Jamsen] did not "legitimately assess [his] need for" accommodations at the "7/19/22" appointment. (*Id.* at PageID.229). Though not as

12

detailed as his pleadings, this allegation concerns the same issue as his complaint. (*Compare id.*, *with* ECF No. 1, PageID.19).

And fourth, even MDOC staff apparently understood Sedore's grievance to encompass his appointment with Jamsen. In response to his step one grievance, the respondent for the MDOC acknowledged that "Sedore list[ed] the date of incident as 7/19/2022," and when summarizing the MDOC's investigation and decision, the respondent focused primarily on Sedore's appointment with Jamsen, writing that the MDOC would defer to Jamsen's assessment because he was "the most qualified staff member to determine" Sedore's "course of treatment . . . ." (*Id.* at PageID.227). Likewise, the step two respondent focused primarily on the July 19 appointment. (ECF No. 17-4, PageID.237).

To be sure, there is evidence in support of Jamsen's position. As Jamsen points out, Sedore's grievance explicitly lists the "involved" individuals, and that list does not include Jamsen. (ECF No. 17-3, PageID.225); *see also* (ECF No. 1, 6 (stating that Jamsen was listed as a "John Doe" in Sedore's step one grievance). But on Jamsen's motion for summary judgment, the Court must construe the facts in the light most favorable to Sedore, and for the reasons outlined above, a rational factfinder could infer that this list is nonexhaustive. *See Pure Tech Sys., Inc.*, 95 F. App'x at 135. Whether a rational factfinder could also accept Jamsen's characterization of the evidence is an issue for another day.

13

### C. Conclusion

For these reasons, **I RECOMMEND** that the Court **DENY** Defendants' motions for summary judgement (ECF Nos. 17, 48).

### III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains.

Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 13, 2023              s/ PATRICIA T. MORRIS
                                     Patricia T. Morris
                                     United States Magistrate Judge