## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SCOTT SEDORE,

      Plaintiff,                    Case No. 23-10647

v.                               Honorable Jonathan J.C. Grey

HEIDI WASHINGTON, et al.,

      Defendants.

_____/

## ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF No. 57)

## I.    INTRODUCTION

Pro se plaintiff Scott Sedore filed this 42 U.S.C. § 1983 lawsuit against numerous defendants, alleging violations of his Eighth Amendment rights and Title II of the Americans with Disabilities Act. (ECF No. 1, PageID.4–6, 9–11.) This matter comes before the Court on Magistrate Judge Patricia T. Morris' Report and Recommendation dated November 13, 2023 (the "R&R") (ECF No. 57) related to the motions for summary judgment filed by defendants Jimmy Jarrett, Noah Nagy, and Dr. Charles Jamsen.  (ECF Nos 17, 48.) In the R&R, Magistrate Judge Morris recommended that the Court deny all three defendants' motions

for summary judgment. Jarrett, Nagy, and Dr. Jamsen filed objections to the R&R.

For the reasons set forth below, the Magistrate Judge's R&R (ECF. No. 57) is **ADOPTED** as to defendant Dr. Jamsen and **REJECTED** as to defendants Nagy and Jarrett**.**

## II.    BACKGROUND

Pro se plaintiff Scott Sedore is an incarcerated person in the custody of the Michigan Department of Corrections ("MDOC at the Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan.  (ECF No. 1.)

Sedore claims that MDOC officials failed to provide him with necessary medical accommodations. Sedore states that he suffers from a host of medical diagnoses including, but not limited to: congestive heart failure, hypertension, lung scarring, and chronic pain. (ECF No. 1, PageID.10.) According to Sedore, the MDOC's failure to regulate ventilation in his cell has exacerbated his medical conditions and left him exposed to significant health risks.

Sedore says that the 6-inch, 2-speed fan available for MDOC inmates through the prison store is inadequate to assist with air

circulation issues in his cell and leaves him exposed to unsafe high temperatures.  Sedore further explains that his requests to purchase an 8-inch 3-speed personal fan were unfairly denied by the MDOC.[1]

In Sedore's complaint, he names as defendants the MDOC and several MDOC officials including: MDOC Director Heidi Washington ("Washington"), JCF Warden Noah Nagy ("Nagy"), and JCF Deputy Warden Jimmy Jarrett ("Jarrett"). Dr. Charles Jamsen ("Dr. Jamsen"), a physician contracted by the MDOC to provide medical services to incarcerated persons under custody of the MDOC, is also named. (ECF No. 1.)

MDOC provides a three-step grievance process that incarcerated persons are required to follow for grievable claims. MDOC Policy Directive 03.02.130 (eff. Mar. 18, 2019). Prior to Step I, a grievant must "attempt to resolve the issue with the staff member involved within two business days." (*Id.*) If there is no resolution, the grievant may file a Step I grievance within five business days. (*Id.*) Pursuant to MDOC policy, an

---

[1] The Court notes that as of July 24, 2023, the MDOC has made available 8-inch, 3 speed fans for incarcerated persons under MDOC custody to purchase. (ECF No. 38, PageID.409.)

incarcerated person's Step I grievance must include the "[d]ates, times, places, and names of all those involved in the issue being grieved." (*Id.*)

At Step II, a grievant may appeal the denial of a Step I grievance within 10 business days after receipt of the Step I response, or if s/he did not receive a timely response from the MDOC. (*Id.*) Similarly, at Step III, a grievant may appeal a Step II denial within ten business days after receipt of the Step II response, or if s/he does not receive a timely response after the filing of a Step III appeal. (*Id.*) An incarcerated person must pursue grievances through Step III of the grievance process to fully exhaust administrative remedies and have the right file a claim in federal court.

On July 21, 2022, Sedore filed a Step I grievance detailing his need for a medical accommodation in the form of an 8-inch fan to assist him with air ventilation issues in his cell. (ECF No. 17-3, PageID.225.) In that grievance, Sedore stated that he had met with Dr. Jamsen two days prior to address the problems presented in his grievance, but the issue was "not resolved." (*Id.*)

Sedore's Step I grievance then goes on to list several MDOC officials and entities who were "involved" in his grievance claim including:

Washington, the Michigan Attorney General's Office, MDOC legal affairs, "Jane/John Doe's – past present future," etc. (*Id.*) Notably, Sedore does not name Nagy or Jarrett in his Step I grievance or any of his later appeals.

MDOC officials denied Sedore's Step I grievance on the merits, citing deference to Dr. Jamsen's July 19, 2022 assessment of Sedore. (ECF No. 17-4, PageID.240) Sedore later appealed the denial of his grievance through Step II and Step III, but the MDOC ultimately denied all of Sedore's appeals. (ECF No. 17-4, PageID.237; ECF No. 17-3, PageID.222.)

Defendants Nagy, Jarrett, and Dr. Jamsen moved for summary judgment on the basis that Sedore failed to exhaust administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). (ECF Nos. 17, 48.) Magistrate Judge Morris' R&R recommended that the Court deny all three defendants' motions for summary judgment. Jarrett, Nagy, and Dr. Jamsen filed objections to the Magistrate Judge's R&R. (ECF Nos. 58, 59.)

The Court addresses defendants' objections, starting with Nagy and Jarrett.

## III.  ANALYSIS

### A.    Legal Standard

The Court reviews de novo any portion of the R & R to which a specific objection has been made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

Under Federal Rule of Civil Procedure 56(a), courts must grant motions for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In reviewing a summary judgment motion, the Court must draw all justifiable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The burden of demonstrating the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears this

responsibility by identifying portions of the record that show the absence of a genuine issue as to any material fact. *Id.* If the moving party meets its burden, the burden then shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial." *Id.* at 324. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," the moving party is then entitled to summary judgment. *Id.* at 322.

## B.   Nagy's and Jarrett's objections

Defendants Nagy and Jarrett moved for summary judgment on the basis that Sedore failed to exhaust administrative remedies because Sedore failed to name them both in his Step I grievance. The Magistrate Judge recommended that the Court deny summary judgment in favor of Nagy and Jarrett. The Magistrate Judge concluded that even if Sedore failed to exhaust his administrative remedies, the MDOC had forfeited that argument by denying Sedore's grievance at every step on the merits, rather than rejecting Sedore's grievance due to its procedural defects. (ECF No. 57, PageID.534.)

Defendants Nagy and Jarrett make two objections to the R&R. (ECF No. 58.) First, Nagy and Jarrett object to the Magistrate Judge's

"expansive reading of JCF-1478," arguing that the allowance of future harm does not comply with the recognized purpose of the exhaustion requirement under the PLRA. (ECF No. 58, PageID.543.) Second, Nagy and Jarrett object to the Magistrate Judge's application of *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), to Sedore's grievance process. (*Id.*, PageID.545.) The Court agrees with Nagy and Jarret and will sustain their objections.

Under 42 U.S.C. § 1997e(a), an incarcerated person is required to first exhaust all available administrative remedies before initiating and maintaining a civil rights action pursuant to federal law. *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216.

Proper exhaustion entails "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (citation and internal quotations omitted). In essence, it is "the prison's requirements, and not the PLRA, that define the boundaries of proper

exhaustion." *Jones*, 549 U.S. at 218. One of the main purposes of the PLRA exhaustion requirement is "to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey*, 603 F.3d at 324 (internal quotation marks omitted).

Incarcerated persons, like Sedore, are required to follow MDOC Policy Directive 03.02.130 (eff. Mar. 18, 2019) when filing all grievance claims.  In pertinent part, the policy mandates that incarcerated persons filing grievance claims must name all those involved in the issue being grieved. (*Id.*) It is undisputed that Sedore does not name Nagy or Jarrett in his Step I grievance or any of his later appeals.

In *Reed-Bey*, the incarcerated plaintiff failed to name a single individual involved in his grievance, as required by MDOC policy. 603 F.3d at 323. Despite the clear procedural defect in the plaintiff's grievance, MDOC officials considered and denied the plaintiff's grievance on its merits at all three steps of their review process. *Id.*

The plaintiff later filed suit in federal court against the MDOC and other prison officials that were involved in denying his grievance,

including individuals he failed to name in his grievance. *Id*. The district court granted summary judgment in favor of those defendants, holding that the plaintiff's failure to identify any individuals in his grievance meant that he had failed to exhaust his administrative remedies as to them under the PLRA. *Id*.

On appeal, the Sixth Circuit reversed the district court's decision granting summary judgment in favor of the defendants. The Sixth Circuit concluded that the defendants had waived the exhaustion defense because MDOC officials had already overlooked the inmate's procedurally defective grievance and considered the grievance on its merits. *Id*. at 325–326 ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we.")

The Court does not find *Reed-Bey* applicable to the present case. The *Reed-Bey* plaintiff's failure to name *any* individual involved in his grievance meant that it would have been clear and apparent to MDOC officials that his grievance was defective, and thus, the officials were waiving their own procedural requirements by reviewing his grievance

on the merits. *Id*. In contrast, here, Sedore lists a number of individuals and entities that are associated with his grievance.

The Court instead finds the Sixth Circuit's decision in *Brown v. McCulick*, No. 18-2226, 2019 WL 5436159 (6th Cir. 2019) to be instructive. There, the Sixth Circuit declined to extend *Reed-Bey* and held that the plaintiff, an incarcerated person, did not fully exhaust his administrative remedies against certain defendants (prison officials) because he failed to name those defendants in his initial Step I grievance, despite pursuing his grievance through Step III against two other individuals he named in his Step I grievance. *Brown*, 2019 WL 5436159, at *3. The Sixth Circuit reasoned that "prison officials would naturally assume that Brown [plaintiff] complied with the requirement to name those involved, and defendants cannot be said to have waived the exhaustion defense when they had no way of knowing that they would be subject of a later lawsuit." *Id*. Accordingly, the Sixth Circuit granted summary judgment in favor of the defendants.

Like the plaintiff in *Brown*, Sedore lists the names of specific individuals associated with his Step I grievance. Indeed, Sedore lists the names of several entities and individuals, yet he does not name Nagy or

Jarrett in his initial grievance, nor in any of his appeals. It is entirely reasonable, if not plausible, that MDOC officials would assume that Sedore complied with the policy requirements and therefore reviewed his grievance on the merits. *See Harp v. Austin*, No. 21-12446, 2022 WL 3365844, at *4 (E.D. Mich. July 19, 2022), report and recommendation adopted, 2022 WL 3362505 (E.D. Mich. Aug. 15, 2022)

Furthermore, to the extent that Sedore argues that Nagy and Jarrett received sufficient notice in his Step I grievance because he named "numerous Jane/John Doe[s]," including those who would not be involved until the "future" (I No. 17-3, PageID.225), the Court disagrees. Sedore's assertion that his Step I grievance targeted Nagy and Jarrett as unspecified future MDOC officials for their future conduct is overbroad and not sufficient to provide Nagy and Jarrett with proper notice. *See Boles v. Aramark Corr. Services, LLC*, 2018 WL 3854143 at *2 (6th Cir. 2018) (holding that generic references to defendants in a grievance did not satisfy exhaustion because those references failed to describe the defendants' involvement and provide notice of the allegations); *see also Claybron v. DeAngelo*, No. 26-cv-11953, 2023 WL 2572456, at *4 (E.D. Mich. Mar. 20, 2023). The Court's ruling is guided by one of the primary

purposes of the PLRA, which is to provide notice to MDOC officials so they may have an "opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

Accordingly, Nagy's and Jarrett's objections to the R&R are **SUSTAINED.** The Court **GRANTS** Nagy's and Jarret's motion for summary judgment (ECF. No. 17) based upon Sedore's failure to meet exhaustion requirements under the PLRA.

### C.    Dr. Jamsen's objection

Dr. Jamsen also moved for summary judgment arguing that Sedore failed to exhaust administrative remedies against him. (ECF No. 48.) According to Dr. Jamsen, Sedore did not exhaust administrative remedies as required by the PLRA because he "failed to name" Dr. Jamsen as an involved individual in his Step I grievance. (*Id.* at PageID.470.) Dr. Jamsen further contends that Sedore failed to allege any "unconstitutional actions or inactions" about which Dr. Jamsen was put on proper notice. (*Id.* at PageID.467.)

The R&R recommended that the Court deny Dr. Jamsen's summary judgment motion, concluding that a rational factfinder could infer that

Sedore's grievance was directly targeted at Dr. Jamsen's conduct. (ECF No. 57, PageID.537.)

Dr. Jamsen now objects to the Magistrate Judge's finding that Sedore properly named Dr. Jamsen in his grievance, and thus, erroneously concluded that Sedore exhausted his administrative remedies with respect to Dr. Jamsen. (ECF No. 59, PageID.550.)

The Court disagrees with Dr. Jamsen for two reasons. First, Sedore did properly name Dr. Jamsen in his Step I grievance claim. Pursuant to MDOC policy, incarcerated persons must include the "[d]ates, times, places, and names of all those involved in the issue being grieved." MDOC Policy Directive 03.02.130 (eff. Mar. 18, 2019) Here, Dr. Jamsen is the first person mentioned by Sedore in his Step I grievance, before Sedore lists several other individuals and entities he believes are involved in his claim. (ECF No. 17-3, PageID.225.)

In support of his objection, Dr. Jamsen argues that he was not properly named in Sedore's Step I grievance because Sedore's Step I grievance contained a specified list of "involved individuals" and Sedore did not list Dr. Jamsen on that list. (ECF No. 59, PageID.550.) The Court is not persuaded by Dr. Jamsen's argument.

The mere fact that Dr. Jamsen's name does not appear on the list of "involved individuals" is by no means sufficient to conclude that Sedore did not properly include Dr. Jamsen as a person not involved in Sedore's claim, as Dr. Jamsen suggests. (ECF No. 48, PageID.469.) Notably, Sedore mentions Dr. Jamsen's name again on the second page of his Step I grievance when referring to the inadequacy of Dr. Jamsen's July 19, 2022 assessment. (ECF No. 17-3, PageID.229.) Sedore's alleged actions stand in stark contrast to Dr. Jamsen's co-defendants, Nagy and Jarrett, who Sedore did not mention by name at all.

Second, as the Magistrate Judge concluded in the R&R, a reasonable factfinder may conclude that Sedore's complaint directly targeted Dr. Jamsen's conduct from Sedore's grievance claim. To exhaust a claim under the PLRA, an incarcerated person's grievance claim must match the issue(s) found in that individual's § 1983 complaint. *See Ford v. Martin*, 49 F. App'x 584, 585 (6th Cir. 2002), *abrogated on other grounds by Jones*, 549 U.S. at 216.

Here, Dr. Jamsen's assessment of Sedore on July 19, 2022, is a key pillar of Sedore's Step I grievance claim, as Sedore contends that Dr. Jamsen conducted an inadequate assessment of him and improperly

denied Sedore a medical accommodation to purchase an 8-inch fan. (ECF No. 17-3, PageID.229.)   Contrary to Dr. Jamsen's assertions, Sedore's complaint mirrors these exact allegations concerning Dr. Jamsen's conduct. (ECF No. 1, PageID.19) ("Dr.  Jamsen did not follow any established standards of treatment in his "so-called" assessment of my need for requested accommodation orders, including the ability to purchase an 8" inch / 3-speed fan.")

Accordingly, the Court finds that Sedore's grievances satisfied the exhaustion requirements under the PLRA with regard to Dr. Jamsen and they were sufficient to provide Dr. Jamsen with proper notice. *See Woodford*, 548 U.S. at 90. As such, the Court **ADOPTS** the Magistrate Judge's R&R with respect to Dr. Jamsen, and his motion for summary judgment is **DENIED**.

## IV.   CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Report and Recommendation dated November 13, 2023 (the "R&R") (ECF No. 57) is **ADOPTED IN PART** and **REJECTED IN PART.**

**IT IS FURTHER ORDERED** that the objections to the November 13, 2023 Report and Recommendation filed by Nagy and Jarret (ECF No. 58) are **SUSTAINED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by defendants Nagy and Jarret (ECF No. 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that the objection to the November 13, 2023 Report and Recommendation filed by defendant Dr. Jamsen (ECF No. 59) is **DENIED**.

**IT IS FURTHER ORDERED** that the motion for summary Judgment filed by Dr. Jamsen (ECF No. 48) is **DENIED**.

**SO ORDERED**.

**/s/ Jonathan J.C. Grey**
JONATHAN J.C. GREY
UNITED STATES DISTRICT JUDGE

DATED: March 31, 2024

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2024.

<u>s/ **S. Osorio**</u>
**Sandra Osorio**