UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SEDORE,                             Case No. 2:23-cv-10647

     *Plaintiff*,                          Hon. Jonathon J.C. Grey
v.                                        United States District Judge

HEIDI WASHINGTON,                         Hon. Patricia T. Morris
MDOC,                                     United States Magistrate Judge
CHARLES JAMSEN,

     *Defendants*.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTIONS FOR A PRELIMINARY INJUNCTION (ECF Nos. 66, 68)

### I.    RECOMMENDATION

For the following reasons, **I RECOMMEND** that this Court **DENY** Scott Sedore's motions for a preliminary injunction (ECF Nos. 66, 68).

### II.    REPORT

#### A.    Background

Scott Sedore is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). (*See* ECF No. 1, PageID.2). Sedore suffers from a slew of respiratory and circulatory conditions, including congestive heart failure, chronic obstructive pulmonary disease, "chronic scarring" of "both lungs," hypertension, and sleep apnea. (*Id.* at PageID.10). Yet he has no means by which to regulate the

1

temperature in his cell on "hot" and "humid" summer days, during which he is exposed to dangerous temperatures. (*Id.*)   Indeed, Sedore's cell has no "air conditioning" or "forced air," and the door to his cell is closed for most of the day. (*Id.* at PageID.10–11; ECF No. 27, PageID.302).   Although the cell has two windows, only one window opens and neither have blinds to shield Sedore from the sun. (ECF No. 1, PageID.15).   Between the sunlight and lack of airflow, Sedore's cell—in which he is bedridden for at least twenty hours per day—feels like a "sauna" during the summer. (*Id.* at PageID.15).

According to Sedore, these conditions do not just cause discomfort: they exacerbate his underlying health conditions. (*Id.* at PageID.11–12, ECF No. 27, PageID.303).   On hot days, Sedore sometimes suffers from blackouts, light headedness, chest pain, difficulty breathing, and "symptoms of heat stroke." (ECF No. 1, PageID.11).

Sedore filed this lawsuit in March 2023.   Despite the various factors contributing to his cell's high temperatures—the lack of air conditioning, the position of Sedore's exterior window, the absence of "curtains" or "blinds"— Sedore's complaint homes in on just one: the MDOC's policy of prohibiting inmates from purchasing fans that have more than "[two] speeds" and that are larger than six inches in diameter. (*Id.* at PageID.11, 15).   Sedore alleges that he requires a three-

speed fan that is at least "[eight inches] or larger" to control the temperature in his cell during the summer months.  (*Id.* at PageID.9, 12).

Sedore describes his inability to purchase an adequate fan as the "main issue of" his complaint.  (*Id.*)  Indeed, he alleges that his sweltering environment is the "result of the fact that [he does] not have a fan of sufficient size . . . ."  (*Id.* at PageID.12 (emphasis removed)).  It is the MDOC's ban of three speed, eight-inch fans—not any other factor contributing to his cell's high temperature—that Sedore alleges to violate the Eighth Amendment's prohibition of cruel and unusual punishment.  (*Id.* at PageID.17–18; *see id.* at PageID.13 (alleging that the MDOC's fan policy is what "creates '*barbaric*' living conditions" and arguing that the MDOC's restrictions on fans are unjustified and constitute deliberate indifference under the Eighth Amendment) (emphasis in original); *id.* at PageID.14 (alleging that the MDOC could have resolved this issue by furnishing, or allowing Sedore to purchase, an eight-inch, three speed fan); *id.* at PageID.15–16 (alleging that in February 2023, the Warden confiscated Sedore's twenty-inch fan, which was his "only" means of "relief from hot and humid" weather); *id.* at PageID.16 (arguing that fans larger than six inches do not pose a security threat because they are present in areas of the prison accessible to inmates)).

The following June after Sedore filed his complaint, he moved the Court to enter a preliminary injunction directing the Defendants to allow him to purchase a

six-inch, three-speed fan.  (ECF No. 27, PageID.304).  The MDOC responded that by mid-July, it would amend its policies to allow all prisoners to order eight-inch, three-speed fans.  (ECF No. 31, PageID.324–25 (citing ECF No. 31-3, PageID.359–61)).  In anticipation of the MDOC's amended policy directive, which the MDOC later implemented on July 24, 2023, the Undersigned recommended that the Court deny Sedore's motion as moot.  (ECF No. 35, PageID.396; ECF No. 38, PageID.409; ECF No. 39, PageID.412).

The Court adopted my recommendation in full the following spring.  (ECF No. 70, PageID.619).  But before the Court did so, Sedore moved for another preliminary injunction (ECF No. 68),[1] this time requesting that the Court order "the MDOC to furnish [him] with . . . a curtain, shade[s], blind[s], or tinting on his exterior window[s] . . . ."  (ECF No. 66, PageID.587).[2]

---

[1] On the same day he filed this motion, Sedore filed a second, nearly identical motion for a preliminary injunction.  (ECF No. 68).  This document corrects some typographical errors present in the original motion, and unlike the first motion, its factual assertions are verified as true under "penalty of perjury."  (*Id.* at PageID.595).  Both documents are otherwise substantively identical.

[2] The Motion also requests that the Court "expedite the[] proceedings" and "declare" that the "MDOC" violated his rights under the Eighth Amendment and, the Americans with Disabilities Act, and the Rehabilitation Act.  (ECF No. 66, PageID.587).  Sedore does not meaningfully discuss these requests, instead devoting the entirety of his brief to his motion for a preliminary injunction.  (*Id.* at PageID.582–87).  Thus, the Court should consider these motions forfeited.  *See Cockrun v. Berrien Cty.*, ___F.4th___, 2024 WL 21907830, at *2–3 (6th Cir. 2024) (holding that parties forfeit issues they do not meaningfully develop before the district court)

B.    Analysis

Under Federal Rule of Civil Procedure 65, the Court may enter a preliminary injunction "to prevent irreparable injury" to the plaintiff. *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). The purpose of a preliminary injunction "'is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends [he] was . . . harmed through the illegality *alleged in the complaint*.'" *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (emphasis added) (quoting *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir.1997)). Put differently, a preliminary injunction is appropriate where "the movant has shown she is likely to win at trial but that waiting until then to provide relief will cause her irreparable harm." *Berryman v. Stephenson*, No. 21-10925, 2022 WL 3684591, at *2 (E.D. Mich. Aug. 25, 2022).

Because preliminary injunctions are designed to accelerate the relief a plaintiff normally could not receive until after trial, a plaintiff "'must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint'" to obtain preliminary injunctive relief. *Colvin*, 605 F.3d at 300 (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). And to demonstrate an adequate "relationship" between the injunction and the complaint, it is not enough for a plaintiff to simply show that the injunction would

prevent a harm that is like those alleged in the complaint.  *See id.*; *see also Omega*, 111 F.3d at 16.  Nor is it enough for the plaintiff to show that the irreparable harm arises out of the same set of facts as the complaint.  *See Jackson v. Proctor*, No. 3:20-cv-4810155, 2020 WL 4810155, at *2 (E.D. Ky. July 27, 2020).  The injunction must remedy the precise harm for which the plaintiff seeks redress in his or her complaint.  *See Berryman*, 2022 WL 3684591, at *2.

Yet Sedore's requested injunction does not match the injury alleged in his complaint.  While Sedore describes at length the unbearable temperature in his cell, he only alleges that the Defendants violated his Eighth Amendment rights by preventing him from obtaining an effective fan.  (*See, e.g.*, ECF No. 1, PageID.9, 12, 14–16).  He does not broadly impugn the Defendants for subjecting him to warm temperatures.  (*See id.* at PageID.17–18).  Nor does he allege that the Defendants violated his Eighth Amendment rights by failing to mitigate the high temperatures through other means, such as by installing air conditioning.  (*See id.*)  His discussion of his cell's "sauna"-like environment serves only to explain his need for an adequately large fan.  (*See id.* at PageID.11, 15).[3]

---

[3] True, buried in the middle of Sedore's complaint, he writes that the MDOC's failure to supply "a curtain or bind . . .shows reckless indifference . . . ."  (ECF No. 1, PageID.15).  But this digression, read in context with the rest of the complaint, also appears to be nothing more than an effort to explain his need for a sufficiently large fan.

Indeed, Sedore clarifies that the MDOC's fan policy, not the overall condition of his cell, is the "main issue" of his complaint. (*Id.* at PageID.9, 12). And when outlining his specific claims against each defendant, he clarifies that the defendants should be held liable for preventing him from obtaining an adequate fan. (*Id.* at PageID.17–18). That does not appear to be an arbitrary choice. Sedore explains that he only brought this action after the MDOC confiscated his twenty-inch fan which he had used for the prior four years. (*Id.* at PageID.15–16, 18).[4] Although Sedore could have framed his cause of action in a broader fashion, he is the "master" of his complaint, and he chose to center the gravamen of his complaint on a narrow issue: his access to an eight inch, three-speed fan. *See Porter v. Genovese*, 676 F. App'x 428, 440 (6th Cir. 2017) (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994).

But Sedore pulls a bait and switch in his motion for a preliminary injunction. What was a case about the MDOC's ban on large fans is now a case about the general "condition[]" of his cell. (ECF No. 66, PageID.582, ¶ 4). That, Sedore argues, includes the MDOC's failure to provide curtains he can use to block the sun. (*Id.* at PageID.584, ¶ 11). But Sedore never alleged that the Defendants injured him by failing to provide curtains. He alleged only that should have mitigated his cell's high

---

[4] Sedore also alleges that he sought an exemption from this policy about one year before it was enforced. (ECF No. 1, PageID.14).

temperatures by allowing him to use a large fan.  There is a profound mismatch between the injury alleged in his complaint and the relief sought in this injunction. *See Berryman*, 2022 WL 3684591, at *2.  For that reason, his motion for a preliminary injunction should be denied.

### C. Conclusion

For these reasons, **I RECOMMEND** that the Court **DENY** Sedore's motions for a preliminary injunction (ECF Nos. 66, 68).

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant

to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 10, 2024                         s/PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge