## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SCOTT SEDORE,                                Case No. 2:23-cv-10647

     *Plaintiff*,                              Jonathan J.C. Grey
*v.*                                          United States District Judge

HEIDI WASHINGTON, MDOC,                       Patricia T. Morris
and CHARLES JAMSEN,                           United States Magistrate Judge

     *Defendants*.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS MDOC AND HEIDI WASHINGTON'S MOTION FOR SUMMARY JUDGMENT (ECF No. 110)

## I.    RECOMMENDATION

For the following reasons, **I RECOMMEND** that the Court **GRANT** Defendants Heidi Washington and MDOC's motion for summary judgment (ECF No. 110). If adopted, no claims would remain against Heidi Washington or the MDOC, and the sole remaining defendant in this matter would be Charles Jamsen against whom the case is currently stayed. (ECF No. 134).

1

II.   <u>**REPORT**</u>

A.      **Background**

Scott Sedore is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). (*See* ECF No. 1, PageID.2).[1] Sedore suffers from a slew of respiratory and circulatory conditions, including congestive heart failure, chronic obstructive pulmonary disease, "chronic scarring" of "both lungs," hypertension, and sleep apnea. (*Id.* at PageID.10). Yet he has few means by which to regulate the temperature in his cell on "hot" and "humid" summer days, during which he is exposed to dangerous temperatures. (*Id.*) Indeed, Sedore's cell has no "air conditioning" or "forced air," and the door to his cell is closed for most of the day. (*Id.* at PageID.10–11; ECF No. 27, PageID.302). Although the cell has two windows, only one window opens and neither have blinds to shield Sedore from the sun. (ECF No. 1, PageID.15). Between the sunlight and lack of airflow, Sedore's cell—in which he is bedridden for at least twenty hours per day—feels like a "sauna" during the summer. (*Id.* at PageID.15).

According to Sedore, these conditions do not just cause discomfort: they exacerbate his underlying health conditions. (*Id.* at PageID.11–12; ECF No. 27, PageID.303). On hot days, Sedore sometimes suffers from blackouts, light

---

[1] Verified complaints, such as Sedore's, carry "the same weight" as affidavits or declarations for purposes of summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

headedness, chest pain, difficulty breathing, and "symptoms of heat stroke." (ECF No. 1, PageID.11).

Sedore filed this lawsuit in March 2023. Despite the various factors contributing to his cell's high temperatures—the lack of air conditioning, the position of Sedore's exterior window, the absence of "curtains" or "blinds"— Sedore's complaint homes in on just one: the MDOC's policy of prohibiting inmates from purchasing fans that have more than "[two] speeds" and that are larger than six inches in diameter. (*Id.* at PageID.11, 15). Sedore alleged that he required a three-speed fan that is at least "[eight inches] or larger" to control the temperature in his cell during the summer months. (*Id.* at PageID.9, 12).

Sedore describes his inability to purchase an adequate fan as the "main issue of" his complaint. (*Id.*) Indeed, he alleges that his sweltering environment was the "result of the fact that [he does] not have a fan of sufficient size . . . ." (*Id.* at PageID.12 (emphasis removed)). Sedore seeks redress for the MDOC's ban of three speed, eight-inch fans—not any other factor contributing to his cell's high temperature. (*Id.* at PageID.17–18; *see id.* at PageID.13 (alleging that the MDOC's fan policy is what "creates '*barbaric*' living conditions" and arguing that the MDOC's restrictions on fans are unjustified and constitute deliberate indifference under the Eighth Amendment (emphasis in original)); *id.* at PageID.14 (alleging that the MDOC could have resolved this issue by furnishing, or allowing Sedore to

3

purchase, an eight-inch, three speed fan); *id.* at PageID.15–16 (alleging that in February 2023, the Warden confiscated Sedore's twenty-inch fan, which was his "only" means of "relief from hot and humid" weather); *id.* at PageID.16 (arguing that fans larger than six inches do not pose a security threat because they are present in areas of the prison accessible to inmates)).

To that end, Sedore alleges three different claims stemming from the MDOC's fan policy.  First, he brings a claim under 42 U.S.C. § 1983, alleging that the MDOC's restrictions violate the Eighth Amendment's proscription of cruel and unusual punishment. (*Id.* at PageID.17).  Second, he alleges that the MDOC's policy violates his rights under Title II the Americans with Disabilities Act ("ADA"). (*Id.*)  And third, he alleges that the policy violates Section 504 the Rehabilitation Act ("RA"). (*Id.*)

Among other defendants, Sedore's complaint names the MDOC and its director, Heidi Washington. (*Id.*)  A couple months after filing his complaint, Sedore moved the Court to enter a preliminary injunction requiring these Defendants to allow him to purchase an eight-inch, three-speed fan.  (ECF No. 27, PageID.304).  But before the Court could rule on Sedore's motion, the MDOC amended its regulations to allow all prisoners to purchase eight-inch, three speed fans.  (ECF No. 31, PageID.324–25; *see also* ECF No. 31-3).  This amendment went into effect in

July 2023, and it remains in force today.  (ECF No. 39, PageID.412; ECF No. 110, PageID.1207; MDOC PD 04.07.112D (Aug. 19, 2024)).

Washington and the MDOC have moved for summary judgment on all claims against them.  (ECF No. 110).  Sedore, now represented by counsel, has responded to their motion, and all briefing is complete.  (ECF Nos. 130, 133).

### B. Summary Judgment Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that would affect "the outcome of the suit under the governing law. . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact . . . ."  *Id.* at 249–50, 255.  Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).  The nonmoving party cannot rebut a Rule 56 motion by merely alleging that a genuine factual dispute exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) (citing Fed. R. Civ. P. 56(e)).  Instead, the

nonmoving party must show that there is sufficient evidence in the record for "a reasonable finder of fact [to] find in its favor." *Anderson*, 477 U.S. at 248.

## C.    Discussion

Sedore alleges that by prohibiting him from purchasing a sufficiently large fan, the MDOC and Washington violated his rights under the ADA, the RA, and the Eighth Amendment. For the following reasons, I suggest that Sedore cannot raise a genuine dispute of material fact on any of these claims, thus I recommend that the Court enter summary judgment in favor of Washington and the MDOC.

### 1.    Eighth Amendment

Sedore claims that the MDOC and Washington violated his Eighth Amendment right to be free from cruel and unusual punishment by prohibiting him from purchasing an effective fan. To the extent that Sedore sues the MDOC—both by suing the Department directly and by suing Washington in her official capacity—his claims are barred by sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining that official capacity suits against government officials are, in essence, suits against the sovereign).[2]

---

[2] Although Defendants assert sovereign immunity from Sedore's ADA and RA claims in their principal brief, they do not assert sovereign immunity from Sedore's § 1983 claim until their reply brief. (ECF No. 110, PageID.1193–1207; ECF No. 133, PageID.1427–29). In most circumstances, arguments raised for the first time in a reply brief are forfeited. *Zak v. Facebook, Inc.*, No. 4:15-cv-13437, 2021 WL 4481352, at *12 n.5 (E.D. Mich. Sept. 30, 2021). But because of the Eleventh Amendment's "quasi-jurisdictional nature," the Court "can—but is not required to—raise" the issue on its own accord. *Russell v.*

### i.     Sovereign Immunity

The Eleventh Amendment to the United States Constitution prohibits United

States citizens from commencing suits against any state. U.S. Const. amend. XI.;

*Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  But this broad immunity from

suit comes with three exceptions.  *Cartern v. Kent State Univ.*, 282 F.3d 391, 398

(6th Cir. 2002).  First, Congress may abrogate immunity by statute.  *Bd. of Trs. v.*

*Garrett*, 531 U.S. 356, 363 (2001).   Second, a state may waive its Eleventh

Amendment protection.  *Lawson v. Shelby Cty.*, 211 F.3d 331, 334 (6th Cir. 2000).

And third, the Eleventh Amendment "does not bar a suit against a state official

seeking prospective injunctive relief to end a continuing violation of federal law."

*Carten*, 282 F.3d at 398 (citing *Ex parte Young*, 209 U.S. 123 (1908)).

The first two exceptions do not apply here as "§ 1983 does not abrogate the

Eleventh Amendment" and Michigan "has not consented to the filing of civil rights

suits against it in federal court."  *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir.

2013).

Nor does the *Ex Parte Young* exception apply as Sedore's claim for injunctive

relief is now moot.  The Constitution grants federal courts only the power to decide

"actual, ongoing" disputes between parties. *Kentucky v. United States ex rel. Hagel*,

---

*Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (internal quotation marks
omitted) (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 267–68 (1997)).

759 F.3d 588, 595 (6th Cir. 2014); U.S. Const. art. III, § 2, cl. 1.  To establish that his case is an "actual" justiciable dispute, Sedore "must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by favorable decision' " and his "requested relief."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

These elements are required not just to bring an action, but also to maintain litigation in federal court.  *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 67 (1997).  If "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," of a particular claim, then that claim becomes "moot," and the court loses jurisdiction over it.  *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).

Past injuries can be redressed with monetary or nominal damages, so a plaintiff who brings an action for monetary damages need only show that the defendant has caused him some prior injury.  *Rice v. Village of Johnstown*, 30 F.4th 584, 593–94 (6th Cir. 2022) (quoting *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021)).  But unlike damages, forward-looking injunctions cannot remedy past conduct.  *Thompson v. Whitmer*, No. 21-2602, 2022 WL 168395, at *2 (6th Cir. Jan. 19, 2022); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 111–12 (1983).  A

8

plaintiff who is no longer exposed to a defendant's unlawful actions cannot benefit from an injunction proscribing those same actions. *See Lyons*, 461 U.S. at 111–12. Thus, a plaintiff who wishes to enjoin a defendant must show more than "past exposure to illegal conduct"; the plaintiff must instead show "a non-speculative threat 'that [he or she] will again experience injury as a result of' the alleged wrongdoing." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *Werner v. Primax Recoveries, Inc.*, 365 F. App'x 664, 668 (6th Cir. 2010) (quoting *Lyons*, 461 U.S. at 109).

As discussed in a prior report and reccomendation, Sedore's complaint alleges a narrow injury. Although his complaint details the "sauna"-like environment of his cell, he does not broadly allege that Defendants violated his Eighth Amendment rights by failing to control his cell's temperature. (ECF No. 92, PageID.735, 738–40, *report & recommendation adopted by* ECF No. 105). Rather, the "main issue" of his complaint is that officials would not allow him to abate his cell's humidity and scorching heat by purchasing a sufficiently large, "eight-inch, three speed" fan. (ECF No. 92, PageID.739). Yet in July 2023, the MDOC amended its internal policies to allow inmates to purchase Sedore's requested fans. (ECF No. 39, PageID.412; ECF No. 110, PageID.1207). That amendment remains in effect, MDOC PD 04.07.112D (Aug. 19, 2024), and Sedore offers no evidence that it may later be rescinded by the MDOC. Thus, to the extent Sedore seeks injunctive relief,

his claims are moot, and the *Ex Parte Young* exception does not apply.

Because no exception applies, Sedore's claims against the MDOC and against Washington in her official capacity are barred by sovereign immunity.

### ii.   The Merits of Sedore's Eighth Amendment Claim

That leaves Sedore's Eighth Amendment claim against Washington in her individual capacity.  To prevail on his Eighth Amendment claim, Sedore must prove three elements.  First, Sedore must have been deprived of a "sufficiently serious" need.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, that deprivation must have been caused by Washington's "act[s] or omission[s] . . . ." *Id.*; *see also Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022); *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021).  And third, Washington must have known "of and disregard[ed] an excessive risk to [Sedore's] health or safety." *Farmer*, 511 U.S. at 837; *see also Rhinehart v. Scutt*, 894 F.3d 721, 737–38 (6th Cir. 2018).

Even if Sedore's inability to purchase an effective fan was a sufficiently serious injury caused by Washington's acts or omissions, Sedore cannot genuinely dispute whether Washington acted with a "sufficiently culpable mental state." *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021).  Because the Eighth Amendment applies only to the "inflict[ion]" of "punishment," prisoners must prove

more than an accidental deprivation of a basic necessity: the deprivation of basic needs constitutes punishment only when done with "deliberate[]indifference." *Id.* To show that an official was deliberately indifferent to a prisoner's needs, a prisoner must prove that the official knew "of the facts that show the serious . . . need," that she "personally conclude[d] that the need existed," and that the official then "consciously disregarded" the need. *Id*. The official need not have acted with the specific intent that the prisoner would be harmed; it is enough to show that she consciously disregarded a perceived risk. *Burwell v. City of Lansing*, 7 F.4th 456, 465 (6th Cir. 2021).

To be sure, Washington may have had some role in promulgating the Policy Directive prohibiting Sedore from purchasing a fan larger than six inches in diameter. *See* Mich. Comp. Laws § 791.206(a) (providing that the director of the MDOC "may promulgate rules pursuant to" Michigan's administrative procedures act). But Sedore cites no evidence that Washington knew of his specific needs and chose not to amend the MDOC's policies accordingly. (ECF No. 130). Nor does Sedore present any evidence that Washington "personally conclude[d]" that restricting inmates to six-inch, two-speed fans would place some prisoners at risk of heat-related illness. (*Id.*) At most, the record could lead a reasonable factfinder to conclude that Washington acted negligently, not with "deliberate indifference" to the needs of prisoners.

Because Sedore cannot genuinely dispute that Washington acted with deliberate indifference to his medical needs, the Court should enter summary judgment in favor of Washington on Sedore's Eighth Amendment claim.

### 2.      ADA and RA

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132; *see Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (holding that corrections departments are "public entities" subject to the ADA).  Like Title II, Section 504 of the RA prohibits public entities from discriminating against individuals "by reason" of their disability. 29 U.S.C. § 794(a).  And apart from a few additional requirements not at issue here, claims brought under Section 504 are analytically identical to claims brought under Title II.  *McBride v. Mich. Dep't of Corr.*, 294 F. Supp. 3d 695, 704 (E.D. Mich. 2018).

To prevail under either statute, Sedore must prove that: (1) he is disabled, (2) he is otherwise qualified for participation in a program, and (3) he has been "excluded from participation in" or "denied the benefits of" the program because of his disability.  *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008).  In addition, the RA—but not the ADA—requires Sedore to prove that his disability was the sole

cause of his exclusion from a public program.  *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317 (6th Cir. 2012).

Washington and the MDOC challenge only the third element of Sedore's claims, arguing that he cannot genuinely that he was excluded from a public program.  Sedore presents evidence that he required an effective fan to avoid "heat-related illness."  (ECF No. 130, PageID.1383).  Yet, according to Defendants, he does not explain how the use of a fan would have allowed him to "access . . . prison services."  (ECF No. 110, PageID.1211).  In other words, Sedore conflates medical treatment with medical accommodation.

To be sure, "mere allegations of inadequate medical care do not raise a viable discrimination claim" under Title II or Section 504.  *Cannon v. Eleby*, 187 F.3d 634, 1999 WL 507006, at *1 (6th Cir. 1999) (table opinion); *cf. Smith v. Aims*, No. 20-12013, 2023 WL 2297448, at *5 (E.D. Mich. Jan. 24, 2023); *Vandiver v. Corizon, LLC*, No. 16-13926, 2017 WL 6523643, at *4–5 (E.D. Mich. Dec. 21, 2017).  After all, Title II and Section 504 do not guarantee adequate medical treatment, they forbid the exclusion of disabled individuals from public programs.  *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

But in some circumstances, deficient medical care may lead to exclusion from public programs.  "[T]he phrase 'services, programs, or activities' encompasses

virtually everything a public entity does." *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008). And in the Sixth Circuit, this includes "basic prison services" such as "housing." *Finley v. Huss*, 102 F.4th 789, 821 (6th Cir. 2024); *contra Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Because the state bears the responsibility for providing medical care to its inmates, its failure to treat a prisoner's disability can amount to discrimination if it causes the prisoner to "experience[]" worse "living conditions" than his nondisabled peers. *Finley*, 102 F.4th at 821. For instance, the Sixth Circuit has held that a bipolar prisoner's request for mental health treatment while in solitary confinement was a cognizable "accommodation request." *Id.* at 799, 821. The Court reasoned that bipolar inmates are uniquely susceptible to psychiatric harm during solitary confinement, and because the housing of inmates was a public activity under both the ADA and the RA, corrections officers were required to reasonably accommodate the bipolar inmate's mental illness. *Id.* at 798, 821. Without such an accommodation, solitary confinement would have a more "deleterious impact" on inmates with mental illness than those without. *Id.* at 821.

The same rationale applies here. Sedore explains that because of his many ailments, he is bed-ridden for most of the day and is unusually susceptible to heat-related illness. (ECF No. 1, PageID.11–12, 15). Indeed, his disabilities have caused blackouts, light headedness, chest pain, difficulty breathing, and "symptoms of heat stroke." (*Id.* at PageID.11). Without an accommodation, Sedore experiences far

14

more "deleterious" conditions when participating in the MDOC's housing compared to his nondisabled peers. *Cf. Finley*, 102 F.4th at 821. Thus, a reasonable factfinder could conclude Sedore required an accommodation to control his cell's temperature so that he could use his cell in a manner similar to nondisabled inmates.

Even so, Sedore cannot genuinely dispute that Defendants interfered with Sedore's use of his cell because of his disability. Sedore can use either of two theories to establish this element. *Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023). First, he can show that Defendants could have provided a reasonable accommodation for his disabilities but refused to do so. *Id.* Alternatively, he can seek relief under an "intentional discrimination" theory by establishing that Defendants treated him unfavorably because of his disability. *Id.*

Under either theory, it is not enough for Sedore to produce evidence of discrimination by an employee or contractor of the MDOC; he must show that the MDOC itself intentionally discriminated against him. That is because "neither the ADA nor the RA impose liability upon individuals," and the MDOC cannot be held vicariously liable under Title II or Section 504 for the actions of its employees under a *respondeat superior* theory. *Jones v. City of Detroit*, 20 F.4th 1117, 1121, 1122–23 (6th Cir. 2021); *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir.

2004).[3] So to prevail on these claims, Sedore must show that the MDOC violated

his rights under Title II and Section 504 through its own "policy or custom." *Cf.*

*Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Sedore can establish a discriminatory policy or custom in several ways. *See*

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Relevant here, Sedore can

show that he was excluded from a public program by an "official policy" of the

MDOC. *Id.* Or, absent such evidence, Sedore can also show that an "official with

final decision making authority ratified" the decision to exclude him from a public

program. *Id.*

Start with the former method of establishing a policy or custom. Sedore

presents evidence that he was denied his preferred fan because of an "official,"

department-wide policy that prohibited inmates from procuring fans larger than six

inches or with more than two speed settings. (ECF No. 1, PageID.11, 15). But to

the extent Sedore alleges intentional discrimination, this claim fails because he

cannot dispute that the MDOC placed these restrictions on inmates to increase

disabled inmates' risk of heat-related illness. Indeed, there is no reason to suspect

that by limiting inmates to six-inch, two-speed fans—rather than eight-inch fans,

---

[3] Thus, Washington cannot be held liable under either statute in her individual capacity. *Sagan v. Sumner Cty. Bd. of Educ.*, 726 F. Supp. 2d 868, 875–76 (M.D. Tenn. July 6, 2010).

three-speed fans—the MDOC expected to create a disparate effect on disabled inmates with respect to access to public programs.

And to the extent Sedore might claim that the MDOC failed to accommodate his disability by enacting the policy, this theory does not apply. An accommodation is a "modification" to an entity's typical "policies, practices, or procedures." 28 C.F.R. § 35.130(c)(7)(i). The MDOC thus had no "duty" to offer an accommodation until one was requested by Sedore, and it therefore cannot be held liable for failing to anticipate Sedore's need for an accommodation. *Arredondo v. Howard Miller Clock Co.*, No. 1:08-cv-103, 2009 WL 2871171, at *9 (W.D. Mich. Sept. 2, 2009); *cf. Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202–03 (6th Cir. 2010) (explaining that under Title I of the ADA, an employer need not accommodate a disabled employee until the employee proposes an accommodation).

Nor could a reasonable factfinder conclude that an official with final decision-making authority denied Sedore's request for an accommodation. Sedore describes only one instance where he requested an exemption from the MDOC's fan policy. In July 2022, Sedore met with Charles Jamsen, a private physician contracted to provide medical care to MDOC. (ECF No. 1, PageID.19). After conducting an allegedly careless assessment of Sedore's medical condition, Jamsen denied Sedore's request for a larger fan. (*Id.*) But Sedore does not explain how Jamsen's decision constituted a "final decision." Nor does provide evidence that Jamsen's

17

decision was ratified by a final decisionmaker.  In fact, MDOC officials advised Sedore that he could request an accommodation from other employees.  (*See* ECF No. 17-4, PageID.237); *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005) (explaining that for a "decision" to be final, it cannot be subject to even the possibility of review by a superior).

For these reasons, I suggest that Sedore cannot genuinely dispute that he was denied participation in a public program because of his disabilities.  Accordingly, I recommend that the Court enter summary judgment in favor of Defendants on Sedore's claims under the ADA and the RA.[4]

---

[4] Washington and the MDOC also argue that they are immune from Sedore's ADA claim under the Eleventh Amendment.  (ECF No. 110, PageID.1206–07).  Unlike § 1983, Congress has explicitly abrogated state sovereign immunity under the ADA.  42 U.S.C. § 12202.  But this attempt to abrogate the Eleventh Amendment is valid only to the extent that Congress acted in accordance with § 5 of the Fourteenth Amendment, which allows it to pass statutes enforcing § 1 of the Fourteenth Amendment.  *Tennessee v. Lane*, 541 U.S. 509, 517–18 (2004).  At the very least, this means that Congress can create "private remedies" for "actual violations" of § 1 such as violations of due process and equal protection.  *United States v. Georgia*, 546 U.S. 151, 158–59 (2006).  But Congress may also enact legislation "prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Lane*, 541 U.S. at 518–19 (internal quotation marks omitted) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000)).

Ignoring Congress's power to enact such "prophylactic legislation," Defendants argue that because Sedore cannot establish an Eighth Amendment violation, he fails to show an actual violation of the Fourteenth Amendment's Due Process Clause.  *Nevada Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 727–28 (2003).  That may be true.  But it is not dispositive.  And it is not the Court's responsibility to develop the Assistant Attorney General's arguments for him.  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (explaining that issues devoid of "developed argumentation" are deemed forfeited); *see Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 474 (6th Cir. 2006) ("[A] State may waive Eleventh Amendment immunity.").

**D. Conclusion**

For these reasons, **I RECOMMEND** that the Court **GRANT** Defendants'

motion for summary judgment (ECF No. 110).

### III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin

14 days after being served with a copy of the recommended disposition, a party may

serve and file specific written objections to the proposed findings and

recommendations. A party may respond to another party's objections within 14 days

after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. §

636(b)(1). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human

Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.

1981). The parties are advised that making some objections, but failing to raise

others, will not preserve all the objections a party may have to this R&R. *Willis v.

Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v.

Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant

to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.

Any objection must recite precisely the provision of this R&R to which it pertains.

Not later than 14 days after service of an objection, the opposing party may file a

concise response proportionate to the objections in length and complexity.  Fed. R.

Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address

each issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that

any objections are without merit, it may rule without awaiting the response.

Date:  February 20, 2025                      s/PATRICIA T. MORRIS
                                              Patricia T. Morris
                                              United States Magistrate Judge